United States District Court
Southern District of Texas
**ENTERED**
June 02, 2020
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| RUBEN GUTIERREZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 1:19-CV-00185 |
| | § | |
| LUIS V SAENZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

The Court is in receipt of Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon which Relief can be Granted, Dkt. No. 46. The Court is also in receipt of Plaintiff Ruben Gutierrez's (Gutierrez's) Response in Opposition to the Motion to Dismiss and Motion for Stay of Execution, Dkt. No. 47. This memorandum is divided into two parts, one considering the motion to dismiss the DNA claims the other considering the motion to dismiss the execution-chamber claims.

For the reasons stated below the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to dismiss, Dkt. No. 46. The Court does not address the motion to stay execution in this Memorandum and Order and will consider that motion in a separate order.

### I.    Jurisdiction

This action arises under 42 U.S.C. § 1983. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343. Additionally, the Supreme Court determined in *Skinner v. Switzer* that a § 1983 action is the proper vehicle for a suit challenging a state DNA testing statute. *Skinner v. Switzer*, 562 U.S. 521, 534 (2011).

### II.    Background

Gutierrez is incarcerated at the Allan B. Polunsky Unit of the Texas Department of Criminal Justice ("TDCJ") in Livingston, Texas. Dkt. No. 45 at 4-5. Pursuant to

February 28, 2020 Order Setting Execution Date he is scheduled to be executed on June 16, 2020 after 6:00 p.m. *Id.* Gutierrez was indicted along with Rene Garcia and Pedro Garcia for the robbery and murder of Escolastica Harrison ("Ms. Harrison"). *Id.* at 6. Pedro Garcia was released on bond and absconded. *Id.* Rene Garcia pleaded guilty and was sentenced to life imprisonment. *Id.* Gutierrez pleaded not guilty, was tried by a jury, convicted, and sentenced to death in 1999. *Id.* at 7. In this suit, Gutierrez has named as Defendants Luis V. Saenz ("Saenz"), District Attorney for the 107th Judicial District; Felix Sauceda, Jr. ("Sauceda"), Chief of the Brownsville Police Department; Bryan Collier (Collier"), Executive Director of the TDCJ; Lorie Davis ("Davis"), director of the Correctional Institutions Division of the TDCJ and Billy Lewis ("Lewis"), the senior warden of the Huntsville Unit where inmates are executed. Dkt. No. 45.

On August 27, 2010, Judge Benjamin Euresti, Jr., the presiding judge of the 107th District Court, denied Gutierrez DNA testing under Chapter 64 of the Texas Code of Criminal Conduct and Procedure ("Chapter 64"). Dkt. No. 45 at 9; Tex. Crim. Proc. Code art. 64. The Texas Court of Criminal Appeals ("CCA") affirmed a denial of testing on the merits in 2011. Dkt. No. 45 at 9; *Ex parte Gutierrez*, 337 S.W.3d 883, 886 (Tex. Crim. App. 2011). On June 14, 2019, Gutierrez again sought DNA testing under a revised version of the statute. Dkt. No. 45 at 12-13. Judge Euresti granted the request on June 20, 2019 and his order was filed at 9:09 a.m. On June 27, 2019, two events occurred: at 11:10 a.m. Judge Euresti withdrew his order granting testing and at 11:13 a.m. he denied the motion for testing. Dkt. Nos. 1-1 at 3-5; 45 at 13; *Ex parte Gutierrez*, No. 98-CR-1391- A, Order (Tex. 107th Judicial Dist. Ct. June 20, 2019).[1] The CCA affirmed the 2019 denial of testing on the merits in 2020. Dkt. No. 45 at 13; *Gutierrez v. State*, No. AP-77,089, 2020 WL 918669, at *1 (Tex. Crim. App. Feb. 26, 2020).

---

[1] The Court takes judicial notice of the proceedings in *Ex Parte Ruben Gutierrez,* 98-CR-1391-A (Tex. 107th Judicial Dist. Ct.).

### A. Complaint

This action arises under 42 U.S.C. § 1983 and challenges the constitutionality of Chapter 64. Dkt. No. 45 at 3; Tex. Crim. Proc. Code art. 64. Gutierrez challenges the constitutionality of post-conviction DNA testing section on its face and as it has been applied to him. *Id.* He claims the statute violates procedural due process because it denies a movant the ability to test evidence that would demonstrate he is innocent of the death penalty and it is unequally and unfairly applied to someone who is convicted under the law of parties. He also claims its different outcome standard is overbroad. Dkt. No. 45 at 25-26.

Gutierrez also claims a violation of his First Amendment right to access the courts, and his Eighth Amendment right to be free from cruel and unusual punishment. *Id.* at 31. He seeks a declaratory judgment holding Chapter 64 unconstitutional. *Id.* at 37.

Gutierrez challenges the State's refusal to release biological evidence for testing and requests an order declaring that the withholding of evidence for testing violates his rights and requests a preliminary and permanent injunction requiring the evidence be released for testing. *Id.* at 38. Gutierrez seeks testing of:

- blood sample taken from Ms. Harrison and retained by the Texas DPS McAllen Laboratory, pending pick up by the District Attorney;
- nightgown belonging to Ms. Harrison that may have touch DNA from her assailant(s);
- shirt belonging to Ms. Harrison's nephew and housemate, Avel Cuellar, containing apparent blood stains; retained by the Texas DPS McAllen Laboratory pending pick up by the District Attorney;
- nail scrapings in which "[a]pparent blood was detected" were taken from Ms. Harrison during autopsy and submitted to Det. Hernandez as part of rape examination kit;
- blood samples collected from a bathroom, from a raincoat located in or just outside Avel Cuellar's bedroom, and from the sofa in the front room of Ms. Harrison's house; and

- a single loose hair found around the third digit of the victim's left hand recovered during autopsy and submitted to Det. Hernandez as part of rape examination kit.

Dkt. No. 45 at 17-18.

Gutierrez claims he will be executed under conditions that violate the First Amendment's Free Exercise and Establishment Clauses and that substantially burden the exercise of his religious beliefs protected by the Religions Land Use and Institutionalized Persons Act ("RLUIPA") of 2000, 42 U.S.C. § 2000cc *et seq. Id.* at 15. He claims relief is necessary to ensure he is executed in way that does not unfairly burden the exercise of his religious beliefs. *Id.* at 4.

Gutierrez requested a TDCJ-employed chaplain to accompany him during his final moments in the execution chamber. His request was denied based on the TDCJ execution procedure adopted on April 2, 2019, which prohibits all religious or spiritual advisors from entering the execution chamber. That TDCJ policy now states: "TDCJ Chaplains and Ministers/Spiritual Advisors designated by the offender may observe the execution only from the witness rooms." Facing an execution date, Gutierrez filed this lawsuit requesting "a reasonable accommodation to have a Christian chaplain in the execution chamber when he is executed . . . ." Dkt. No. 45 at 3.

