IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RUBEN GUTIERREZ, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:19-CV-0185 |
| | § | *Death Penalty Case* |
| LUIS V. SAENZ, et al., | § | |
| *Defendants.* | § | |

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT ADDITIONAL DISCOVERY

Two weeks before the close of discovery, Plaintiff served his third set of requests for production.[1] Plaintiff seeks leave to conduct this additional discovery outside of the discovery period previously agreed to by the parties and ordered by the Court. ECF No. 93.  Defendants oppose Plaintiff's additional discovery for the following reasons:

## I.  Summary of the Argument

(1)  Requiring Defendants to continue conducting overly burdensome discovery with little hope of discovering probative information beyond the current discovery deadlines ordered by the Court will prejudice Defendants because such discovery will occur during the time Defendants' counsel should be working on the briefing in this case.

(2)  The parties selected the discovery and briefing deadlines in this case themselves, and the Court accepted and adopted the parties' requested scheduling order. The current discovery deadline provided more than sufficient time for the Plaintiff to investigate his claims and conduct the necessary discovery. The current discovery deadline was purposefully scheduled and agreed to by the parties so discovery would end two weeks prior to the briefing deadline to give all parties sufficient time to dedicate to briefing.

(3)  Plaintiff has not shown good cause for his delayed request for production or cause to extend the discovery deadline.

---

[1]   Plaintiff's third request for production was emailed after hours on Friday, August 7, 2020, and was therefore read and received on Monday, August 10, 2020.

(4)     The requested documents have little or no probative value to Plaintiff's claims in this case.

(5)     The specific requests for production are extremely burdensome because Defendants do not maintain a centralized database of approved offender visits by spiritual advisors; thus, Plaintiffs requests would require individual hand searches of approximately 140,000 offenders' visitation files, which are kept at the 106 TDCJ prison units where offenders are housed.

## II.     Requiring the Defendants to Continue to Respond to Burdensome Discovery Will Prejudice Their Efforts to Complete Briefing.

The parties selected a discovery deadline two weeks prior to the briefing deadline intentionally, so the parties could sufficiently complete the required briefing in this matter. The current schedule calls for discovery to end on August 21, 2020, with the parties' principle briefs due September 4, 2020. The briefing in this case will be substantial, and Defendants' time and resources will be substantially compromised if Defendants are required to continue to respond to discovery after the parties' agreed upon deadline that was adopted by the Court. ECF No. 82. As discussed below, the Plaintiff's specific requests for production, *see* ECF No. 93-2, are extremely burdensome and would be very time consuming to compile. Accordingly, allowing Plaintiff to continue to conduct discovery beyond the deadline will unduly and unequally prejudice the Defendants.

## III.     The Parties, Including Plaintiff, Chose Their Own Discovery Deadline.

At the hearing on July 1, 2020, the Court adopted the parties' requested schedule. At the time of the hearing, Plaintiff had already propounded his first sets of written discovery requests and already knew he would receive the requested documents on July 23, 2020 (thirty days after the discovery requests had been served). If Plaintiff wanted an opportunity to send a new set of written discovery requests after he had an opportunity to review the documents produced in

response to the first set of requests, he could have, and should have, accounted for that in selecting

and agreeing upon a discovery deadline in the case. Plaintiff's lack of foresight should not be a

basis to prejudice Defendants.

**IV.     Plaintiff Has Not Shown Good Cause for His Delayed Request for Production or Good Cause to Extend the Discovery Deadline.**

Plaintiff cites to his receipt of Chaplaincy Manual Policy 11.09 on July 23, 2020 as the

source of new information triggering his third requests for production. ECF No. 93 at 2, ¶9.[2] He

waited another 16 days to send his third request for production.[3] Plaintiff has offered no

explanation for his delay in propounding the untimely third request more than two weeks after he

received the alleged source of new information triggering that request.

