IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RUBEN GUTIERREZ, | § | |
|    *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:19-cv-0185 |
| | § | |
| LUIS SAENZ, Cameron County District | § | |
| Attorney, FELIX SAUCEDA, JR.., | § | |
| Chief, Brownsville Police Department, | § | |
| BRYAN COLLIER, Executive Director | § | |
| of the Texas Department of Criminal | § | |
| Justice, BOBBY LUMPKIN, Director | § | |
| OF the Texas Department of Criminal | § | |
| Justice–Correctional Institutions | § | |
| Division, and BILLY LEWIS, | § | |
| Warden of the Huntsville Unit, | § | |
|    *Defendants.* | § | |

### ORIGINAL ANSWER ON BEHALF OF
### DEFENDANTS LUIS SAENZ, FELIX SAUCEDA, JR., BRYAN COLLIER, BOBBY LUMPKIN, AND BILLY LEWIS

Defendants Luis Saenz, Felix Sauceda, Jr., Bryan Collier, Bobby Lumpkin,[1] and Billy Lewis, in their official capacities, file this original answer in response to Plaintiff Ruben Gutierrez's first amended complaint. Pl.'s Amended Compl., ECF No. 45. In his amended complaint, Gutierrez raised claims asserting a denial of his rights under the First, Eighth, and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).[2] *Id.* Specifically, Gutierrez challenged the constitutionality of Texas's postconviction DNA testing statute,

---

[1]    Bobby Lumpkin is now the Director of the Texas Department of Criminal Justice, Correctional Institutions Division. As Lorie Davis's successor, Director Lumpkin is "automatically substituted as a party." Fed. R. Civ. P. 25(d).

[2]    42 U.S.C. § 2000cc et seq.

1

Chapter 64 of the Texas Code of Criminal Procedure, alleging, *inter alia*, that the statute facially and as authoritatively construed by the Texas Court of Criminal Appeals (CCA) violates procedural due process (his DNA claims). *Id.* at 19–32. Gutierrez also claimed that the Texas Department of Criminal Justice's (TDCJ) execution protocol violates his constitutional and statutory rights because it does not permit the presence of a TDCJ-employed chaplain in the execution chamber during an execution (his Religion claims). *Id.* at 32–36.

Defendants moved to dismiss Gutierrez's amended complaint and opposed Gutierrez's request for a stay of his previously-scheduled execution. Defs' Mot. to Dismiss, ECF No. 46; Defs' Opp'n to Mot. for Stay, ECF No. 55. On June 2, 2020, this Court granted in part and denied in part Defendants' motion to dismiss. Mem. & Order 30–31, ECF No. 48. On June 9, 2020, the district court granted Gutierrez's motion to stay his execution. Order 3, ECF No. 57. Defendants appealed the stay to the Fifth Circuit Court of Appeals, which vacated the stay. *Gutierrez v. Saenz, et al.*, No. 20-70009, 2020 WL 3250040, at *4 (5th Cir. June 12, 2020). Gutierrez filed a petition for a writ of certiorari and an application for a stay of execution in the Supreme Court in which he abandoned his challenge to Chapter 64. On June 16, 2020, the Supreme Court granted the stay as to Gutierrez's Religion claims. *Gutierrez v. Saenz*, --- S. Ct. ---, 2020 WL 3248349, at * 1.

The Supreme Court directed this Court to promptly determine whether "serious security problems would result if a prisoner facing execution is permitted to choose a spiritual advisor the prisoner wishes to have in his immediate presence

2

during the execution." *Id*. The parties have since engaged in extensive discovery and will submit briefing addressing the Supreme Court's inquiry on September 22, 2020. Order 1–2, ECF No. 99. The parties will also submit briefing "regarding what, if any, DNA claims remain in this case and the merits of those claims." Order 1, ECF No. 70.

Due to the course of these proceedings, Defendants submit this original answer to Gutierrez's amended complaint, re-asserting their defenses, denials, and affirmative defenses. Pursuant to Fed. R. Civ. P. 8(b) and for the express purpose of requiring Gutierrez to meet his burden of proof in this suit, Defendants deny each and every allegation contained in Gutierrez's amended complaint except those expressly admitted herein.

