IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RUBEN GUTIERREZ,<br>    *Plaintiff,* | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 1:19-cv-185<br>*Death Penalty Case* |
| LUIS SAENZ, Cameron County District<br>Attorney, FELIX SAUCEDA, JR..,<br>Chief, Brownsville Police Department,<br>BRYAN COLLIER, Executive Director<br>of the Texas Department of Criminal<br>Justice, BOBBY LUMPKIN, Director<br>of the Texas Department of Criminal<br>Justice–Correctional Institutions<br>Division, and BILLY LEWIS,<br>Warden of the Huntsville Unit,<br>    *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

**DEFENDANTS BRYAN COLLIER, BOBBY LUMPKIN, AND BILLY LEWIS' RESPONSE TO PLAINTIFF'S MOTION TO STRIKE LORIE DAVIS'S DECLARATION [ECF NO. 114]**

Plaintiff Gutierrez moved the court to strike the declaration[1] of Lorie Davis on the basis that it constitutes a sham affidavit, that it was produced the morning after the discovery deadline, and that it was created after Ms. Davis was deposed. ECF No. 114. Defendants herein respond. The court should deny Plaintiff's motion because (1) the declaration is consistent with prior testimony and merely expounds on the same issues that Plaintiff has had ample opportunity to explore in discovery; (2) the declaration was timely and promptly disclosed, and Plaintiff fails to demonstrate harm or prejudice from the alleged one-night delay in disclosure; and (3) there is no legal authority for Plaintiff's assertion that former Defendant Lorie Davis was required to create her declaration earlier in the litigation.

---

[1] The terms "declaration" and "affidavit" are used interchangeably herein. Lorie Davis's declaration is signed and notarized testimony made under oath.

### I. The Declaration Does Not Constitute a Sham Affidavit.

**A. Lorie Davis's Declaration is not a sham affidavit because it is consistent with prior testimony and merely expounds on that testimony.**

The sham affidavit doctrine provides a "party may not manufacture a dispute of fact merely to defeat a motion for summary judgment". *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). This is because, if "a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony", "the utility of summary judgment as a procedure for screening out sham issues of fact" would be greatly diminished. *Id.* (quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)). A party is not entitled to use a declaration "that impeaches, without explanation, sworn testimony" to defeat summary judgment. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996).

Merely supplementing testimony, rather than contradicting it, is not a basis to exclude evidence under the sham affidavit rule. *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). "When an affidavit merely supplements rather than contradicts prior [ ] testimony, the court may consider the affidavit when evaluating genuine issues . . . ." *S.W.S. Erectors, Inc.*, 72 F.3d at 496 (citing *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988)). A declaration permissibly supplements an earlier statement if it merely "clarifie[s] or amplifie[s] the facts by giving greater detail or additional facts not previously provided in the deposition." *Id.*; *see also Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472&73 (5th Cir. 2019) (concluding that the district court abused its discretion by striking defendant's affidavit under the sham affidavit doctrine, because while the affidavit significantly supplemented the prior testimony factually, it contradicted nothing).

The sham-affidavit rule is applied sparingly and may be invoked only where there is some inherent inconsistency between a summary judgment affidavit and a deposition. *Axxiom Mfg., Inc. v. McCoy Invs., Inc.*, 846 F.Supp.2d 732, 749–50 (S.D. Tex. 2012). The key element under the sham affidavit doctrine is that the testimony must be directly inconsistent and without explanation of the inconsistency. *S.W.S. Erectors, Inc.*, 72 F.3d at 496. Otherwise, the affidavit is simply additional testimony. "To trigger the sham affidavit rule, the Court must find that the inconsistency between the [two forms of testimony] is clear and unambiguous enough to justify striking the subsequent declaration. *Jennings v. Brazoria Cnty.*, No. 3:17–CV–00243, 2018 WL 7625012, at *8 (S.D. Tex. Dec. 12, 2018). The 'sham' element is entirely absent from Ms. Davis's declaration, because it is consistent with her prior testimony and merely expounds upon it. *S.W.S. Erectors, Inc.*, 72 F.3d at 496 (stating that an affidavit is considered to merely supplement the deposition where it "simply clarified or amplified the facts by giving greater detail or additional facts not previously provided in the deposition").