Gutierrez maintains "having a Christian chaplain present in the chamber would help to ensure his path to the afterlife." Dkt. No. 45 at 14. Gutierrez alleges that TDCJ previously had a policy which "allowed a TDCJ-approved chaplain to be present inside the execution chamber at the time of execution, and that both TDCJ Chaplains J. Guy and Wayne Moss have indicated that they are willing to be present in the chamber at his execution (but for TDCJ's April 2019 Execution Procedure)." Dkt. No. 45 at 14. Gutierrez argues that TDCJ's new execution protocol violates (1) the First Amendment's Establishment Clause because it is not neutral between religions (claim four); (2) his Free Exercise rights by interfering with his ability to practice his religion (claim five); and (3) the Religious Land Use and

Institutionalized Persons Act, 42 U.S.C. § 2000cc, et seq. ("RLUIPA") (claim six).[2] Gutierrez requests a declaratory judgment that TDCJ's current policy violates the First Amendment and RLUIPA.

Gutierrez also requests a preliminary and permanent injunction prohibiting his execution until it can proceed in a manner that does not violate his rights.

## III.    Motion to Dismiss

Defendants filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted. Dkt. No. 46; *See* Fed. R. Civ. P. 12. Defendants argue in their motion that:

- Gutierrez is requesting mandamus relief for DNA testing, something it does not have jurisdiction to order. *Id.* at 17.

- Gutierrez's complaint is also a collateral attack on a state court decision rather than the Texas DNA testing statute and that the claims fail under the *Rooker-Feldman* doctrine for lack of jurisdiction. *Id.* at 30.

- They are entitled to Eleventh Amendment immunity to the extent Gutierrez seeks anything beyond declaratory and injunctive relief. *Id.* at 26.

- The DNA testing claim is untimely. *Id.* at 33.

- Gutierrez's due process claims are barred by issue preclusion. *Id.* 37.

- Gutierrez's DNA challenge to his execution is only cognizable in habeas corpus. *Id.* at 38.

- Gutierrez's claims are "patently meritless" and the Texas DNA testing statutory framework protects inmates' rights. *Id.* at 39-61.

- The testing framework as written and applied by the CCA does not offend fundamental fairness and Gutierrez's claim fails as a matter of law. *Id.* at 46.

---

[2]    Gutierrez's execution-chamber claims only apply to Defendants Davis, Collier, and Lewis.

- This Court should dismiss Gutierrez's execution-chamber claims because he did not exhaust remedies by completing the prison grievance process. *Id.* at 22.

- Gutierrez's execution-chamber claims fail to state a claim upon which relief can be granted. *Id.* at 77.

Gutierrez's response to the motion to dismiss also includes a motion for stay of execution. Dkt. No. 47. He avers that he does not seek mandamus relief and that his claims are not subject to dismissal on jurisdictional grounds. *Id.* at 12, 22. Gutierrez argues his claims are not barred by the statute of limitations and issue preclusion does not bar his due process claims. *Id.* at 38. Gutierrez generally argues the Court has jurisdiction to consider his claims and that he states claims upon which relief can be granted. *Id.*; *see* Fed. R. Civ. P. 12. Gutierrez contends that his religion claims are exhausted and that he states a claim upon which relief can be granted. Dkt. No. 47 at 71-72. Gutierrez argues he may seek declaratory and injunctive relief from Defendants and that he names appropriate defendants for his lawsuit. *Id.* at 22.

## IV.   Motion to Dismiss Legal Standard

### A.   12(b)(1) Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to assert a "lack of subject-matter jurisdiction" defense. Fed. R. Civ. P. 12(b)(1). In *Paterson v. Weinberger*, the Fifth Circuit distinguished between Rule 12(b)(1) facial and factual attacks: [I]f the defense merely files a Rule 12(b)(1) motion [and thereby makes a "facial attack"], the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient, the complaint stands. If a defendant makes a "factual attack" upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A Rule 12(b)(1) motion should be granted when "it appears certain that the plaintiff cannot prove a plausible set of

facts that establish subject-matter jurisdiction." *Carroll v. Abide*, 788 F.3d 502, 504 (5th Cir. 2015).

### B. 12(b)(6) Failure to State a Claim Upon Which Relief Can be Granted

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When performing a Rule 12(b)(6) analysis, all well-pleaded facts in the complaint must be accepted as true, and the complaint must be construed in a light most favorable to the plaintiff. *SEC v. Cuban*, 620 F.3d 551, 553 (5th Cir. 2010). To prevail past a motion to dismiss "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A complaint does not need detailed factual allegations. *Id.* A claim survives a motion to dismiss when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is one of plausibility not probability. *Id.* The court is not ruling on whether it is likely the plaintiff will prevail but rather whether the plaintiff may proceed to offer evidence in support of its claims. *See id.* In evaluating a plaintiff's complaint in light of a defendant's motion to dismiss under Rule 12(b)(6), a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. It is not the duty of this Court to create a claim which has not been spelled out in the pleading. *Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676, 678 (5th Cir. 1961).

# DNA TESTING CLAIMS

## V.   Legal Standard

### A. Section 1983 DNA Testing Challenge: *Osborne* and *Skinner*

The U.S. Supreme Court stated in *Osborne* and then in *Skinner* that challenges to DNA testing procedures may be brought in a § 1983 action because requesting access to testing does not necessarily imply the guilt or innocence of a defendant as the defendant is not yet in possession of exculpatory evidence. *Skinner v. Switzer*, 562 U.S. 521, 534 (2011); *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 55, (2009).

Such § 1983 actions are limited but not barred by the *Rooker-Feldman* doctrine. *Skinner*, 562 U.S. at 532. A challenge to the constitutional adequacy of state-law procedures for post-conviction DNA testing is not within *Rooker-Feldman's* ambit. *Id.* So long as the Plaintiff does not challenge the adverse state court decisions themselves "it is not an impediment to the exercise of federal jurisdiction that the 'same or a related question' was earlier aired between the parties in state court." *Skinner*, 562 U.S. at 532.

DNA testing is a powerful tool in the criminal justice system and states are experimenting with the challenges and opportunities posed by DNA evidence. *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 62 (2009). The Supreme Court decided in *Osborne* to not constitutionalize the area of DNA testing so as to not "short-circuit what looks to be a prompt and considered legislative response" from the states. *Id.* Accordingly, there is no "freestanding" substantive due process right to access DNA evidence, and federal courts should not presume that state criminal procedures are inadequate to deal with DNA evidence. *Osborne*, 557 U.S. at 73-74. Post-conviction DNA testing claims are not "parallel" to a trial right and are not analyzed under the *Brady* framework. *Id.* at 69; *see Brady v. Maryland*, 373 U.S. 83 (1963).

Yet, a state's DNA testing procedures must still comply with some baseline constitutional protections. *Osborne*, 557 U.S. at 69. The questions a court asks are

1) whether the state has granted a liberty interest in demonstrating innocence with new evidence; and 2) whether the procedures for vindicating that liberty interest are adequate. *Id.* Such procedures must not "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgress[] any recognized principle of fundamental fairness in operation.'" *Id.* (citing *Medina v. California*, 505 U.S. 437, 446 (1992)). Federal courts may only disturb a State's postconviction procedures if they are "fundamentally inadequate to vindicate the substantive rights provided." *Id.* To determine if a procedure violates procedural due process a court looks to the standards of the common law as they existed at the time of adoption of the Fifth and Fourteenth Amendment. *Patterson v. New York*, 432 U.S. 197, 202 (1977). Additionally, a procedure should not offend "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* Widespread acceptance or rejection among the states may indicate whether procedure is contrary to the conscience of the people. *Id.*

The Court in *Osborne* found "nothing inadequate" with Alaska's postconviction DNA testing procedures. *Osborne*, 557 U.S. at 69-70. The Court noted that Alaska's procedures requiring evidence to be newly available, diligently pursued and sufficiently material are similar to federal law and the law of other states and are not inconsistent with the conscience of the people or fundamental fairness. *Id.* at 70. The Court stated Alaska's constitutionally created right of DNA access provided additional protection to parties who may not be able to seek testing under statute. *Id.* The *Osborne* Court noted that exhaustion of a state law remedy is not required but can be useful to demonstrate that the procedures do not work in practice. *Id.* at 71.