More importantly, Chaplaincy Manual Policy 11.09, which is the policy Plaintiff cites to as

the basis for his third request for production, delineates the process for requesting a spiritual

advisor visit. Spiritual advisors are non-TDCJ employees; rather, they are merely visitors who may

request and receive approval to visit offenders in the visitation area of the specific unit within

TDCJ where the offender is housed. Plaintiff Gutierrez has known what a spiritual advisor is since

before discovery commenced in this case. The grievance that Gutierrez submitted in April 2020,

identify his spiritual advisor as William Campbell Miles, who he claims had been previously

approved for spiritual advisor visits. *See Exhibit A*. Plaintiff Gutierrez could have propounded

these requests for production in the beginning of his lawsuit, since he already had knowledge of

---

[2]      Plaintiff also cites to TDCJ Administrative Directive 14.09. But AD-14.09 is a policy that deals with offender postage, and that policy has not been produced in this case. Plaintiff's counsel clarified in an email that the reference was a typographical error.

[3]      Since the request was emailed after hours on a Friday and was emailed to only Leah O'Leary, omitting all other defense counsel of record and legal assistants from the email, the request was not received until Monday, August 10, 2020.

the existence of spiritual advisors and knew the proper process to request visits with his spiritual advisor. Given Plaintiff's prior knowledge and use of the process to request visits from Plaintiff's own spiritual advisor, Plaintiff's eleventh-hour request to extend the discovery deadline to request additional information about this process is disingenuous and without merit.

Moreover, as is the case in many TDCJ policies, the same information is contained in multiple policies. The Offender Visitation Plan was produced to Plaintiff some time before June 19, 2020 (Bates Nos. Murphy 717—718)[4], *attached as Exhibit B*. The Offender Visitation Plan defines "spiritual advisor," describes the procedure for requesting a spiritual advisor visit and lists the required documentation to be submitted by the spiritual advisor along with his request form— essentially the exact information as Chaplaincy Manual Policy 11.09. *Exh. B*. Having had a copy of the Offender Visitation Plan since mid-June before any discovery had commenced in this case, Plaintiff has not shown why these new discovery requests could not have been propounded timely under the current schedule. As to Plaintiff's request for production of documents related to Certified Volunteer Chaplain's Assistants ("CVCA"), he also has had policies referencing CVCAs since before discovery commenced in this case. *See Exh. C*: Administrative Directive 7.30: Religious Programming (defining Certified Volunteer Chaplain Assistant as "an approved chaplaincy program volunteer who has received additional security and chaplaincy policy training. The CVCA assists the chaplain in accordance with the guidelines in the TDCJ Chaplaincy Manual.").

Since Plaintiff was aware of these policies before he propounded his first set of written discovery requests in advance of the July 1st hearing at which the Court adopted the parties' agreed

---

[4]     By agreement of the parties, the records produced by TDCJ in *Murphy v. Collier* may be utilized in the instant case. Gutierrez's counsel represented on June 19, 2020 in an email to the OAG, that he had already obtained a copy of all discovery in Murphy, with the exception of documents designated as Confidential.

upon discovery deadline, Plaintiff cannot point to new information that has been developed or received by Plaintiff as the basis for his untimely request..

## V.    The Requested Discovery Has No Probative Value.

Plaintiff has also not shown good cause or a need for the requested documents to justify conducting discovery beyond the discovery deadline. In his amended complaint, Plaintiff Gutierrez claims that he wants a TDCJ-employed chaplain to be present inside the execution chamber at the time of his death. ECF No. 45 at 36, ¶94. Plaintiff has been provided with a list of every TDCJ-employed chaplain, a list of the TDCJ contract chaplains, and each of their ecclesiastical endorsements. Spiritual advisors are merely visitors, similar to a friend or family member who may visit an offender. The identity of other offenders' spiritual visitors has nothing to do with Plaintiff's claims in this case. The identity and faith preferences of other offenders' spiritual visitors does not have a tendency to make any material fact more or less probable as required under Federal Rule of Evidence 401. Plaintiff also requested records identifying each Certified Volunteer Chaplain's Assistant (CVCA), who are volunteers who assist TDCJ-employed chaplains at some TDCJ units. Christopher Carter, who was deposed on August 11, 2020, testified there are approximately 780 CVCAs, but that number changes constantly. Plaintiff has not shown why the identification of spiritual advisors for other offenders or volunteers is probative, or why such information could not have been requested earlier in the case.

Plaintiff fails to demonstrate the probative value of the requested discovery and likewise fails to show good cause to justify going beyond the discovery deadline.