## I. STATEMENT OF THE CASE

Plaintiff Ruben Gutierrez is an offender incarcerated on death row at the Polunsky Unit of TDCJ.[3] Gutierrez filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional and statutory rights. Pl.'s Amended Compl. 19–38, ECF No. 45. Following this Court's order staying Gutierrez's execution, the Fifth Circuit found Gutierrez's DNA claims to be without merit and vacated the stay. *Gutierrez v. Saenz*, 2020 WL 3250040, at *2. Gutierrez did not seek review in the Supreme Court of his DNA claims. Pet. Cert. 9, *Gutierrez v. Saenz, et al.*, No. 19-8695 (June 15, 2020) ("Mr. Gutierrez also alleged violations of due process with respect to the denial of DNA testing (claims he does not present to this Court)."). Gutierrez only

---

[3] Plaintiff Gutierrez was convicted of capital murder and sentenced to death for his participation in the robbery and murder of eighty-five-year old Escolastica Harrison. *See Ex parte Gutierrez*, 337 S.W.3d 883, 886–88 (Tex. Crim. App. 2011).

requested a stay of execution to allow for consideration of his petition for a writ of certiorari, which raised only his claims challenging TDCJ's execution-chamber policy. Appl. for Stay of Execution 2–4, *Gutierrez v. Saenz, et al.*, No. 19A1052 (June 15, 2020) ("Mr. Gutierrez respectfully requests a stay of execution pending consideration and disposition of the petition for a writ of certiorari filed along with this application."); Pet. Cert. ii, 9, *Gutierrez v. Saenz, et al.*, No. 19-8695 (June 15, 2020). The Fifth Circuit's rejection of Gutierrez's DNA claims and Gutierrez's choice to abandon those claims on appeal are strong indications that, assuming he attempts to revive those claims in this Court, the claims will be dismissed. Defendants deny that Gutierrez's constitutional rights have been or will be violated by the state court's denial of his request for postconviction DNA testing.

Gutierrez also complains that TDCJ's refusal to allow a TDCJ-employed chaplain to be inside the execution chamber at the time of his execution violates the Establishment Clause, his right to freely exercise his religion, and his rights protected under RLUIPA. Pl.'s Amended Compl. 32–36, ECF No. 45. In his deposition, however, Gutierrez testified that he is seeking permission for his outside spiritual advisor, a non-TDCJ employee, to be present inside the execution chamber and standing with a hand on Gutierrez's left shoulder throughout the execution process.

The relevant TDCJ policy states that only TDCJ security personnel shall be permitted in the execution chamber and that the Correctional Institutions Division Director or designee and the Huntsville Unit Warden or designee are the only two

4

individuals who may be inside the execution chamber during an execution procedure.[4] Pl.'s Status Report, Ex. B at 26, ECF No. 53-2.[5] The policy does not permit clergy of any kind, whether employed by TDCJ or not, to be inside the execution chamber. *Id.* An offender's spiritual advisor, whether an outside spiritual advisor[6] or a TDCJ employee, may be present in the viewing room for offender witnesses immediately adjacent to the execution chamber, which is separated by a clear plexi-glass window. Defendants deny that Gutierrez's constitutional or statutory rights have been or will be violated by the manner of execution or TDCJ's policy relating to persons permitted inside the execution chamber.

On May 13, 2019, in the case of *Patrick Murphy v. Bryan Collier, et al.*, Justice Kavanaugh issued an opinion, joined by Chief Justice Roberts, to comment on TDCJ's changed policy regarding who may be present inside the execution chamber.

> Texas now allows all religious ministers only in the viewing room and not in the execution room. The new policy solves the equal-treatment constitutional issue. And because States have a compelling interest in controlling access to the execution room, as detailed in the affidavit of the director of the Texas Correctional Institutions Division and as indicated in the prior concurring opinion in this case, the new Texas policy likely passes muster under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 114 Stat.803, 42 U. S. C. §2000cc et seq., and the Free Exercise Clause.