The sham affidavit doctrine prevents a party who has been deposed from introducing an affidavit that contradicts that person's deposition testimony without explanation because "a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment." *Id.* The Fifth Circuit has noted that not "every discrepancy" between a deposition and affidavit should result in exclusion of the affidavit and that slightly inconsistent affidavits may "explain certain aspects of [a party's] deposition testimony." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980).

Black's Law Dictionary defines "inconsistent" as mutually repugnant or contradictory; contrary, the one to the other, so that both cannot stand, but the acceptance or establishment of the one implies the abrogation or abandonment of the other. Black's Law Dictionary (2d ed.). If

both can be true, then they cannot be said to be inconsistent. If the deposition testimony and the declaration statements that Plaintiff identifies are not clearly and unambiguously inconsistent, then the sham affidavit doctrine cannot apply.

      **1.     Ms. Davis's Testimony Regarding Disruptions During Execution Procedures is Consistent Across Her Depositions and Declaration.**

Plaintiff alleges that Lorie Davis's declaration attempts to "rehabilitate" her deposition testimony by expounding on instances in which there have been disruptions during execution procedures. ECF No. 114 at 4–5. Plaintiff points out that Ms. Davis testified that she was not aware of any instances of disruptions during executions that involved members of the clergy. But her declaration lists instances of disruptions during executions involving individuals who are not members of the clergy, such as the offenders' family members. These two pieces of testimony are clearly not inconsistent because both are true: While Ms. Davis *is not* aware of disruptions involving clergy, she *is* aware of disruptions involving non-clergy. Accordingly, these pieces of testimony identified by the Plaintiff cannot support a sham affidavit finding.

Additionally, in both of Lorie Davis's depositions (in Murphy and in Gutierrez), Plaintiffs' counsel were insistent in limiting their questions about disruptions to only those caused by clergy. *See, e.g.* ECF No. 109-1 at A159–160 (Depo. of Lorie Davis in *Gutierrez v. Saenz*) (asking Ms. Davis whether she was aware of incidents wherein a *TDCJ-employed chaplain* caused a security problem in an execution); ECF No. 109-1 at A-295–296 (Depo. of Lorie Davis in *Murphy v. Collier*) ("Q: But this question, I'm asking you specifically about any clerical persons who were witnesses, and I would assume that these would be the condemned person's spiritual advisor.…?") Plaintiffs' counsel in both *Murphy* and this case limited their questions only to incidents involving clergy, because they believe only those incidents would be relevant to the security concerns at issue in the two cases. *See* ECF No. 114 at 4–5 (arguing that disruptions during executions that did not involve

members of the clergy are not relevant). Neither counsel in the two depositions asked Ms. Davis whether there were disruptions involving persons who were not clergy. In fact, when Ms. Davis attempted to answer these questions by identifying examples of disruptions involving individuals who were not members of the clergy, Plaintiff's counsel clarified that he was not asking about those incidents. ECF No. 109-1 at A-293 (Davis Depo. at 44:1–15). Accordingly, Ms. Davis was not given the opportunity to list these instances of disruptions during her previous depositions because of Plaintiff's counsel's deficient questioning and affirmative avoidance of Ms. Davis's testimony regarding these incidents. In other words, Plaintiffs' counsel had the opportunity to inquire as to Ms. Davis's knowledge of instances of disruptions, but they did not want to hear about incidents that did not involve members of the clergy. In contrast, Defendants assert that all security disruptions arising during execution procedures are relevant to the security concerns at issue in this case. Ms. Davis is entitled to expound on those issues she believes to be relevant in her declaration and expounding on previous testimony will not support a sham affidavit finding.

> **2.  Ms. Davis's Testimony Regarding Her Consideration and Ultimate Rejection of Potential Less Restrictive Alternatives is Consistent Across her Depositions and Declaration.**

Plaintiff further complains that the following declaration statement and prior deposition testimony are inconsistent:

> **Declaration:** "Because there is no scenario where the TDCJ could safely or securely allow non-TDCJ employees in the execution chamber, the only choice was to restrict the execution chamber to only the Huntsville Unit Warden and the CID Director or their designees." ECF No. 110-16 at 2.

> **Deposition Testimony: ECF No. 109-1 at A220-A222.** Plaintiff alleges that Ms. Davis testified during her deposition that she had not considered certain vetting procedures as possible means of safely accommodating clergy members in the execution chamber. ECF No. 114 at 5, citing to three pages of Ms. Davis's deposition testimony—ECF No. 109-1 at A220-A222.