Circuit courts addressing 1983 DNA complaints have encountered facial and "as-applied" procedural Due Process claims. An as-applied challenges is not permissible if used to collaterally attack the state court judgment. *McKithen v. Brown*, 481 F.3d 89, 98–99 (2d Cir. 2007) ("by bringing an as-applied challenge, [Plaintiff] is asking the federal district court to review the validity of the state court

judgment"); *Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1263 (11th Cir. 2012) (holding that the *Rooker-Feldman* doctrine bars Plaintiff's as applied procedural due process attack on the state court judgment); *Wade v. Monroe Cty. Dist. Attorney*, 800 F. App'x 114, 119 (3d Cir. 2020) (reversing because "the state court entered a ruling based upon Wade's situation, and made no broad pronouncement about how the statute should be construed in all cases").

Instead, an as-applied challenge is permissible so far as it illuminates the authoritative construction of a state law to determine constitutional adequacy. *Morrison v. Peterson*, 809 F.3d 1059, 1070 (9th Cir. 2015) (finding plaintiff's as applied challenge is permissible and "merely argues a defect that is not apparent from the face of the statute.") The Second Circuit approved of a plaintiff's as-applied challenge and reinstated a jury verdict which determined plaintiff was deprived of procedural due process by the city's poor evidence handling system. *Newton v. City of New York*, 779 F.3d 140, 159 (2d Cir. 2015).

In unpublished opinions, the Fifth Circuit has repeatedly identified Article 64 of the Texas Code of Criminal Procedure as a substantive right created by the state for post-conviction DNA testing. "Texas has created a right to post-conviction DNA testing in Article 64 of the Texas Code of Criminal Procedure. Thus, '[w]hile there is no freestanding right for a convicted defendant to obtain evidence for post-conviction DNA testing, Texas has created such a right, and, as a result, the state[-]provided procedures must be adequate to protect the substantive rights provided.'" *Emerson v. Thaler*, 544 F. App'x 325, 327–28 (5th Cir. 2013) (quoting *Elam v. Lykos*, 470 F. App'x. 275, 276 (5th Cir.2012)).

### B. Eleventh Amendment Immunity and Proper Defendants

The Eleventh Amendment provides state officials immunity from suit in federal court. An exception exists when a state actor enforces an unconstitutional law. *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010). "Immunity does not bar suits against defendants in their official capacities." *Johnson v. Kegans*, 870 F.2d 992, 998 (5th Cir. 1989). To be a proper defendant in such a declaratory/injunctive action a defendant must have a connection to the enforcement of the disputed act.

*K.P.*, 627 F.3d at 124. In *Skinner*, the Court found the plaintiff had properly stated a claim against Lynn Switzer, a district attorney, whose office had custody of the evidence plaintiff sought to have tested. *Skinner v. Switzer*, 562 U.S. at 529; *see also Emerson*, 544 F. App'x at 328 n. 2.

### C. Access to the Courts

Prisoners have a right to some legal assistance to have meaningful access to the Courts. *Lewis v. Casey*, 518 U.S. 343, 350, 116 S. Ct. 2174, 2179, 135 L. Ed. 2d 606 (1996). But access to the Courts does not encompass the ability to discover grievances. *Id.*

## VI.   DNA Testing Analysis

### A. Subject Matter Jurisdiction and *Rooker-Feldman*

This Court does not have jurisdiction to consider a challenge to the CCA's decisions on Gutierrez's DNA testing motion itself, as it is barred by the *Rooker-Feldman* doctrine. *See Lance*, 546 U.S. at 463 (noting the "aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly"). Such a challenge, if successful, would effectively nullify a state court judgment, and only the Supreme Court is vested with jurisdiction for appeals from final state-court judgments. *See id.* The Court additionally does not have subject matter jurisdiction over Gutierrez's as-applied challenge to the extent it seeks to relitigate his state DNA testing complaint, as it also falls under the ambit of *Rooker-Feldman* as well. *See id; Alvarez.*, 679 F.3d at 1263; *Wade v. Monroe Cty. Dist. Attorney*, 800 F. App'x 114, 119 (3d Cir. 2020).

Gutierrez states in his response that he does not seek mandamus relief to compel a different outcome from the one he received from the CCA. Dkt. No. 47 at 19. Yet, Gutierrez also asks the Court in his complaint to issue a "preliminary and permanent injunction requiring Defendants to produce and release for DNA testing" evidence he desires tested. Dkt. No. 46 at 38. The Court does not have jurisdiction to order such testing because it runs aground on a *Rooker-Feldman* shoal. *See Lance*, 546 U.S. at 463; *Skinner*, 562 U.S. at 532.

Accordingly, the Court **GRANTS** Defendant's motion to dismiss for lack of subject matter jurisdiction for claims which seek direct relief of a state court judgment, as barred by the *Rooker-Feldman* doctrine. *See Lance*, 546 U.S. at 463; *Carroll*, 788 F.3d at 504; *Skinner v. Switzer*, 562 U.S. at 532.

Yet just because some claims may be barred by the narrow *Rooker-Feldman* doctrine, that does not mean all causes of action relating to a state-court proceeding are barred. *Lance*, 546 U.S. at 464. This Court does have subject matter jurisdiction to consider federal questions, such as those brought within a § 1983 civil action for the deprivation of rights. *Osborne*, 557 U.S. at 69-70; *Skinner*, 562 U.S. at 532. Gutierrez's complaint articulates numerous federal grounds of relief regarding the DNA testing statute itself, for example: "a declaratory judgment that Article 64 of the Texas Code of Criminal Procedure, as applied by the CCA, is unconstitutional." *See id.*; Dkt. No. 45 at 36. Accordingly, just as the Courts in *Osborne* and *Skinner* had jurisdiction, this Court has jurisdiction to consider those questions and **DENIES** Defendants' motion to dismiss for lack of jurisdiction. *See id.; Carroll*, 788 F.3d at 504; *Osborne*, 557 U.S. at 69-70; *Skinner*, 562 U.S. at 532; *Elam v. Lykos*, 470 F. App'x. 275, 276 (5th Cir. 2012).

### B. Eleventh Amendment and Proper Defendants

The Court must consider whether suit against defendants in this action is barred by the Eleventh Amendment. In DNA testing challenges district attorneys have been accepted as an appropriate defendant under the declaratory relief exception to Eleventh Amendment immunity because of their custodianship of the evidence at issue and role in the statute itself. *Skinner*, 562 U.S. at 529; *see also, Morrison v. Peterson*, 809 F.3d 1059, 1070 (9th Cir. 2015); *McKithen v. Brown*, 481 F.3d 89, 98–99 (2d Cir. 2007); *Wade v. Monroe Cty. Dist. Attorney*, 800 F. App'x 114, 119 (3d Cir. 2020).