## VI.    The Requested Discovery is Overly Burdensome.

Most importantly, the requested discovery is extremely burdensome due to the way in which the sought records are kept in the regular course of TDCJ's business. As discussed above,

spiritual advisors are merely visitors who may submit a request to visit an offender at the specific unit where an offender is housed. Each individual requesting approval to visit an offender as a spiritual advisor must submit a form and a copy of an approved credential to prove they are visiting in a capacity as a spiritual advisor. That credential could be as simple as a letter from their local church explaining that the person is active in prison ministry. The request form and credential are reviewed by the unit chaplain and unit warden. The spiritual advisor is then approved for a single visit on the requested date and time. Approval is not continuous, and a new visitation request must be submitted each time the spiritual advisor wishes to visit an offender, although the credential document may not need to be resubmitted with each request. Once reviewed and approved or denied, the visitation form and credential document are placed in the individual offender's visitation file in paper form at the unit where the offender is housed at the time the request is made. Those documents are not saved in a centralized location for spiritual advisors or anywhere else. Accordingly, in order to gather records to identify every spiritual advisor that has been approved for a visit, TDCJ staff would have to physically pull the paper visitation folder from each offender's master file at the prison unit, and look through the visitation log to see if that offender has had any visitors who visited in a spiritual advisor capacity, and then make copies of any identified responsive documents. It is anticipated that each offender file search would take approximately ten minutes once the process is refined. There are approximately 140,000 offenders incarcerated in 106 TDCJ prison units. Although unit populations change daily, the Polunsky Unit where Plaintiff Gutierrez lives may house up to 2,984 offenders.[5] To conduct the search for responsive documents at the Polunsky Unit alone, it would take approximately 497 hours of staff time. To respond to Plaintiff's third request for production would be an insurmountable task for

---

[5]       https://www.tdcj.texas.gov/unit_directory/tl.html.

the Defendants, even if the discovery deadline were not at issue. Additionally, because the requested documents have little or no probative value, the substantial and unfeasible burden of producing the records is not justified.

### Conclusion

Plaintiff has known about the information now sought and has not shown good cause for his eleventh-hour request to conduct discovery beyond the discovery deadline; the burden of conducting additional discovery will impose substantial prejudice on the Defendants; the requested discovery has minimal, if any, relevance or probative value in this case; and the production of the requested documents would be extremely time-consuming and burdensome for Defendants. For these reasons, Defendants pray that the Court deny Plaintiff's motion for leave to conduct additional discovery beyond the discovery deadline.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**RYAN L. BANGERT**
Deputy First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

*/s/ Leah O'Leary*
**LEAH O'LEARY**
Assistant Attorney General
Attorney-in-Charge
State Bar No. 24079074
Southern District No. 1563191
Leah.Oleary@oag.texas.gov

Law Enforcement Defense Division
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9918

**AMY L. PRASAD**
Assistant Attorney General
Co-Counsel
Texas Bar No. 24037295
Southern District No. 563045
Amy.Prasad@oag.texas.gov

**JAY CLENDENIN**
Assistant Attorney General
Co-Counsel
Texas Bar No. 24059589
Southern District No. 920324
Jay.Clendenin@oag.texas.gov

**ATTORNEYS FOR DEFENDANTS
COLLIER, DAVIS, AND LEWIS**

## CERTIFICATE OF CONFERENCE

I, **LEAH O'LEARY**, Assistant Attorney General of Texas, certify that I conferred with counsel for Ruben Gutierrez before he filed his motion for leave to conduct discovery beyond the discovery deadline. Defendants are opposed to his request and file this response in opposition.

*/s/ Leah O'Leary*
**LEAH O'LEARY**
Assistant Attorney General

## NOTICE OF ELECTRONIC FILING

I, **LEAH O'LEARY**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing a true and correct copy of the foregoing in accordance with the Electronic Case Files system of the Southern District of Texas, on August 13, 2020.

*/s/ Leah O'Leary*
**LEAH O'LEARY**
Assistant Attorney General

8

## CERTIFICATE OF SERVICE

I, **LEAH O'LEARY**, Assistant Attorney General of Texas, do hereby certify that on August 13, 2020, a true and correct copy of the foregoing was served by the electronic case-filing system notification of the Court to all counsel of record.

*/s/Leah O'Leary*
**LEAH O'LEARY**
Assistant Attorney General