---

[4] Members of the confidential drug team enter and exit the execution chamber immediately prior to the execution procedure to prepare the condemned for administration of the lethal substance.

[5] This citation is to the clerk's pagination at the top of each page.

[6] This filing refers to an "outside spiritual advisor" as a member of the clergy or an individual approved in accordance with TDCJ policy and who serves an offender in an official religious capacity at the offender's request but is not a TDCJ employee.

5

No. 18A985, 139 S. Ct. 1475, 1476 (May 13, 2019). The Court goes on to say that TDCJ's execution protocol "should alleviate any future litigation delays or disruptions." *Id*. This language strongly forecasts the fate of Gutierrez's continued challenge to TDCJ's policy regarding who is permitted inside the execution chamber.

## II.   SPECIFIC ASSERTIONS AND DENIALS

### A.   Gutierrez's DNA claims

Defendants[7] admit that jurisdiction is proper for claims that allege cognizable § 1983 claims, but Defendants deny there is subject-matter jurisdiction for Gutierrez's DNA claims that seek any relief beyond a declaratory judgment as to the constitutionality of Chapter 64 and to the extent the claims do not challenge Chapter 64 facially and as authoritatively construed by the CCA. Pl.'s Amended Compl. 4 ¶ 9. Defendants admit venue is proper in the Southern District of Texas for the DNA claims for which there is subject-matter jurisdiction. *Id*. at 4 ¶ 10.

Defendants Saenz and Sauceda deny they are proper parties because they do not have adequate connection to the enforcement of Chapter 64. *Id*. at 4–5 ¶ 12, 13.

Defendants Saenz and Sauceda deny they have custody, possession, or control of evidence retained by the Texas Department of Public Safety. *See id*. at 16–17 ¶ 51.

Defendant Sauceda admits he has custody of the following evidence listed in the amended complaint: blood sample taken from Ms. Harrison; nightgown belonging to Ms. Harrison; shirt belonging to Avel Cuellar; and raincoat. *See id*.

---

[7]   Gutierrez's DNA claims are only against Defendants Saenz and Sauceda. Pl.'s Resp. 24 n.11, ECF No. 47.

Defendant Sauceda denies he has custody of blood samples collected from a bathroom, a raincoat, and a sofa. *See id.*

Defendant Sauceda admits he has custody of a rape kit, but he lacks information sufficient to form a belief as to the allegation that he has custody of a single loose hair found around the third digit of Ms. Harrison's left hand or nail scrapings taken from Ms. Harrison. *See id.*

Defendant Saenz denies he has custody of the evidence listed in the amended complaint. *See id.*

Defendants assert that Gutierrez's jury was charged that he could be found guilty of murdering Escolastica Harrison as a principal or a party. Gutierrez confessed to being inside Ms. Harrison's home when she was murdered, and witnesses testified that Gutierrez was near Ms. Harrison's home on the evening of her murder. *See id.* at 7–8 ¶ 22. Defendants assert that, as the CCA and Fifth Circuit concluded, DNA testing of the items Gutierrez sought to test would not lead to evidence that would have changed the result of his trial. *Gutierrez v. Saenz*, 2020 WL 3250040, at *2; *Gutierrez v. State*, 2020 WL 918669, at * (Tex. Crim. App. Feb. 26, 2020).

Defendants deny DNA testing is necessary to determine the identity of Ms. Harrison's attackers. Defendants deny that DNA testing could produce evidence that would have resulted in a different outcome at Gutierrez's trial. Pl.'s Amended Compl. 2 ¶ 6, 16–19 ¶ 51–60, 19 ¶ 62–63, 25–30 ¶ 71–81.

Defendants deny that DNA testing is necessary to, or would, establish that Gutierrez was not eligible for capital punishment. Defendants deny that Chapter 64

7

provides for DNA testing for the purpose of affecting punishment. *Id*. at 23 ¶ 66, 28–30 ¶ 78–81. Defendants deny that procedural due process requires a state to provide for DNA testing for the purpose of affecting punishment or that Gutierrez has a liberty interest in such non-existent procedures.