A review of that portion of the deposition demonstrates that Plaintiff's representation of that testimony is inaccurate. During the cited portion of Ms. Davis's deposition, she was asked whether she considered several possible requirements for spiritual advisors that could be utilized for vetting them prior to allowing them in the execution chamber. Specifically, Ms. Davis testified that she did consider requiring background checks for spiritual advisors (A-220:2–4); she did not consider requiring curriculum vitae from spiritual advisors (A-220:10–13); she wasn't sure whether she discussed requiring "other documents" (A-221:1–6); she testified that spiritual advisors were already required to provide credentials or endorsement letters from their faith, but that requiring them to prove a certain level or frequency of active participation in faith was not something she believed is required or could be required (A-221:14–25; A-222:1–2); she did not consider a requirement for letters of recommendation for spiritual advisors (A-222:8–12); she did not recall whether she specifically discussed a requirement for "references" (A-222:13–15); Ms. Davis testified that spiritual advisors are already required to provide an endorsement or credential from their faith (A-222:16–24); she did consider a requirement that consideration be given to the length of interaction that a spiritual advisor had had with the offender that was choosing them, and that she did consider subjecting spiritual advisors to an interview (A-223:1–15); and she did consider a requirement that spiritual advisors submit to an interview (A-223:17–21).

It is unclear in what way Plaintiff asserts Ms. Davis's deposition testimony is inconsistent with her declaration statement. Indeed, both can be and are true: Ms. Davis considered various possible vetting requirements for spiritual advisors, but ultimately rejected them and determined that there is "there is no scenario where the TDCJ could safely or securely allow non-TDCJ employees in the execution chamber."

Plaintiff has not identified any inconsistent statements between Ms. Davis's deposition testimony and her declaration. Accordingly, the severe sanction of striking Ms. Davis's declaration under the sham affidavit doctrine would be an abuse of discretion.

**B.     The Sham Affidavit Doctrine Does Not Apply Where the Court's Standard of Review Includes Making Credibility Determinations and Weighing the Evidence.**

In addition to the fact that Lorie Davis's declaration is consistent with her deposition testimony and other discovery responses, the sham affidavit doctrine applies only where the summary judgment standard is applicable. No party has moved for summary judgment in this case, and the Supreme Court's order for the district court to make a determination of the security issues requires this Court to weigh the evidence.

The purpose of the sham affidavit doctrine is to prevent parties from raising factual disputes by purposely submitting contradicting evidence. This is because at the summary judgment stage, the court is not permitted to weigh conflicting evidence. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249 (1986). Rather, if conflicting evidence arises in the summary judgment context, the court must simply deny summary judgment based on the existence of a material factual dispute. *Id.* However, the current briefs before the Court are not motions for summary judgment. Neither party has moved for summary judgment. Rather, the Supreme Court requested that the district court make a determination of the security problems. While the standard of review is unclear given the unique procedural posture of the briefing in this case, the district court's determination will not be whether to grant or deny summary judgment for any party. Defendants presume that in order to make the determination requested by the Supreme Court, the district court will make credibility determinations and weigh the evidence submitted by the parties, although such review would not be proper in the summary judgment context. Accordingly, application of the sham affidavit rule to avoid a factual dispute would serve no purpose in the instance proceedings.

Rather, the court should weigh the evidence including any competing evidence presented by the parties. There is no precedent for applying the sham affidavit doctrine outside the summary judgment context.

## II.     The Declaration Should Not Be Excluded Based on Untimely Disclosure.
### A.     Disclosure was Timely, Prompt, and Reasonable.

Lorie Davis's declaration was executed on August 19, 2020, sometime following the conclusion of her deposition. It did not exist prior to her deposition, and therefore could not have been produced prior to her deposition. A copy of the Declaration was disclosed to Plaintiff within two and a half days of its creation. Rule 26(e)(1) requires parties to supplement their initial disclosures "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A). Rule 26(e) "does not limit the time for supplementation of prior disclosures to the discovery period." *In re Sambrano*, 440 B.R. 702, 710 (U.S.B.C. Tex. Nov. 29, 2010). Other voluminous documents were also prepared and disclosed along with Ms. Davis's declaration in Defendants' second supplemental disclosures, and counsel were occupied preparing for and presenting Billy Hirsch for deposition on August 21, 2020. The process of disclosing a document cannot be instantaneous; the document is transmitted from the client to litigation counsel, the document must be reviewed and assessed for potential confidentiality issues, and all of the documents being supplemented must then be Bates numbered and indexed. Disclosing a document to opposing counsel within two and one half days of its creation is reasonable and timely.