Here, Saenz and Sauceda are the parties who have custody over the evidence Gutierrez seeks to have tested under the DNA statute. Because of their connection to the statute, its constitutionality directly implicates their duties under it. *See* Tex. Crim. Proc. Code art. 64. This Court again follows the path laid down by the

Supreme Court in *Skinner* and concludes the Eleventh Amendment does not bar suit against Sauceda and Saenz for purposes of this DNA testing challenge for declaratory and injunctive relief. *See id.*

Defendants' argument that Saenz is absolutely immune from suit is misplaced as Saenz is being sued in his official capacity. Just as in *Skinner*, where a District Attorney was properly subject to suit in a DNA testing challenge, Saenz and Sauceda are proper parties here. *See Skinner*, 562 U.S. at 529; *Johnson*, 870 F.2d at 998 n.5.

Gutierrez states that the other Defendants are party to this suit for his religion claims, therefore it would be improper to dismiss them for a lack of connection to his DNA claims. *See* Dkt. No. 47 at 31. Accordingly, the Court **DENIES** Defendants' motion to dismiss on Eleventh Amendment grounds.

### C. Stating a DNA Claim Under *Osborne* and *Skinner*

Gutierrez's claims challenge the constitutionality of the DNA testing statute on its face and as applied. Dkt. No. 45. He claims the statute violates procedural due process because: it denies a movant the ability to seek testing of evidence that would demonstrate he is innocent of the death penalty and it is unequally and unfairly applied to people who are convicted as a party. He argues the "different outcome" standard is overbroad. Dkt. No. 45 at 25-26. These claims are emblematic of claims upon which relief can be granted as they clearly state the alleged harm and relief requested. Indeed, this challenge tracks precisely the bounds of a DNA statute challenge the Supreme Court set out in *Osborne* and *Skinner*. *See Osborne*, 557 U.S. at 69-70; *Skinner*, 562 U.S. at 529.

As opposed to other claims that have been dismissed as frivolous or masked collateral attacks on state court judgments, Gutierrez descriptively identifies how Chapter 64 and its authoritative interpretation by the CCA may be denying a constitutional right. *See Elam*, 470 F. App'x. at 276; *Morrison*, 809 F.3d at 1070; *McKithen*, 481 F.3d at 98–99; *Wade*, 800 F. App'x at 119; *Alvarez.*, 679 F.3d at 1263.

The Court **DENIES** Defendants' motion to dismiss for failure to state a claim regarding Gutierrez's claims challenging the constitutionality of Chapter 64.

### D. DNA Testing Statute of Limitations

The CCA considered Gutierrez's Chapter 64 DNA testing motion on the merits on February 26, 2020. *Gutierrez v. State*, No. AP-77,089, 2020 WL 918669, at *1 (Tex. Crim. App. Feb. 26, 2020). The CCA's 2020 opinion was also the first time it considered Gutierrez's claims under a revised version of the DNA testing statute. *Id.* Therefore, the CCA's decision began a new accrual period that was distinct from Gutierrez's 2009 petition under a prior version of the statute. *See Ex parte Gutierrez*, 337 S.W.3d 883, 886 (Tex. Crim. App. 2011). February 26, 2020 is the date Gutierrez would have reason to know of his alleged injury, and he filed his amended complaint April 22, 2020, well within the two-year statute of limitations period. *See* Dkt. No. 45; *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993); *Piotrowski*, 237 F.3d at 576.

The Court **DENIES** Defendants' motion to dismiss for failure to state a claim on statute of limitations grounds.

### E. DNA Testing Issue Preclusion

A § 1983 challenge for the deprivation of a constitutional right is not the same as a Chapter 64 motion for DNA testing, nor was the DNA testing motion litigated or ruled on as a deprivation of right challenge. *See* Dkt. No. 45; *Gutierrez v. State*, No. AP-77,089, 2020 WL 918669, at *1 (Tex. Crim. App. Feb. 26, 2020). Gutierrez cannot know of, or challenge how a court will interpret and apply the statute to form the basis of a § 1983 suit for deprivation of constitutional right before such an interpretation is issued. *See id.* There is no record before the Court that Gutierrez litigated the constitutionality of the CCA's 2020 interpretation of the DNA testing statute in any other forum. Accordingly, issue preclusion does not apply. *See Weaver v. Texas Capital Bank N.A.,* 660 F.3d 900, 906 (5th Cir. 2011).

The Court **DENIES** Defendants' motion to dismiss for failure to state a claim on issue preclusion grounds.

### F. Eighth Amendment Claims

Gutierrez's Eighth Amendment claim, that the DNA statute allows an execution to be carried out in a cruel and unusual way because it permits the

execution of an innocent person, does not fall within the bounds of *Osborne* and *Skinner*. *See* Dkt. No. 45 at 37-38; *Skinner*, 562 U.S. 521. DNA statute claims are allowed to proceed under § 1983 because they do not challenge the guilt or innocence of the defendant. *Osborne*, 557 U.S. at 69-70; *Skinner*, 562 U.S. at 532. An essential element of Gutierrez's Eighth Amendment challenge is his purported innocence; therefore, the Court finds this claim necessarily implies the invalidity of the conviction and a remedy is not available in this § 1983 action. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Skinner*, 562 U.S. 521. The Court **GRANTS** Defendants' motion to dismiss Gutierrez' Eighth Amendment DNA testing claims for failure to state a claim upon which relief can be granted.

### G. Access to Courts

Gutierrez's complaint does not state facts demonstrating a denial of mandated legal assistance, or other access to court issues. *See* Dkt. No. 45. A denial of DNA testing on the merits does not create an access to the courts claim as he has access to the Courts to litigate his grievances. *See* Dkt. No. 45 at 37; *Lewis v. Casey*, 518 U.S. 343, 350, 354 (1996). Accordingly, the Court **GRANTS** Defendants' motion to dismiss Gutierrez's access to the courts claim for failure to state a claim.

### H. Merit of Gutierrez DNA Statute Claims

Defendants argue Gutierrez's DNA statute claims fail on the merits because nothing in the statute or the CCA's opinions violates procedural due process. Dkt. No. 46 at 39. Defendants correctly identify the *Medina* test that governs criminal procedural due process for DNA claims. Dkt. No. 46 at 60. However, Defendants fail to apply the *Medina* factors to Gutierrez's complaint. *Id.* Defendants do not cite binding authority as to why Texas' DNA testing statute is constitutional on its face and as applied by the CCA. Dkt. No. 46 at 73. The legal waters become murkier when Defendants improperly state the DNA standard under review in *Osborne*,[3] and cite the CCA's own opinion for the proposition that Gutierrez is not entitled to DNA testing for evidence that could show he is innocent of the death penalty. *Id.*

---

[3] The standard cited by Defendants, Dkt. No. 46 at 58, is the post-conviction relief standard in Alaska, not the standard for access to DNA testing. *Osborne*, 557 U.S. at 65.

In Gutierrez's complaint and response, he argues for relief based on several legal claims that the Court is dismissing in this opinion. Neither party has demonstrated a success or failure on the merits of Gutierrez's complaint and the fundamental adequacy of the process provided under Texas' DNA testing statute. *See Osborne*, 557 U.S. at 69; *Medina v. California*, 505 U.S. 437, 446; *Patterson v. New York*, 432 U.S. 197, 202; *see e.g.*, *Harris v. Lykos*, No. 12-20160, 2013 WL 1223837, at *1 (5th Cir. Mar. 27, 2013). The Court expects the narrowing of issues will focus the legal briefing as this case progresses.