Defendants deny the medical examiner testified at Gutierrez's trial that Ms. Harrison struggled with her attacker(s) for at least a few minutes and fought her attacker(s) with her hands. *See id*. at 15–16 ¶ 48. Instead, the medical examiner testified that Ms. Harrison suffered defensive wounds (wounds suffered while "trying to ward off blows or attacks of some sort" or "dodging"). 19 RR 245–46.[8] She had "some scrapes on her right wrist" and elbow and on one knuckle. 19 RR 245. The medical examiner testified that Mrs. Harrison "struggl[ed]," but he did not testify that she fought her attacker(s) with her hands or that she struggled with them for several minutes. 19 RR 245, 247. The medical examiner testified that Mrs. Harrison may have lived "at least for some minutes after the last injury was inflicted" but that she would not have been conscious after receiving the blows to her face. 19 RR 271–72.

Defendants assert that, in denying Gutierrez's request for postconviction DNA testing in 2011, the CCA did not deny the request because it was not plausible that testing would reveal Pedro Gracia's DNA. *See* Pl.'s Amended Compl. 23 ¶ 67. Rather, the CCA found the presence of Gracia's DNA at the murder scene would not have changed the outcome of Gutierrez's trial. *Ex parte Gutierrez*, 337 S.W.3d at 901.

---

[8]  "RR" refers to the "Reporter's Record," the state record of transcribed trial and punishment proceedings, preceded by volume number and followed by the internal page number(s).

Defendants assert that, as this Court found, Gutierrez "made a reasonable decision not to test" the physical evidence prior to his trial. Mem. Op. & Order 74, *Gutierrez v. Stephens*, No. 1:09-CV-22 (S.D. Tex. Oct. 3, 2013), ECF No. 44; *see* Pl.'s Amended Compl. 1 ¶ 3.

Defendants admit that the Supreme Court has held that, if a state provides procedures for postconviction DNA testing, those procedures can be upset by a federal court "only if they are fundamentally inadequate to vindicate the substantive rights provided." *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009).

Defendants deny that Chapter 64, on its face or as authoritatively construed by the CCA violates procedural due process. Pl.'s Amended Compl. 21 ¶ 65.

Defendants deny that Gutierrez's right to procedural due process was violated by the state court's denial of his request for postconviction DNA testing under Chapter 64.

Defendants deny that Chapter 64 on its face and as authoritatively construed by the CCA effectively precludes DNA testing or makes it virtually impossible for any Texas inmate to obtain testing under Chapter 64. *Id.* at 21–22 ¶ 66, 24 ¶ 69. Defendants deny the CCA has construed Chapter 64 in such a way that it is virtually impossible for individuals convicted under the law of parties to obtain DNA testing. *Id.*

Defendants admit that Texas Code of Criminal Procedure article 64.03(a)(2) requires a convicted person to, *inter alia*, demonstrate by a preponderance of the

9

evidence that he or she would not have been convicted if exculpatory results had been obtained through DNA testing. Defendants deny that the preponderance-of-the-evidence standard of article 64.03(a)(2) is a particularly high or onerous burden of proof. *Id.* at 21–22 ¶ 66. Defendants admit that Congress and most state legislatures have implemented procedures for postconviction DNA testing and that there is no uniform materiality standard. Defendants assert that procedural due process does not mandate states employ any particular materiality standard.

Defendants deny that, in denying Gutierrez's request for DNA testing, the CCA confirmed a per se rule disentitling convicted persons from DNA testing if there is any evidence that he or she committed the crime as a principal or a party. *Id.* at 24 ¶ 68.

Defendants assert that Gutierrez's claim that his third statement to the police was coerced has been repeatedly rejected during his postconviction proceedings. *See Gutierrez v. Stephens*, 590 F. App'x 371, 375–77 (5th Cir. 2014); Pl.'s Amended Compl. 7 ¶ 22, 19 ¶ 60, 24 ¶ 69.