Federal Rule of Civil Procedure ("Rule") 26(e) requires that a party "supplement or correct its disclosure or response in a timely manner." Fed. R. Civ. P. 26(e)(1)(A); *see also id.* at 2007 Amendment advisory committee's note.  The rule does not state or imply that the obligation to supplement ceases with the passage of the discovery deadline; the duty to supplement lingers on

without subsequent solicitation. *See TransFirst Holdings, Inc. v. Phillips*, 2008 WL 11350055 (N.D Tex. Aug. 14, 2008). There would be no reason for the parties to have a duty to continue to supplement disclosures beyond the discovery date, if disclosure after the discovery deadline were a basis to exclude everything thereafter supplemented.

As the sole authority to support striking the declaration as untimely, Plaintiff cites to *MGM Well Servs. v. Mega Lift Sys., LLC*, 2007 U.S. Dist. LEXIS 5005, *16 (S.D. Tex. Jan. 24, 2007). *MGM* is highly distinguishable from the circumstances of this case, however. In *MGM*, for example, the court issued an order specifically imposing on the parties the "duty to supplement or correct its disclosures *immediately* if the party obtains information on the basis of which it knows that the information disclosed was either incomplete or incorrect when made, or is no longer complete or true." Unlike the specific court order in *MGM*, Defendants here are governed by Rule 26(e), which requires a party supplement disclosures in a *timely* manner; not immediately and not instantaneously. Additionally, in *MGM* the court issued an order requiring very specific disclosures particular to the patent issues raised in that case. The defendants in *MGM* were months beyond the court-ordered deadline to disclose the existence of an allegedly similar technology system that was the subject of the alleged patent violation. The plaintiffs in *MGM*, therefore, were unable to prepare their case regarding an entire patent violation scheme. Such prejudice and surprise are not present in the instant case since Ms. Davis's declaration merely expounds on her prior testimony and offers no new factual assertions that were not offered in prior testimony and throughout Defendants' discovery responses. Had Plaintiff's counsel allowed Ms. Davis to testify about disruptions in the execution chamber caused by non-clergy members, there likely would have been no need for a declaration. When her deposition testimony was limited by Plaintiff's counsel to

responding only to the specific questions asked, , Ms. Davis chose to offer her personal knowledge in her own words in the form of an affidavit.

**B.      It is not Clear that the Discovery Period had Passed, and the Duty to Continue to Supplement Disclosures had not Passed.**

Disclosure was made to Plaintiff before 10:00 a.m. C.S.T. on August 22, 2020. The discovery deadline *was* August 21, 2020, however, Plaintiff filed a motion to extend the discovery period in order to conduct additional discovery. Plaintiff's motion was granted, and the Court allowed Plaintiff to conduct additional discovery through September 8, 2020. ECF No. 99. Despite Plaintiff's request to extend the discovery deadline to require Defendants to continue to produce documents, he now asks the Court to strike documents that were disclosed during that extended discovery period.

**C.      Plaintiff Cannot Show Bad Faith to Justify the Sanction of Striking Evidence.**

Whether the Court determines that Lorie Davis's declaration was produced one-day late after the applicable discovery deadline (August 21st) or it was timely produced within the extended discovery deadline that Plaintiff requested (September 22nd), the Declaration should not be stricken because (1) Plaintiff cannot show that Defendants acted in bad faith; (2) Plaintiff has not shown that he suffered unfair prejudice or harm as a result of receiving the Declaration on the morning after the close of discovery; and (3) the duty to supplement disclosures under Rule 26 continues beyond the discovery period. Fed. R. Civ. P. 26(e).