## EXECUTION-CHAMBER CLAIMS

### VII.    Legal Standard

#### A. PLRA Exhaustion

Section 1997(e) of the Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). TDCJ's grievance procedures require inmates to complete a two-step grievance process before a claim is exhausted. *See Rosa v. Littles*, 336 F. App'x 424, 428 (5th Cir. 2009) (citing *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004)). Inmates must first file a Step One grievance within fifteen days of any alleged incident. *See Rosa*, 336 F. App'x at 428. Inmates may then appeal the Warden's decision on the Step One grievance by filing a Step Two grievance. *Id*. The Fifth Circuit "has held that, pursuant to the TDCJ's grievance process, a prisoner must pursue a grievance through both steps for it to be exhausted." *Id*.; *see also Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) (stating that a prisoner must "pursue the grievance remedy to conclusion").

The PLRA's exhaustion requirement only requires a prisoner to complete "administrative remedies *as are available* . . . ." 42 U.S.C. § 1997e(a) (emphasis added). The Supreme Court has instructed that an inmate is only required to

exhaust those "grievance procedures that are 'capable of use' to obtain '*some relief for the action complained of.*'" *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1859 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)) (emphasis added). An inmate is not required to exhaust "an administrative remedy, although officially on the books, [which] is not capable of use to obtain relief." *Ross*, 136 S. Ct. at 1859; *but see Valentine v. Collier*, 956 F.3d 797, 804 (5th Cir 2020) ("[S]o long as the State's administrative procedure grants authority to take *some action* in response to a complaint, that procedure is considered available, even if it cannot provide the remedial action an inmate demands.") (emphasis added).

### B. First Amendment

Regarding regulation of First Amendment rights, the Supreme Court has "repeatedly emphasized [its] unwillingness to be confined to any single test or criterion in this sensitive area." *Lynch v. Donnelly*, 465 U.S. 668, 679 (1984). Accordingly, the Supreme Court has provided different considerations in First Amendment cases that depend on the context, including the *Turner* standard for some constitutional claims in the prison context. Under *Turner*, a federal court considers: (1) whether a "valid, rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether there exist "alternative means of exercising the fundamental right that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there is an "absence of ready alternatives" to the regulation in question. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

In *Lemon*, the Supreme Court set out the general test for determining whether a government practice violates the Establishment Clause. *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971). Under *Lemon*, a court deciding whether government policy or practice violates the Establishment Clause asks "(1) whether the government activity in question has a secular purpose, (2) whether the activity's primary effect advances or inhibits religion, and (3) whether the government

activity fosters an excessive entanglement with religion." *Van Orden v. Perry*, 351 F.3d 173, 177 (5th Cir. 2003).

### C. RLUPIA

RLUIPA provides in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." RLUIPA "alleviates exceptional government-created burdens on private religious exercise." *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005). Specifically, RLUPA states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1)    is in furtherance of a compelling governmental interest; and
>
> (2)    is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

### VIII.    Legal Analysis

### A. PLRA Exhaustion

Gutierrez alleges he initially requested the presence of a TDCJ-employed chaplain through informal means. Dkt. No. 45 at 15. Gutierrez states that he spoke with TDCJ employees, filed an I-60 "Offender Request to Official" form, and had his attorneys email TDCJ's General Counsel on July 30, 2019 requesting a reasonable accommodation. Dkt. No. 1-1 at 16-17. When those efforts were unsuccessful, Gutierrez followed the formal grievance procedure by filing a Step One grievance on August 19, 2019. *Id.* at 18. Prison officials did not respond to Gutierrez's Step One grievance. Gutierrez filed this lawsuit on September 26, 2019, and no further action through the prison process has occurred. Dkt. No. 1.

Defendants argue that Gutierrez has failed to exhaust his administrative remedies. According to Defendants, even though Gutierrez received no response he should have proceeded to file a Step Two grievance and thus did not "satisfy even the 'spirit' of the exhaustion rule." Dkt. No. 46 at 22 n.10. Defendants support their argument by citing cases in which the Fifth Circuit has found a lack of exhaustion because an inmate failed to proceed to Step Two when he did not receive a response from prison officials at Stage One. Dkt. No. 46 at 24-25 (collecting cases).

Gutierrez argues that his "inability to complete TDCJ's grievance process, however, was the direct result of Defendants' own design." Dkt. No. 47 at 15. Gutierrez emphasizes that "TDCJ's grievance procedures require the prison to answer a Step 1 grievance before a prisoner can file a Step 2 appeal of that decision. That requirement is made clear by TDCJ's Offender Orientation Handbook, which sets forth the grievance procedures." Dkt. No. 47 at 15. With the execution date of June 16, 2020, which was set on February 28, 2020, prison officials have not responded to Gutierrez's official requests.[4]   Gutierrez alleges that TDCJ stonewalled to extinguish his complaints through the execution of his death sentence. Gutierrez argues that the exhaustion requirement cannot require him to disregard prison grievance procedure by filing a Step Two grievance without having received a response from prison officials, particularly when his execution could interrupt the grievance process. Dkt. No. 47 at 21-29.

Gutierrez also argues that a recent case indicates that exhaustion should be forgiven here. Facing an execution date, Patrick Henry Murphy asked TDCJ officials to allow his Buddhist spiritual advisor to accompany him in the execution chamber. Unable to resolve the case through informal means, Murphy filed suit in federal court without having filed a prison grievance. *Murphy v. Collier*, 423 F. Supp. 3d 355, 361 (S.D. Tex. 2019). Notwithstanding his failure to exhaust, the U.S. Supreme Court stayed Murphy's execution. When the State of Texas again sought an execution date during the pendency of Murphy's litigation, the U.S. District

---

[4]        According to his pleadings, TDCJ general counsel informed Gutierrez's attorneys by email that his request for a spiritual adviser in the execution chamber was denied. Dkt. No. 45 at 14.

Court found exhaustion unnecessary because TDCJ already had made clear it would not change its policy. *Murphy v. Collier*, No. 4:19-cv-1106, Order Staying Execution, Dkt. No. 57 at 5 n.1 (S.D. Tex. Nov. 7, 2019). On appeal, the Fifth Circuit rejected TDCJ's arguments based on exhaustion:

> The TDCJ also argues that the district court abused its discretion in granting the stay because Murphy's claims are unexhausted and therefore unlikely to succeed. Again, the Supreme Court implicitly rejected this argument in March. At every stage of the March 2019 proceedings, the TDCJ argued that Murphy's claims were unexhausted. The Supreme Court could not have permitted Murphy's case to proceed if it accepted the TDCJ's exhaustion argument. Because the Supreme Court has already rejected this argument, we reject it as well.

*Murphy v. Collier*, 942 F.3d 704, 709 (5th Cir. 2019).

Defendants attempt to distinguish the circumstances of the *Murphy* case because it came before the courts in a stay-of-execution context, rather than a Rule 12(b)(6) motion as in the instant case. Even with that distinction, Defendants refuse to recognize a common element between the two cases: an important factual question exists of whether Texas prison officials will take any action through the general grievance process regarding an inmate's execution-chamber concerns.