Defendants deny that the CCA's reliance on Gutierrez's third statement to find he could not satisfy Chapter 64's materiality standard was inconsistent with procedural due process or with the spirit of Chapter 64. *Id.* at 23 ¶ 68, 24 ¶ 70.

Defendants deny that the CCA improperly referenced Gutierrez's cohorts' statements in determining Gutierrez was present when Ms. Harrison was murdered—a conclusion already established by Gutierrez's confession. *Id.* at 24 ¶ 69.

Defendants deny that, if Gutierrez were arrested now, testing of the evidence he sought to have tested would be required under Texas Code of Criminal Procedure 38.43. Pl.'s Amended Compl. 2 ¶ 4; *see In re Solis-Gonzalez*, 489 S.W.3d 459, 461–62 (Tex. Crim. App. 2016).

Defendants deny that Gutierrez's Eighth Amendment rights or his right to access to the courts were violated by the state court's denial of his request for postconviction DNA testing. Pl.'s Amended Compl. 30–32 ¶ 82–87; Mem. & Order 14–15. Defendants assert Gutierrez's Eighth Amendment claim is cognizable only in habeas corpus. Mem. & Order 14–15.

Defendants assert that Chapter 64 does not provide for the blood spatter pattern analysis Gutierrez seeks. Pl.'s Amended Compl. 26 ¶ 73.

Defendants deny that the state court's denial of Gutierrez's request for DNA testing deprived him of access to the state clemency process. *Id.* at 20 ¶ 64.

Defendants assert that this Court is without jurisdiction to grant an injunction requiring Defendants to release evidence for DNA testing because such relief is in the form of mandamus and improperly seeks relief from a state court judgment. *Id.* at 36–38; *see* Mem. & Order 11–12. Defendants assert the only relief available via a § 1983 challenge to Chapter 64 is a declaratory judgment as to its constitutionality.

Defendants assert that Gutierrez's DNA claims are jurisdictionally barred to the extent they seek review in federal court of the CCA's judgment. Mem. & Order 11; *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923) (holding that the jurisdiction of the district court is strictly original); *District of Columbia Court of*

11

*Appeals v. Feldman*, 460 U.S. 476, 482 (1983) (holding a United States district court has no authority to review final judgments of a state court in judicial proceedings).

Defendants assert that Gutierrez's DNA claims are barred by issue preclusion to the extent they reassert claims he raised in state court.

### B. Gutierrez's Religion claims

The current TDCJ execution policy is neutral and generally applicable to all offenders sentenced to death. Gutierrez's constitutional claims fail if the challenged policy is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Defendants assert that the challenged TDCJ policy is, at a minimum, reasonably related to TDCJ's legitimate penological interests.

On the day of an execution, the offender is permitted to meet with his or her pre-approved spiritual advisor at the Huntsville Unit from 3:00 to 4:00 p.m. regardless of the offender's faith preference. Additionally, in the two and a half days before the offender is transported to the Huntsville Unit for execution, the offender may choose to spend the entire time—during normal business hours—with his pre-approved spiritual advisor. This time includes the offender's choice to spend the first part of the day of execution with his spiritual advisor before the offender is transported to the Huntsville Unit.

Defendants assert that allowing a non-TDCJ employee inside the execution chamber would substantially jeopardize security. Defendants further assert that conducting a background check of an outside spiritual advisor is wholly insufficient to allay the security risk of allowing an non-TDCJ employee in the execution

12

chamber. Prior to the policy change in 2019, TDCJ carefully scrutinized and observed a select few TDCJ-employed chaplains before considering whether to ask those chaplains to take part in the execution process. The factors considered by TDCJ are numerous and variable. TDCJ must ensure that an employee involved in any aspect of the execution process is emotionally mature enough to deal with the weight and stress of an execution and to maintain professional discretion after the execution has concluded. For TDCJ-employed chaplains who serve the role of providing human comfort and consistency leading up to and throughout the day of an execution, TDCJ must ensure he is a calming presence who can maintain his composure in front of an emotional family member, and who can respond professionally to questions about the execution process. TDCJ must ensure the TDCJ-employed chaplain is not likely to become sick or faint during the execution procedure as some reporters and witnesses have done in the past. In fact, there are many TDCJ employees who would not be suitable to take part in an execution process, despite their years of loyal service to the State. The decision and preparation process for TDCJ employees who take part in the execution process cannot be overstated and cannot be replicated with a non-employee.