Sanctioning Defendants by striking Lorie Davis's declaration requires a showing of bad faith. *See In re Complaint of C.F. Bean LLC*, 841 F.3d 365, 374 (5th Cir. 2016) (reversing a trial court's order striking an expert disclosure made after the disclosure deadline because there was no evidence of bad faith); *Verzwyvelt v. St. Paul Fire & Marine Ins.*, 204 F.R.D. 309, 311 (W.D. La. 2001) (holding that exclusion of evidence was inappropriate in part because defendants showed

"a lack of organization" but "no bad faith" in failure to timely disclose expert report). Lorie Davis's Declaration was not intentionally withheld until the morning after the close of discovery. Defendants' second supplemental disclosures, which were sent on the morning of August 22, 2020, were intended to be sent on the afternoon of August 21, 2020, but for a miscommunication between undersigned counsel and her legal assistant. The miscommunication was that the legal assistant was awaiting a final "go ahead" before emailing the second supplemental disclosures to Plaintiff; whereas undersigned counsel believed that final approval and direction to send the disclosures on the afternoon of August 21, 2020, had already been given. As soon as the error was realized the next morning, undersigned counsel emailed Defendants' second supplemental disclosures to Plaintiff, who confirmed receipt a few minutes later.[2]

Circumstances in which a party's supplement may be considered timely filed after the discovery deadline may include where the party is not acting in bad faith or engaging in gamesmanship in seeking to supplement the disclosures. *TransFirst Holdings, Inc v. Phillips*, No. 3:06-cv-2303, 2008 WL 11350055, at *1 (N.D. Tex. Aug. 14, 2008). An intra-office miscommunication is the cause of the one-night delay in supplementing disclosures here. Moreover, a single night delay in disclosure does not represent gamesmanship as it offers no strategic advantage for Defendants or strategic disadvantage for Plaintiff.

### D.   Plaintiff Fails to Demonstrate Harm or Unfair Prejudice Resulting from the One-Night Delay in Disclosure.

---

[2]   Notably, Plaintiff's counsel recently suffered a similar miscommunication in his office, serving Defendants with their sealed filings days after they were filed, and explaining the delay as "I thought it was happening yesterday, but it did not." Sept. 24, 2020 Email between undersigned counsel and Matthew Lawry. Additionally, Plaintiff filed most of his exhibits in support of his principal brief two days after the Court's filing deadline, shortening Defendants' seven-day period within which to draft and file a responsive brief to five days. ECF Nos. 111 to 111-32. As of the date of this filing, Defendants have not raised objections to these miscommunications or delays. Defendants note the issues here merely to demonstrate that the parties have cooperated to litigate this case, and an objection based on a one-night delay in disclosure is not warranted.

To the extent the Court determines that the declaration was untimely disclosed, the short delay was harmless. To strike Lorie Davis's declaration on the basis of untimely disclosure one day after the close of discovery, Plaintiff must demonstrate that he suffered harm or prejudice as a result. Plaintiff has not alleged that he was deprived of an opportunity, was prejudiced, or suffered any other harm because he received it the morning after he should have received it. Had the intra-office miscommunication not occurred and the Declaration had been disclosed on the afternoon of August 21st instead of the next morning, it would have no effect–Lorie Davis had already been deposed before the Declaration came into existence. Plaintiff had notice and opportunity to ask Ms. Davis about disruptions in the execution chamber involving non-clergy members and declined to do so; thus, having a copy of the Declaration for one additional night would not have allowed the Plaintiff to conduct additional discovery relating to the affidavit.

Lorie Davis' declaration did not exist at the time that she was deposed on the morning of August 19, 2020. Plaintiff cannot show that he could have used the affidavit in her deposition but for the late disclosure.

## II. Lorie Davis Declaration is Not Hearsay and Several Hearsay Exceptions are Applicable.

Although Plaintiff describes the declaration as hearsay in asserting that it was untimely, Plaintiff has not challenged any particular statement within Davis's declaration as hearsay. ECF No. 114 generally. To raise a proper hearsay objection, Plaintiff must challenge the specific statements within the declaration—not merely the document as a whole. *See Mendez v. Poitevent*, No. DR-13-cv-0065-AM-VRG, 2014 WL 12639318 (E.D. Tex. Sept. 30, 2014) ("If a court determines that assertions within an affidavit are inadmissible, the court should disregard only the inadmissible portions of a challenged affidavit instead of striking the affidavit in its entirety.") (citing *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992)) (internal quotations omitted). Plaintiff

has not raised a proper hearsay objection. Moreover, in support of his briefing on the security issue, Plaintiff appended the following statements by Lorie Davis in their entirety: Davis deposition from *Murphy v. Collier* [ECF No. 109-1 at A-250]; Davis Deposition from *Gutierrez v. Saenz* [ECF No. 109-1 at A-133]; and Davis's responses to Plaintiff Murphy's interrogatories [ECF No. 109-6 at 987]. While each of these statements represents an out-of-court statement, Plaintiff offered them as an opposing party's statement. *See* Fed. R. Evid. 801(d)(2). As demonstrated below in section III.B. of this response, each of these prior statements contain the same information presented in the now-challenged declaration. The declaration is therefore appropriately offered as a consistent statement to rebut a charge against Ms. Davis's credibility. *See* Fed. R. Evid. 801(d)(1).