Gutierrez gave notice of his claims through the formal process which halted when prison officials did not respond to his grievance. Dkt. No. 1-1 at 18. Gutierrez made even greater efforts to avail himself of the prison grievance procedure than those in *Murphy* where the Fifth Circuit and Supreme Court refused to stay an execution based on similar exhaustion arguments. *See Murphy*, 942 F.3d at 709; Dkt. No. 45 at 15. The lack of clarity created by *Murphy* regarding the exhaustion doctrine mirrors the lack of clarity on the exhaustion question in this case. A factual question exists about whether relief—which in this case presumably means a change to, or accommodation from, TDCJ policy—is actually available through the prison grievance process to death row inmates requesting the presence of a spiritual advisor in the execution chamber. Given the unresolved factual issue about the

applicability of the PLRA exhaustion standard in this case, the Court **DENIES** Defendants' motion to dismiss on those grounds. *See* 42 U.S.C. § 1997e(a).

Before turning to the specific arguments that Defendants advance in the motion to dismiss, the Court discusses two fundamental concerns about their arguments. First, Defendants treat Supreme Court precedent regarding the application of the First Amendment in the prison context as settled when important constitutional issues remain unclear. See Dkt. No. 46 at 77. Second, Defendants treat a recent statement by a Supreme Court Justice as settled law when his comments do not have the precedential effect necessary to prove that Gutierrez's claims fail as a matter of law, as discussed infra. *See id.* at 83.

### B. Debate Over Legal Standard

Gutierrez's complaint argues that both the Free Exercise and Establishment Clauses of the First Amendment guarantee that a TDCJ-employed chaplain may accompany him into the execution chamber. Dkt. No. 45. The parties debate which standard should govern Gutierrez's First Amendment Claims. Gutierrez bases his arguments on *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971). Defendants, on the other hand, argue that this Court instead should consider the claims under *Turner v. Safley*, 482 U.S. 78, 89 (1987). Supreme Court and Fifth Circuit law is not clear on which standard should govern Gutierrez's First Amendment claims. The Fifth Circuit has broadly stated that *Turner* is "the standard for establishing a First Amendment violation in the prison context." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 335 (5th Cir. 2009); *see also Omran v. Prator*, 674 F. App'x 353, 355 (5th Cir. 2016) (citing *Turner* and stating that "[p]rison policies that impinge on fundamental constitutional rights are reviewed under the deferential standard that a prison regulation is valid if it is reasonably related to legitimate penological interests"); *see also Baranowski v. Hart*, 486 F.3d 112, 120 (5th Cir. 2007) ("This court reviews prison policies that impinge on fundamental constitutional rights under the deferential standard set forth in *Turner* . . . ."). The Fifth Circuit has repeatedly applied the *Turner* framework to free-exercise claims in the prison setting. *See Triplett v. LeBlanc*, 642 F. App'x 457, 461 (5th Cir. 2016); *Mayfield v.*

*Texas Dept. Of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008); *Freeman v. Texas Dept. of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004); *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004).

The U.S. Supreme Court, however, has not used *Turner* in every case arising from the prison system. *See Johnson v. California*, 543 U.S. 499, 510 (2005) (listing cases in which the Supreme Court has applied the *Turner* analysis). In fact, the Supreme Court has never used *Turner* to decide an Establishment Clause case brought by inmates. Fifth Circuit law is also not settled on whether *Turner* applies to Establishment Clause claims brought by inmates.[5] The question of which First Amendment test will govern Gutierrez's claims is not determinative to the matters presently before the Court. As this case progresses, however, the Court will require additional briefing from the Parties with relevant law from this and other circuits related to which constitutional test governs the Establishment Clause claim.

### C. Statements by Justice Kavanaugh

The Court notes that Defendants rely extensively on statements Justice Kavanaugh entered respecting the granting of the stay in the *Murphy* case. When the Supreme Court stayed Murphy's execution on March 28, 2019, Justice Kavanaugh entered a concurring statement which led to Texas' change in execution protocol. Justice Kavanaugh commented on equal-access aspects of Murphy's claim,

---

[5]        Defendants point to a recent case in which a Fifth Circuit panel considered whether to apply *Lemon*'s strict scrutiny or *Turner* to an Establishment Clause case in the prison setting. In *Brown v. Collier*, 929 F.3d 218, 228-29 (5th Cir. 2019), Circuit Judge Priscilla Owen authored an opinion that was mostly joined by Judge Carolyn King. Judge King, however, did not join in the portion of the opinion endorsing the application of *Turner* to Establishment Clause cases. While Defendants rely on *Brown* to argue that *Turner* applies to all First Amendment claims, an opinion by one circuit judge is an insufficient basis to hold that Gutierrez's First Amendment claims fail as a matter of law. Other courts have been reluctant to use the *Turner* test in Establishment Clause cases. *See Americans United for Separation of Church and State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 426 (8th Cir. 2007) ("This court has consistently analyzed Establishment claims without mentioning the *Turner* standard, even when applying that standard to Free Exercise claims in the same case."); *Kaufman v. McCaughtry*, 419 F.3d 678, 684 (7th Cir. 2005) (considering an Establishment Clause claim under *Lemon* test); *Scott v. Pierce*, 2012 WL 12535442, at *3 (S.D. Tex. 2012) ("[T]he Supreme Court has never held that *Turner* should be applied to cases raising Establishment Clause issues."); *but see Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001) (using the *Turner* standard in claim of retaliation against an inmate exercising Establishment Clause rights); *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) ("This circuit has not yet resolved the question of whether we look to *Turner* to determine whether prison officials violated the Establishment Clause . . . .").

proposing that "there would be at least two possible equal-treatment remedies available to the State going forward: (1) allow all inmates to have a religious adviser of their religion in the execution room; or (2) allow inmates to have a religious adviser, including any state-employed chaplain, only in the viewing room, not the execution room." *Murphy v. Collier*, 139 S. Ct. 1475 (2019) (Kavanaugh, J., concurring),

On April 2, 2019, TDCJ followed Justice Kavanaugh's recommendation and changed its execution policy. Dkt. No. 1-1 at 8. On May 13, 2019, Justice Alito, joined by Justices Thomas and Gorsuch, entered statement dissenting from the Supreme Court's earlier order. Justice Alito's dissent argued that the Supreme Court should not have stayed Murphy's execution because he had not filed his section 1983 lawsuit in a timely manner. Justice Alito, however, went on to opine that the First Amendment issues in that case were not easily decided. Justice Alito highlighted that the "flimsy record" precluded any decision about whether Texas could safely accommodate Murphy's request to have his spiritual advisor in the execution chamber. Justice Alito stated "that the prison setting justifies important adjustments in the rules that apply outside prison walls. Determining just how far those adjustments may go is a sensitive question requiring an understanding of many factual questions that cannot be adequately decided on the thin record before us." Additionally, "unresolved factual issues" remained about whether the current policy furthers TDCJ's "compelling interest in security," "is narrowly tailored to serve that interest," and "can be sustained on that basis . . . ." *Murphy*, 139 S. Ct. at 1484 (Alito, J., dissenting from grant of application for stay).