In addition to his capital murder conviction, Gutierrez has received multiple disciplinaries for assaulting TDCJ employees been staff assaultive and has committed various acts of violence during his incarceration. Thus, in addition to its legitimate penological interest in maintaining control of who is permitted inside the execution chamber, TDCJ has a particularized security interest with regard to

13

Gutierrez in controlling the individuals permitted people who will be inside the execution chamber during his execution.

Defendants assert that the challenged TDCJ execution policy is the least restrictive means of furthering TDCJ and the State's compelling government interests in security and carrying out an execution with dignity and control. The challenged TDCJ policy, therefore, does not violate Gutierrez's rights under RLUIPA.

Defendants further deny that Gutierrez's religious exercise will be substantially burdened by the challenged TDCJ policy.

Defendants admit that Bryan Collier is the Executive Director of the Texas Department of Criminal Justice. Defendants admit that, at the time suit was filed, Lorie Davis was the Director of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"). However, Lorie Davis has retired from State service. Effective August 10, 2020, Bobby Lumpkin became the new Director of the TDCJ-CID.

Defendants admit that Billy Lewis is the Senior Warden of the Huntsville Unit, which is the unit where executions are carried out. Defendants deny that Billy Lewis, in his capacity as the Senior Warden of the Huntsville Unit, is the person who supervises executions. Rather, the Director of the TDCJ-CID is statutorily designated as the official who "supervises" executions. TEX. CODE CRIM. PRO. art. 43.14.

Defendants admit that the Establishment Clause prohibits governmental entities from passing laws that prefer one or more religions over others. Defendants

deny that the challenged TDCJ policy demonstrates a preference for any religion over another.

Defendants deny that the challenged TDCJ policy is not neutral between religions. Defendants further deny that the challenged TDCJ policy prefers any religion over another or that the policy prefers non-religion over religion. Defendants deny that the referenced policy is not neutral and deny that strict scrutiny should be applied. Defendants deny that strict scrutiny is the appropriate standard for Gutierrez's First Amendment claim. Defendants deny that the challenged TDCJ policy is discriminatory.

Defendants deny that the challenged TDCJ policy evinces a hostility toward religion. Defendants deny that the same process used for TDCJ-employed chaplains could be used for non-TDCJ employees in a manner that would mitigate the risk of allowing a non-TDCJ employee in the execution chamber.

Defendants deny that the challenged TDCJ policy will deprive Gutierrez of access to a spiritual advisor at the time of death. Defendants assert that a pre-approved spiritual advisor may be present in the viewing room for offender witnesses immediately adjacent to the execution chamber, which places the spiritual advisor within approximately three feet of the offender, and where the offender and spiritual advisor can see each other.

### III. Plaintiff's Prayer for Relief

Defendants deny that Gutierrez is entitled to the requested relief or any other relief.

Defendants deny that Chapter 64, facially or as authoritatively construed by the CCA, violates procedural due process.

Defendants deny that the challenged TDCJ execution policy has or will violate Gutierrez's rights under the Constitution. Defendants deny that the challenged policy has or will violate Gutierrez's rights under RLUIPA. Defendants deny that Gutierrez is entitled to an order prohibiting Defendants from executing Gutierrez. Defendants assert that the current TDCJ execution policy ensures that Gutierrez's execution will be conducted in a manner that does not violate his rights.

### IV. AFFIRMATIVE DEFENSES AND IMMUNITIES

Defendants assert that Gutierrez lacks standing to seek injunctive relief in the form of an order requiring Defendants to release evidence for DNA testing because such relief is in the form of mandamus and because such relief is barred by *Rooker/Feldman*.