Additionally, several exceptions to the rule against hearsay apply to Ms. Davis's declaration. The assertions made in Ms. Davis's declaration are offered to prove her motive, intent, or plan regarding her decision to amend the TDCJ execution policy in April 2019. Her reasoning, the factors she considered, and security concerns are each factual details that demonstrate and support her motive and intent in deciding to remove TDCJ-employed chaplains from the execution chamber and to continue to exclude outside spiritual advisors from the execution chamber. *See* Fed. R. Evid. 803(3).

Ms. Davis's declaration also constitutes a record of regularly conducted business activity under Rule 803(6). The declaration describes acts, events, and opinions, that were otherwise documented at the time they occurred, as evidenced by the multiple sources of the information produced during discovery. The declaration discusses Ms. Davis's regular business activities, which include her statutory responsibility to oversee execution processes and create and implement policies governing Texas's execution process. ECF No. 110-16 at 1. Each of these conditions is shown by the testimony of Ms. Davis. ECF No. 109-1 at A-133; ECF No. 109-6 at

987; ECF No. 109-1 at A-250; ECF No. 110-16. Additionally, Plaintiff cannot show Ms. Davis's declaration indicates a lack of trustworthiness because Plaintiff offered at least three other sources of Ms. Davis's sworn testimony as exhibits to his principal briefing, which are each consistent with the challenged declaration. Fed. R. Evid. 803(6).

Ms. Davis's declaration also constitutes a public record under Federal Rule of Evidence 803(8). The declaration sets out Ms. Davis's activities in her official capacity as the Director of the TDCJ-Correctional Institutions Division, including overseeing execution procedures, implementing execution policies, and the methods that she utilized to carry out those responsibilities. *See* Fed. R. Evid. 803(8)(A)(i); ECF No. 110-16.

### III. A Party Is Not Obligated to Create Evidence Earlier in Litigation than it Becomes Necessary.

### A. The Declaration did not Exist Early Enough for Plaintiff to Utilize in Depositions, even if Disclosed One Night Earlier.

Plaintiff argues that he was deprived of an opportunity to depose Lorie Davis about her Declaration because it was produced the morning after the discovery deadline. This argument ignores the fact the Declaration did not exist prior to Ms. Davis's deposition.[3] Plaintiff further asserts that he was deprived of an opportunity to depose Billy Hirsch about Ms. Davis's Declaration because it was not disclosed instantaneously upon its creation and in time for the deposition of Billy Hirsch on August 21, 2020. As required by Rule 56(c)(4), Ms. Davis's affidavit was based on her personal knowledge. ECF No. 110-16 at 1. Billy Hirsch was deposed as TDCJ's 30(b)(6) representative, did not and was not required to review Ms. Davis's declaration, and was in fact deposed about the subject-matter in Ms. Davis's declaration that was known to the agency.

---

[3] Lorie Davis's final day of work with TDCJ was August 20, 2020. ECF No. 109-1 at A-438:3–6. The timing of her execution of the declaration is merely a circumstance of her wrapping up her involvement in the litigation before she retired.

ECF No. 109-1 at A-426 to A543. Ms. Davis's declaration was not one of the 30(b)(6) topics for which Mr. Hirsch was responsible for offering testimony, and he had not discussed her declaration with her. *See* ECF No. 109-1 at A-438.

Moreover, even if the declaration been produced one night earlier, as Plaintiff asserts was the deadline, all depositions had been completed and no additional depositions could have occurred. Plaintiff's complaint, then, is not that the declaration was produced one night late, but rather that the Defendant did not create the document earlier in the case. Plaintiff has cited no authority, and indeed none exists, for proposition that a party must create evidence before depositions occur, and affidavits are commonly created for exclusive use as summary judgment evidence after the parties have conducted discovery.