In response to Justice Alito's dissent, Justice Kavanaugh authored a statement in which Chief Judge Roberts joined. Justice Kavanaugh recounted that "Texas changed its unconstitutional policy, and it did so effective immediately. Texas now allows all religious ministers only in the viewing room and not in the execution room." Justice Kavanaugh went on to opine:

> The new policy solves the equal-treatment constitutional issue. And because States have a compelling interest in controlling access to the

execution room, as detailed in the affidavit of the director of the Texas
Correctional Institutions Division and as indicated in the
prior concurring opinion in this case, the new Texas policy likely passes
muster under the Religious Land Use and Institutionalized Persons
Act of 2000 (RLUIPA), 114 Stat. 803, 42 U.S.C. § 2000cc et seq., and
the Free Exercise Clause.

Put simply, this Court's stay facilitated the prompt resolution of a
significant religious equality problem with the State's execution
protocol and should alleviate any future litigation delays or disruptions
that otherwise might have occurred as a result of the State's prior
discriminatory policy.

*Murphy*, 139 S. Ct. at 1476 (statement of Kavanaugh, J.).

Defendants argue that "the litigation in Murphy's case has little, if any, bearing on Plaintiff's Chaplain claim," Dkt. No. 46 at 69 n.32, but then repeatedly rely on Justice Kavanaugh's two statements as having established law that binds this Court. Defendants particularly use Justice Kavanaugh's statements to argue that *Turner* should apply to all Gutierrez's First Amendment claims and that Gutierrez has not pleaded a claim upon which relief can be granted. However, a statement by a Supreme Court Justice does not carry binding precedential effect. *See Ramos v. Louisiana*, ___ S. Ct. ___, 2020 WL 1906545, at *7 (2020) (examining the precedential effect of an opinion by a single Supreme Court Justice and remarking that "no case has before suggested that a single Justice may overrule precedent"). Even if Justice Kavanaugh's statements could be construed as an indication of how the Supreme Court may rule in the future, this Court's role at the pleading stage is not to prognosticate the ultimate decision on an inmate's claim. The ultimate question in a Rule 12(b)(6) motion is whether, when viewed in a light most favorable to the plaintiff, the complaint states a valid claim. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). This review does not question the plaintiff's likelihood of success; instead, it only decides whether he has pleaded a legally cognizable claim. *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Statements by less

than a majority of the Supreme Court are an insufficient basis to show that, as a matter of law, Gutierrez has not made a claim on which relief can be granted.

Having addressed those two fundamental concerns about Defendants' arguments, the Court turns to the question of whether Gutierrez has sufficiently pleaded claims that survive the motion to dismiss.

### D. Establishment Clause

Gutierrez argues that the TDCJ policy excluding his chosen spiritual advisor violates the Establishment Clause. Under the First Amendment, "Congress shall make no law respecting an establishment of religion." U.S. Const., amend. I. The Establishment Clause prohibits the governmental entities from preferring one religion over others, but also prevents the creation of laws that demonstrate hostility toward religion. *See American Legion v. American Humanist Association*, ___ U.S. ___, 139 S. Ct. 2067, 2074 (2019); *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 845-46 (1995); *Larson v. Valente*, 456 U.S. 228, 246 (1982). Prior to April 2, 2019, Gutierrez would have been entitled to the presence of a chaplain in his final moments. Gutierrez claims that the revocation of that policy was an act hostile to religion. Dkt. No. 45 at 35.

Defendants primarily rely on the *Turner* standard and argue that "the deferential standard applied by the Supreme Court and Fifth Circuit to Establishment Clause claims leads to the conclusion that TDCJ's protocol is plainly permissible." Dkt. No. 46 at 71. Applying the *Turner* factors, Defendants argue that: (1) the new protocol is rationally connected to its security interests; (2) excluding a spiritual advisor from the execution chamber does not prevent an inmate from exercising his religion the during his execution; (3) allowing Gutierrez to have TDCJ approved chaplains would require the same right to be extended to inmates of all denominations and some inmates would request a spiritual advisor who was not a TDCJ approved chaplain;[6] and (4) no ready alternatives exist to allowing an

---

[6]     Defendants premise these arguments on *Turner* which instructed that "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner*, 482 U.S. at 90.

outsider into the execution chamber.  Dkt. No. 46 at 71-72. Accordingly, Defendants argue that "there are no ready alternatives that would alleviate the security risks of allowing such an outsider into the execution chamber during an execution." Dkt. No. 46 at 72.

Gutierrez primarily bases his response on the *Lemon* test. Gutierrez argues that the new TDCJ policy is not neutral between religion and non-religion and is inherently suspect. Gutierrez does not dispute the fact that TDCJ has a compelling interest in security throughout an execution. Neither does the State dispute that Texas has long allowed inmates to have TDCJ-employed chaplains in the execution chamber. According to Gutierrez, the removal of that accommodation signals hostility toward religion.[7]

Alternatively addressing Defendants' arguments under the *Turner* standard, Gutierrez contends that the Supreme Court "has 'found it important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a *neutral* fashion, without regard to the content of the expression.'" Dkt. No. 47 at 68 (quoting *Turner*, 482 U.S. at 90 (emphasis added)). Gutierrez contends that the new TDCJ policy restricts his First Amendment rights in a non-neutral fashion that is hostile toward religion. Dkt. No. 47 at 78.

Further, Gutierrez argues that Defendants' arguments about security concerns are speculative. Defendants do not suggest that the relief Gutierrez requests—the presence of a TDCJ chaplain as has been allowed many times before—will pose any security threat in his own execution. The concerns Defendants raise are those that may occur in other executions, such as that of Patrick Henry

---

[7]     Parties debate TDCJ's intent in the change of its policy. Defendants premise their arguments on the assumption that "TDCJ's revision of its protocol regarding the presence of chaplains during an execution was in response to the Supreme Court's action in *Murphy*." Dkt. No. 46 at 72. Given the timing of the policy change and the fact that there was no official statement or justification by TDCJ that would explain why it began disallowing the presence of TDCJ-employed clergy, it could be reasonable to infer that Defendants acted in response to Justice Kavanaugh's statement in *Murphy*. *See McCreary County, Ky. v. American Civil Liberties Union of Ky.*, 545 U.S. 844, 861 (2005) (emphasizing "the intuitive importance of official purpose to the realization of Establishment Clause values"). At this point, it appears that TDCJ acted with an "obvious secular motivation of maintaining a safe and orderly execution process," but at the pleadings stage that speculation is insufficient to dismiss Gutierrez's complaint. Dkt. No. 46 at 72.

Murphy who requested the attendance of a spiritual advisor unaffiliated with the prison system. At the pleadings stage, the Court lacks information about how the requested relief would impact the way Texas conducts the execution of other inmates. This lawsuit has still not developed factual information relating to how many other faith groups are represented on death row, what security risks exist for allowing non-TDCJ spiritual advisors into the death chamber, and what rigor must attend training clergy for the execution process. Assuming that granting relief to Gutierrez would force Defendants to allow access to chaplains from all faith groups represented on death row, the pleadings do not give insight into what security concerns exists, how pervasive those risks may be, and why TDCJ cannot easily accommodate any rights while still maintaining security. Defendants' arguments about secondary ripples from the Gutierrez's rights are too speculative and undeveloped to dismiss this case on the pleadings.

Simply, Defendants' cursory arguments about security concerns do not show that Gutierrez has failed to plead a claim on which relief can be granted. The Court **DENIES** Defendants' motion to dismiss Gutierrez' Establishment Clause claim. *See Twombly*, 550 U.S. at 555.