Defendants assert that Saenz and Sauceda are immune from suit under the Eleventh Amendment because Gutierrez has failed to adequately allege they are connected to the enforcement of Chapter 64 or the state court's interpretation of the statute, Gutierrez has failed to adequately allege a proper challenge to Chapter 64 facially or as authoritatively construed by the CCA, and Gutierrez has failed to adequately allege Saenz or Sauceda has committed a violation of federal law.

Defendant Saenz asserts he is absolutely immune from suit to the extent Gutierrez alleges Saenz violated his constitutional rights in the initiation or

16

prosecution of the case against Gutierrez. *Moon v. City of El Paso*, 906 F.3d 352, 359–60 (5th Cir. 2018).

Defendants assert that some or all of Gutierrez's DNA and Religion claims are barred by the applicable statute of limitations.

Defendants assert that all of Gutierrez's religion claims are barred based on his failure to exhaust administrative remedies prior to filing suit as required under § 1997e of the Prison Litigation Reform Act (PLRA). 42 U.S.C. § 1997e. Gutierrez did not complete the prison grievance process prior to filing his lawsuit relating to the claims over which he now sues.

Defendants assert that Gutierrez lacks standing to bring his claims for injunctive relief against Billy Lewis, because Lewis lacks authority to change TDCJ policy or effectuate the requested injunctive relief. See TEX. CODE CRIM. PRO. art. 43.14. Gutierrez's claims against Lewis, therefore, are barred by Eleventh Amendment immunity.

## V.   CONCLUSION

For the foregoing reasons, Defendants ask the Court to deny all relief requested by Plaintiff Gutierrez, to enter judgment in Defendants' favor as to all claims asserted by Plaintiff Gutierrez, and to be granted all other and further legal and equitable relief to which they may be entitled.

    Respectfully submitted,

    **KEN PAXTON**
    Attorney General of Texas

    **JEFFREY C. MATEER**
    First Assistant Attorney General

**RYAN L. BANGERT**
Deputy First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

*/s/ Leah O'Leary*
**LEAH O'LEARY**
Assistant Attorney General
Attorney-in-Charge
State Bar No. 24079074
Southern District No. 1563191
Leah.Oleary@oag.texas.gov
Law Enforcement Defense Division
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9918

**AMY L. PRASAD**
Assistant Attorney General
Co-Counsel
Texas Bar No. 24037295
Southern District No. 563045
Amy.Prasad@oag.texas.gov

**JAY CLENDENIN**
Assistant Attorney General
Co-Counsel
Texas Bar No. 24059589
Southern District No. 920324
Jay.Clendenin@oag.texas.gov

**ATTORNEYS FOR DEFENDANTS COLLIER, DAVIS, AND LEWIS**

/s/ Edward Sandoval
**EDWARD SANDOVAL**
First Assistant District Attorney, Cameron County, Texas
State Bar No. 24063779
Southern District Admission No. 1057169
964 East Harrison St.

18

Brownsville, Texas 78520
email: *appellate@co.cameron.tx.us*

**ATTORNEY FOR DEFENDANT SAENZ**

/s/ Rene De Coss
RENE DE COSS
City Attorney, Brownsville, Texas
State Bar No. 00795315
Southern District Admission No. 20563
914 E. Van Buren
Brownsville, Texas 78520
email: *renedecoss@cob.us*

**ATTORNEY FOR DEFENDANT SAUCEDA**

## NOTICE OF ELECTRONIC FILING

I, **LEAH O'LEARY**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing a true and correct copy of the foregoing in accordance with the Electronic Case Files system of the Southern District of Texas, on September 9, 2020.

> */s/ Leah O'Leary*
> **LEAH O'LEARY**
> Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **LEAH O'LEARY**, Assistant Attorney General of Texas, certify that a true and correct copy of the foregoing has been served on all attorneys of record by electronic notification through the ECF system for the Southern District of Texas on September 9, 2020.

> */s/ Leah O'Leary*
> **LEAH O'LEARY**
> Assistant Attorney General