B.  **There is No Requirement that Defendants Present Their Evidence in the Form of Deposition Testimony Rather Than an Affidavit.**

Despite Plaintiff's complaints about the Defendants' use of an affidavit as opposed to deposition examination, there is no requirement that Defendants' evidence be developed in a deposition on re-direct examination as opposed to an affidavit. The Federal Rules specifically permit the use of affidavits or declarations, regardless of whether the declarant was also deposed. Fed. R. Civ. P. 56(c)(4). Defendants are entitled, under the Federal Rules of Civil Procedure and Evidence to utilize an affidavit as opposed to a deposition. "[A] party may supplement his [previous statement] with additional, consistent facts and details via [declaration]." *McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 335 (5th Cir. 2008) (concluding that a party's affidavit, created after his deposition, was permissible evidence and that it permissibly provided additional consistent details that had not been provided in his deposition testimony); *see also Clark v. Resistoflex, Inc.*, 854 F.2d 762, 766–67 (5th Cir. 1988) (stating that permissible supplementation of prior testimony through an affidavit including providing "greater detail or additional facts not previously provided

in the deposition"). And such strategy is particularly useful where Defendants believe the Plaintiff has taken a deficient deposition of the witness by failing to ask about certain relevant issues or has asked questions in an overly broad and confusing manner. *See generally* ECF No. 109-1 at A-133 to A-249 (noting multiple objections to deposition questions by defense counsel). Requiring the defense to repair the Plaintiff's deficient deposition as the only means of developing evidence is not required by any Federal Rule or general practice in discovery.

There is no rule of evidence or civil procedure that prevents a party from utilizing an affidavit to support their briefing, even if that witness was also deposed. And Plaintiff's general complaint that it was unfair, a surprise, or prevented him from cross-examining Lorie Davis as to each of her defenses and assertions is demonstrably incorrect. Ms. Davis's declaration expounds on other consistent testimony and offers her additional commentary about factual issues of which Plaintiff had ample opportunity to explore during discovery. Each of the topics addressed in Ms. Davis's declaration were addressed in other forms of discovery, which Plaintiff had opportunity and notice sufficient to develop and cross-examine. Ms. Davis's declaration assertions, along with other previously produced sources of the same information, can be summarized as follows:

1. Declaration: Davis supervises every aspect of an execution. ECF No. 110-16.
   Other Sources of the Same Information: ECF No. 109-1 at A-150–152 (Davis Deposition from *Gutierrez v. Saenz*); ECF No. 110-117 at 1–3 (Davis Declaration from *Murphy v. Collier*).

2. Declaration: Davis's decision and the signing of the revised execution protocol in April 2019. ECF No. 110-16.
   Other Sources of the Same Information: ECF No. 109-6 at A-1004–1005 (Davis's responses to interrogatories nos. 18 and 19 in *Murphy v. Collier*); ECF No. 109-1 at A-203–210; A-214–223 (Davis Deposition from *Gutierrez v. Saenz*).

3. Declaration: explaining what occurs on the day of execution. ECF No. 110-16
   Other Sources of the Same Information: ECF No. 110-17 at 1–3 (Davis Declaration from *Murphy v. Collier*).

4. Declaration: explaining the training process for TDCJ-employees involved in executions. ECF No. 110-16.

Other Sources of the Same Information: ECF No. 109-6 at A-991–993; A-999–1000 (Davis's responses to interrogatories nos. 5 and 12 in *Murphy v. Collier*); ECF No. 109-1 at A-276–281 (Davis Deposition from *Murphy v. Collier*).

5. Declaration: explaining the vetting process and constant evaluation of TDCJ employees selected to aid in executions. ECF No. 110-16.
Other Sources of the Same Information: ECF No. 109-6 at A-991–993 (Davis's response to interrogatory no. 5 in *Murphy v. Collier*); ECF No. 109-1 at A-276–281 (Davis Deposition from *Murphy v. Collier*).

6. Declaration: explaining why the process used for employees cannot be duplicated for non-TDCJ employees. ECF No. 110-16.
Other Sources of the Same Information: ECF No. 109-6 at A-991–993 (Davis's response to interrogatory no. 5 in *Murphy v. Collier*); ECF No. 109-1 at A-276–281 (Davis Deposition from *Murphy v. Collier*).