### E. Free Exercise Clause

Unlike the Establishment Clause claim, Fifth Circuit law shows that the *Turner* framework governs Gutierrez's Free Exercise Claim. To state a free exercise claim under the First Amendment, a plaintiff must allege sufficient facts showing a sincere religious belief that the official action or regulation substantially burdens. *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner*, 482 U.S. at 89). The Parties rely on the same discussion relating to Gutierrez's Establishment Clause claim to address his Free Exercise claim. The Court concludes that Gutierrez has sufficiently pleaded his claim that the current TDCJ policy precludes his sincere desire to have a spiritual advisor present during his execution. The Court **DENIES**

the motion to dismiss the Free Exercise claim for the same reasons as the Establishment Clause claim.

### F. RLUIPA

Gutierrez argues that the absence of a chaplain in the execution chamber violates his rights under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA or Act), 114 Stat. 804, 42 U.S.C. § 2000cc-1(a)(1)-(2).

As an initial matter, Defendants argue that Gutierrez has not "assert[ed] that the physical presence of a chaplain in the execution chamber is *required* for him to exercise his religion or to 'guide[]' [him] at the time of the execution." Dkt. No. 46 at 64 (emphasis added). Defendants have not identified any law sanctioning the dismissal of a RLUIPA claim based on religious devotion preferred by an inmate rather than compelled by his religion.[8] In his amended complaint, Gutierrez states he believes that "having a Christian chaplain present in the chamber would help to ensure his path to the afterlife." Dkt. No. 45 at 14. Gutierrez's statement that prohibiting him "from being guided at the time of death by a Christian chaplain is an explicit and substantial burden on religious exercise" provides a sufficient basis for his RLUIPA claim. Dkt. No 45 at 35-36.

Defendants also dispute the sincerity of Gutierrez's belief insofar as they argue that he "provides no support for his conclusory assertion that the presence of a TDCJ chaplain in the witness room—rather than the execution chamber and during visitation on the day of the execution—is a substantial burden on his exercise of his religion." Dkt. No. 46 at 64. Initially, "it falls to the plaintiff to demonstrate that the government practice complained of imposes a 'substantial burden' on his religious exercise." *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004) (citing 42 U.S.C. § 2000cc-2); *see also Holt v. Hobbs*, 574 U.S. 352, 360 (2015). "[W]hether the government action or regulation in question imposes a substantial burden on an adherent's religious exercise" requires "a case-by-case, fact-specific

---

[8]    The Supreme Court has "not addressed whether . . . there is a difference between a State's interference with a religious practice that is compelled and a religious practice that is merely preferred." *Murphy*, 139 S. Ct. at 1484 (Alito, J., dissenting from grant of application for stay).

inquiry." *Adkins*, 393 F.3d at 571. Defendants argue that Gutierrez "fails to demonstrate that TDCJ's policy would truly force him to 'substantially modify his religious behavior'" by having his spiritual advisor in the viewing room, rather than the execution chamber. Dkt. No. 46 at 64 (quoting *Adkins*, 393 F.3d at 570). At the pleadings stage, however, Gutierrez is not required to establish that he is entitled to relief. His burden is only to plead sufficient facts to state a claim for relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. Gutierrez has made that showing.

Defendants further argue that they have a valid security interest in preventing clergy from being present in the execution chamber. To reach this conclusion, Defendants do not argue that their previous policy that allowed TDCJ clergy to be present created a security risk, nor could they given its long history. Instead, Defendants argue that "[w]hile Plaintiff frames the relief he requests as straightforward—because TDCJ has in the past permitted its chaplains to attend executions—he ignores the inevitable consequences of that relief." Dkt. No. 46 at 67. Defendants argue that granting Gutierrez the relief he requests creates the constitutional concern which in *Murphy* "the Supreme Court signaled . . . was impermissible because spiritual advisors not employed by TDCJ could not be present in the execution chamber." Dkt. No. 46 at 66. Defendants' argument, however, rests on giving Justice Kavanaugh's statements precedential effect. *See Murphy*, 139 S. Ct. at 1476 (statement of Kavanaugh, J.). Justice Kavanaugh's statements do not have the precedential effect necessary to prove that a RUILPA claim fails as a matter of law. *See Ramos v. Louisiana*, ___ S. Ct. ___, 2020 WL 1906545, at *7 (2020)

Throughout the motion to dismiss, Defendants express concerns about the security problems that may result in the execution of other inmates if the Court grants Gutierrez the relief he requests. Security is a paramount consideration in the assessment of an RLUIPA claim. Defendants correctly argue that "it is indisputable that TDCJ's penological interest in security is a compelling interest." Dkt. No. 46 at 65. However, RLUIPA does not require "unquestioning deference" to prison

administrators. *Holt*, 574 U.S. at 864. A prison must "prove that denying the exemption is the least restrictive means of furthering a compelling governmental interest." *Id*. At this stage of litigation, the Court has no specific facts before it concerning future security concerns possibly caused by future executions.

## IX.   Conclusion Regarding Execution-Chamber Claims

In *Murphy*, three dissenting Supreme Court Justices commented that the issues raised by similar claims "are not simple, and they require a careful consideration of the legitimate interests of both prisoners and prisons." *Murphy*, 139 S. Ct. at 1485 (Alito, J., dissenting from grant of application for stay). Defendants' motion to dismiss may raise issues needing resolution as the case progresses, but those issues do not decide the matter immediately before the Court, which is whether Gutierrez pleaded a valid legal claim that survives a motion to dismiss. *See* Fed. R. Civ. P. 12(b); *Twombly*, 550 U.S. at 555. The Court **DENIES** Defendants' motion to dismiss Gutierrez's execution-chamber claims.

## X.   Conclusion

For the foregoing reasons and after examining the briefs, pleading and relevant law the Court **GRANTS IN PART** and **DENIES IN PART** Defendants Motion to Dismiss, Dkt. No. 46. The Court hereby:

- **GRANTS** Defendants' motion to dismiss for lack of subject matter jurisdiction all claims which seek relief or relitigation of the CCA's denial of DNA testing as barred by the *Rooker-Feldman* doctrine.

- **GRANTS** Defendants' motion to dismiss Gutierrez's Eighth Amendment Claims for failure to state a claim upon which relief can be granted in a § 1983 action.

- **GRANTS** Defendants' motion to dismiss Gutierrez's access to the courts claim for failure to state a claim upon which relief can be granted.

- **DENIES** Defendants' motion to dismiss for lack of subject matter jurisdiction Gutierrez's claims which challenge the constitutionality of

Texas' DNA testing statute on its face and as authoritatively construed by the CCA.

- **DENIES** Defendants' motion to dismiss due to Eleventh Amendment immunity.

- **DENIES** Defendants' motion to dismiss Gutierrez's constitutional challenge to the Texas DNA testing statute for failure to state a claim.

- **DENIES** Defendants' motion to dismiss due to the statute of limitations.

- **DENIES** Defendants' motion to dismiss due to issue preclusion.

- **DENIES** Defendants' motion to dismiss Gutierrez's Texas DNA statute challenge on the merits without additional briefing.

- **DENIES** Defendants' motion to dismiss Gutierrez's execution-chamber claims for failure to state a claim.

SIGNED this 2nd day of June, 2020.

Hilda Tagle
Senior United States District Judge