7. Declaration: explaining that the execution process revolves around victims and security. ECF No. 110-16.
Other Sources of the Same Information: ECF No. 110-17 at 1–3 (Davis Declaration from *Murphy v. Collier*).

8. Declaration: describing visitation and access to spiritual advisors prior to and during an execution. ECF No. 110-16.
Other Sources of the Same Information: ECF No. 109-6 at A-991–993 (Davis's response to interrogatory no. 5 in *Murphy v. Collier*); ECF No. 110-2 (TDCJ Execution Policy delineating spiritual advisor access prior to and during executions); ECF No. 109-1 at A-301–303 (Davis Deposition from *Murphy v. Collier*).

9. Declaration: opining on the risks of allowing a non-TDCJ employee in the execution chamber. ECF No. 110-16.
Other Sources of the Same Information: ECF No. 109-6 at A-991–993 (Davis's response to interrogatory no. 5 in *Murphy v. Collier*); ECF No. 110-17 at 1–3 (Davis Declaration from *Murphy v. Collier*).

10. Declaration: describing instances of disruptions during the execution process and instances of security breaches involving outside volunteers. ECF No. 110-16.
Other Sources of the Same Information: ECF No. 109-6 at A-1001–1003 (Davis's responses to interrogatory nos. 15 and 16 in *Murphy v. Collier*); ECF No. 109-1 at A-293–296 (Davis Deposition from *Murphy v. Collier*); ECF No. 110-20 (statistical data regarding security breaches by volunteers); ECF No. 109-1 at A-188–190 (Davis Deposition from *Gutierrez v. Collier*).

11. Declaration: explaining the need to quickly adapt and react to situations during the execution process. ECF No. 110-16.
Other Sources of the Same Information: ECF No. 109-6 at A-991–993 (Davis's response to interrogatory no. 5 in *Murphy v. Collier*).

As demonstrated, Plaintiff had notice and knowledge of every assertion in Davis's declaration prior to or during Davis's deposition, because her assertions have been repeated throughout the discovery process. Davis's declaration merely re-asserts the same facts and contentions, expounding on issues Plaintiff's counsel cut off in her deposition Plaintiff's complaint that he was not able to depose Ms. Davis regarding any of the subject-matter in her declaration is simply false.

## Conclusion

The sham affidavit doctrine does not apply to Lorie Davis's declaration because Plaintiff has not identified any statement that is clearly and unambiguously inconsistent with her prior testimony, and because the summary judgment standard does not apply to the current proceedings before the Court.

Additionally, the Court should not sanction Defendants by striking Lorie Davis's declaration on the basis that it was disclosed approximately one night after the discovery deadline. Given Plaintiff's request to extend the discovery deadline beyond August 21, 2020, Plaintiff has not shown harm or prejudice resulting from the one-night delay in disclosure and cannot show bad faith in the one-night delay. Lastly, Plaintiff has not identified a legal basis to strike the affidavit, nor has Plaintiff shown that Defense was required to offer the testimony through deposition questioning. Accordingly, the Court should deny Plaintiff Gutierrez's motion to strike Lorie Davis's declaration.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**RYAN L. BANGERT**
Deputy First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Chief, Law Enforcement Defense Division

*/s/ Leah O'Leary*
**LEAH O'LEARY**
Deputy Chief,
Law Enforcement Defense Division
Attorney in Charge
Texas Bar No. 24079074
Southern District No. 1563191
Leah.Oleary@oag.texas.gov

**AMY L. PRASAD**
Assistant Attorney General
Co-Counsel
Texas Bar No. 24037295
Southern District No. 563045
Amy.Prasad@oag.texas.gov

Law Enforcement Defense Division
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814

**ATTORNEYS FOR DEFENDANTS
COLLIER, LUMPKIN, AND LEWIS**

**NOTICE OF ELECTRONIC FILING**

I, **LEAH O'LEARY**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing a true and correct copy of the foregoing in accordance with the Electronic Case Files system of the Southern District of Texas, on October 8, 2020.

*/s/ Leah O'Leary*
**LEAH O'LEARY**
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, **LEAH O'LEARY**, Assistant Attorney General of Texas, certify that a true and correct copy of the foregoing has been served on all attorneys of record by electronic notification through the ECF system for the Southern District of Texas on October 8, 2020, to all counsel of record.

*/s/ Leah O'Leary*
**LEAH O'LEARY**
Assistant Attorney General