**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| RUBEN GUTIERREZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 1:19-CV-185 |
| | § | |
| LUIS V SAENZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

The Court is in receipt of Plaintiff Ruben Gutierrez's ("Gutierrez") Brief regarding DNA Claims, Dkt. No. 118, and of Defendants' Motion for Reconsideration. Dkt. No. 119. The Court is also in receipt of responses from Gutierrez and Defendants to their respective brief/motions. Dkt. Nos. 122, 123. Finally, the Court is in receipt of briefs from Gutierrez and Defendants regarding the effect of the Supreme Court's vacatur in this case. Dkt. Nos. 139, 140.

### I. Jurisdiction

This action arises under 42 U.S.C. § 1983. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343. Additionally, the Supreme Court determined in *Skinner v. Switzer* that a § 1983 action is the proper vehicle for a suit challenging a state DNA testing statute. *Skinner v. Switzer*, 562 U.S. 521, 534 (2011).

### II. Background

Gutierrez is incarcerated at the Allan B. Polunsky Unit of the Texas Department of Criminal Justice ("TDCJ") in Livingston, Texas. Dkt. No. 45 at 4-5. Gutierrez was sentenced to death for the murder of Escolastica Harrison in 1999. *Id.*

In this suit, Gutierrez has named as Defendants Luis V. Saenz ("Saenz"), District Attorney for the 107th Judicial District; Felix Sauceda, Jr. ("Sauceda"),

Chief of the Brownsville Police Department; Bryan Collier ("Collier"), Executive Director of the TDCJ; Lorie Davis ("Davis"), director of the Correctional Institutions Division of the TDCJ and Billy Lewis ("Lewis"), the senior warden of the Huntsville Unit where inmates are executed. Dkt. No. 45.

Gutierrez's complaint concerns 1) execution chamber free exercise of religion claims and 2) a challenge to Texas's DNA testing statute. Dkt. No. 45. This opinion only considers Gutierrez's DNA testing challenge.

Gutierrez's action arises under 42 U.S.C. § 1983 and challenges the constitutionality of the DNA testing procedures in Chapter 64 of the Texas Code of Criminal Procedure, Motion for Forensic DNA Testing ("Chapter 64"). Dkt. No. 45 at 3; Tex. Crim. Proc. Code art. 64. Gutierrez alleges he has repeatedly sought DNA testing which has been unfairly denied. Dkt. No. 45. Gutierrez challenges the constitutionality of Chapter 64 on its face and as it has been applied to him. *Id.* He claims the statute violates procedural due process because it denies him the ability to test evidence that would demonstrate he is innocent of the death penalty, and that it is unequally and unfairly applied to someone who is convicted of capital murder under the law of parties. *See* Tex. Penal Code Ann. § 7.01. He also claims Chapter 64's preponderance of the evidence/different outcome standard is overbroad. Dkt. No. 45 at 25-26. He seeks a declaratory judgment that Chapter 64 is unconstitutional. *Id.* at 37. Gutierrez challenges the State's refusal to release biological evidence for testing and requests the Court declare that the withholding of evidence for testing violates his procedural due process rights. *Id.* at 38.

On June 2, 2020, this Court granted in part and denied in part a motion to dismiss Gutierrez's complaint for failure to state a claim and lack of jurisdiction. Dkt. No. 48. On June 9, 2020, finding substantial factual and legal issues that were unresolved in this case, the Court stayed Gutierrez's execution that was scheduled for June 16, 2020. Dkt. No. 57. The Fifth Circuit vacated the stay of execution on June 12, 2020. *Gutierrez v. Saenz*, 818 F. App'x 309 (5th Cir. 2020). Gutierrez sought certiorari review of his execution chamber religion claims. *Gutierrez v. Saenz*, 19-8695, Petition for a Writ of Certiorari. The Supreme Court stayed

Gutierrez execution on June 16, 2020. *Gutierrez v. Saenz*, 207 L. Ed. 2d 1075 (June 16, 2020); *see Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).

On June 17, 2020, this Court set a deadline for the Parties to submit a brief regarding "what, if any, DNA claims remain in this case and the merits of those claims." Dkt. No. 70. Gutierrez filed his DNA claims brief on October 22, 2020. Dkt. No. 118. Defendants did not file a brief and instead filed a Motion for Reconsideration of the Court's June 2, 2020 order granting in part and denying in part Defendants motion to dismiss. Dkt. No. 119; *See* Dkt. No. 48. Response briefs were filed by both Parties on October 29, 2020. Dkt. Nos. 122, 123.

The Supreme Court issued a Grant, Vacate, and Remand ("GVR") order in this case on January 25, 2021. *Gutierrez v. Saenz*, No. 19-8695, 2021 WL 231538, at *1 (U.S. Jan. 25, 2021). The Supreme Court remanded to the Fifth Circuit with instructions to remand to the District Court for "further and prompt consideration of the merits of petitioner's underlying claims regarding the presence of a spiritual advisor in the execution chamber." Following the Supreme Court's instructions, the Fifth Circuit remanded to this Court on February 26, 2021. Dkt. No. 133.

## III. Arguments

Gutierrez argues the Fifth Circuit's vacatur of the stay of execution focused solely on whether he had made a sufficient showing on the merits of the stay and did not rule on the ultimate merits of any of his DNA claims. Dkt. No. 118. Gutierrez argues that the question to be decided by the undersigned is whether Gutierrez has stated a claim on which relief can be granted. *Id.* He argues that the Fifth Circuit misconstrued the facts in *Osborne* and this case, and therefore the Fifth Circuit's opinion was legally erroneous when applying *Osborne* to his DNA claims and should not be relied on by this Court. *Id.* at 10-13. Gutierrez argues Chapter 64's standard requiring him to prove by a preponderance of the evidence that he would not have been convicted of capital murder has created an insurmountable barrier to obtaining DNA testing. Gutierrez further argues that Texas courts have construed that standard in a way that is "virtually impossible to meet." *Id.* at 9. Gutierrez also argues the standard which allows for assessment of

evidence before it exists is an escape hatch that violates due process. *Id.* at 14. Additionally, he argues the procedures for DNA testing are fundamentally inadequate to vindicate the substantive rights the State of Texas provides. *Id.* Gutierrez argues the legal standard erects an impossibly high barrier to a defendant seeking to establish his innocence of a crime for which he was convicted. *Id.* at 14. Finally, Gutierrez argues the Chapter 64 standard precludes a defendant seeking to establish his innocence of the death penalty from receiving DNA testing, violating his rights under the Due Process Clause. *Id.* at 28-29.

Defendants' motion for reconsideration moves the Court to reconsider its prior order and dismiss Gutierrez's DNA claims because the Fifth Circuit concluded all of Gutierrez's claims are entirely without merit. Dkt. No. 119 at 8. Defendants then reassert the arguments they raised in the motion to dismiss regarding a time bar and a failure to state a claim. *Id.* Defendants argue the Fifth Circuit's ruling should be followed to dispose of all DNA claims in this action. Dkt. No. 140. Gutierrez argues that the Fifth Circuit's ruling no longer has precedential effect and further that no court has reached the merits of his DNA claims in this case. Dkt. No. 139.

## IV.  State Court DNA Proceedings

Gutierrez was indicted along with Rene Garcia ("Garcia") and Pedro Gracia ("Gracia") for the robbery and murder of Escolastica Harrison ("Harrison"). *Id.* at 6. Gracia was released on bond and absconded. *Id.* Garcia pleaded guilty and was sentenced to life imprisonment. *Id.* Gutierrez pleaded not guilty, was tried by a jury, convicted, and sentenced to death in 1999. *Id.* at 7.

### a.  2009 DNA Testing Motion

While proceeding in the 107th District Court before Judge Benjamin Euresti, Jr. ("Judge Euresti"), Gutierrez made several motions related to DNA testing. Following a May 14, 2008 denial of a state habeas petition, Gutierrez made a pro se motion for appointment of counsel on May 8, 2009 for the purpose of requesting DNA testing under Chapter 64. The motion was denied by Judge Euresti on May 29, 2009 and the Texas Court of Criminal Appeals ("CCA") dismissed Gutierrez's

appeal on March 24, 2010, concluding the denial of counsel was not appealable. *Gutierrez v. State*, 307 S.W.3d 318, 319 (Tex. Crim. App. 2010).

With assistance of his federal habeas counsel, Gutierrez moved for DNA testing under Chapter 64 on April 5, 2010. *State of Texas, v. Ruben Gutierrez*, 2010 WL 8231200 (Tex. Dist.). On August 27, 2010, Judge Euresti denied Gutierrez DNA testing under Chapter 64. Dkt. No. 45 at 9; Tex. Crim. Proc. Code art. 64. On May 4, 2011, the CCA affirmed the denial of the DNA testing motion. *Ex parte Gutierrez*, 337 S.W.3d 883, 886 (Tex. Crim. App. 2011). The CCA concluded Gutierrez was not entitled to appointment of counsel because "reasonable grounds" did not exist for filing a motion for post-conviction DNA testing. *Id.* at 890. The CCA upheld the trial court's decision that identity was not at issue in the case. *Id.* at 894. Finally, the CCA held that Gutierrez failed to establish that he would not have been convicted of capital murder if exculpatory evidence had been obtained through DNA testing. *Id.* at 899. It stated Gutierrez failed to show that potential exculpatory evidence obtained through DNA testing would create a greater than 50% chance that he would not have been convicted. *Id.* As an example, the court cited *Blacklock v. State* where the evidence fairly alleged "that the victim's lone attacker is the donor of the material for which appellant seeks DNA testing." *Id.* at 900; *see Blacklock v. State*, 235 S.W.3d 231, 232 (Tex. Crim. App. 2007). "In cases involving accomplices, the burden is more difficult because there is not a lone offender whose DNA must have been left at the scene." *Id.* The ultimate question, the CCA wrote, is "[w]ill this testing, if it shows that the biological material does not belong to the defendant, establish, by a preponderance of the evidence, that he did not commit the crime as either a principal or a party." *Id.* at 900. The CCA held the testing of fingernail scrapings of Harrison would be exculpatory only if the results showed co-defendant Gracia's DNA. *Id.* at 901. Such an outcome defies common sense, the CCA decided, as "[t]he only conceivable 'exculpatory' result would be DNA from the third accomplice, Pedro Gracia, in the fingernail scrapings. But is this plausible? All

three robbers agreed that Pedro Gracia was the driver and did not go inside Mrs. Harrison's home." *Id.* at 901.[1]

In conclusion, the CCA held that Chapter 64 could only be invoked by persons who "'would not have been *convicted* if exculpatory results' were obtained." *Id.* (emphasis in original). The CCA held the statute does not authorize testing when exculpatory results only affect the punishment received. *Id.* The CCA did not rule on the implications of its ruling on the procedure for subsequent habeas proceedings as provided by Texas Code of Criminal Procedure Article 11.071 § 5(a)(3). *See infra*, p. 19.

### b. 2019 DNA Testing Motion

On June 14, 2019, Gutierrez again sought DNA testing under a revised version of Chapter 64.[2] Dkt. No. 45 at 12-13. Judge Euresti granted the request for DNA testing on June 20, 2019 and his order was filed by the Clerk of the Court at 9:09 a.m. On June 27, 2019, two orders were signed by Judge Euresti and filed. At 11:10 a.m. an order was filed withdrawing the order granting DNA testing and at 11:13 a.m. an order was filed denying the motion for DNA testing. Dkt. Nos. 1-1 at 3-5; 45 at 13; *Ex parte Gutierrez*, No. 98-CR-1391-A, Order (Tex. 107th Judicial Dist. Ct. June 20, 2019). On February 26, 2020, the CCA affirmed the June 27, 2019 denial of testing on the merits. Dkt. No. 45 at 13; *Gutierrez v. State*, No. AP-77,089, 2020 WL 918669, at *1 (Tex. Crim. App. Feb. 26, 2020). The CCA held that Gutierrez failed to establish that he would not have been convicted if exculpatory results had been obtained through DNA testing because of Gutierrez's conviction as a party. *Id.* at *8 (citing *Wilson v. State*, 185 S.W.3d 481, 485 (Tex. Crim. App. 2006)). The CCA concluded that the statements of Gutierrez and the codefendants were probative as to whether identity was at issue in the case. *Id.* at *7. It also concluded that these statements were probative as to whether Gutierrez could meet

---

[1] The CCA referred to the statements of the three codefendants that were submitted by the State in opposition to the DNA testing motion but that were not presented at trial. *Ex parte Gutierrez*, 337 S.W.3d at 893.

[2] Texas removed a no-fault requirement from the DNA testing statute in 2011. *See* Tex. Code Crim. Proc. Ann. art. 64.01

his burden to show that he would not have been convicted should DNA testing reveal exculpatory results. *Id.* at *7.

The CCA reiterated its interpretation of Chapter 64 that the statute applies only to testing evidence which could demonstrate by a preponderance of the evidence that a person would not have been convicted of a crime. *Id.* at *9. The CCA stated that even if the testing showed Gutierrez did not commit the murder, he would still have been death eligible. *Id.* at *9 (citing *Enmund v. Florida*, 458 U.S. 782 (1982) and *Tison v. Arizona*, 481 U.S. 137 (1987)).

## V.   Federal Court Proceedings

### a. District Court Proceedings

Gutierrez filed his complaint in this Court on September 26, 2019, when the CCA had not yet ruled on the 2019 DNA testing motion. Dkt. No. 1. On January 7, 2020, the Court stayed the case pending resolution of Gutierrez's appeal before the CCA. Dkt. No. 35. Following the final decision from the CCA on February 26, 2020, the Court lifted the stay on March 9, 2020. Dkt. No. 41. Gutierrez filed an amended complaint on April 22, 2020. Dkt. No. 43. Defendants moved to dismiss for failure to state a claim and lack of jurisdiction on May 12, 2020. Dkt. No. 46. The undersigned issued a Memorandum and Order June 2, 2020 granting in part and denying in part the motion to dismiss. Dkt. No. 48. In its order the Court:

- Granted Defendants' motion to dismiss for lack of subject matter jurisdiction all claims which seek relief or relitigation of the CCA's denial of DNA testing as barred by the *Rooker-Feldman* doctrine.
- Granted Defendants' motion to dismiss Gutierrez's Eighth Amendment Claims for failure to state a claim upon which relief can be granted in a § 1983 action.
- Granted Defendants' motion to dismiss Gutierrez's access to the courts claim for failure to state a claim upon which relief can be granted.
- Denied Defendants' motion to dismiss for lack of subject matter jurisdiction Gutierrez's claims which challenge the constitutionality of

the Texas DNA testing statute on its face and as authoritatively construed by the CCA.

- Denied Defendants' motion to dismiss based on Eleventh Amendment immunity.
- Denied Defendants' motion to dismiss Gutierrez's constitutional challenge to the Texas DNA testing statute for failure to state a claim.
- Denied Defendants' motion to dismiss due to the statute of limitations.
- Denied Defendants' motion to dismiss due to issue preclusion.
- Denied Defendants' motion to dismiss Gutierrez's Texas DNA statute challenge on the merits without additional briefing.
- Denied Defendants' motion to dismiss Gutierrez's execution-chamber claims for failure to state a claim.
- Reserved its decision on Gutierrez's motion to stay execution.

Following additional briefing on the stay of execution motion, the Court granted a stay of execution on June 9, 2020. Dkt. No. 57. The Court concluded its previous analysis demonstrated there are outstanding and novel legal and factual questions to be resolved and Gutierrez had made a showing of likelihood of success on the merits of at least one of his DNA or execution-chamber claims. *Id.*

### b. Fifth Circuit Ruling

The Fifth Circuit vacated the stay of execution on June 12, 2020. *Gutierrez v. Saenz,* 818 F. App'x 309, 312 (5th Cir. 2020), *cert. granted, judgment vacated*, No. 19-8695, 2021 WL 231538 (U.S. Jan. 25, 2021). The Fifth Circuit concluded that Chapter 64, facially and as applied, comported with the Supreme Court's decision in *Osborne. Id.*

Turning to the execution-chamber claims, the Fifth Circuit applied *Turner* to Gutierrez's Establishment Clause claim and concluded Gutierrez failed to make a strong showing of likelihood of success on the merits in establishing that TDCJ's execution policy is not reasonably related to legitimate penological interests. *Gutierrez v. Saenz,* 818 F. App'x at 313 (citing *Turner v. Safley*, 482 U.S. 78 (1987)). The Fifth Circuit held that Gutierrez's impending death does not amount to a

showing of irreparable injury, "given the extent of Gutierrez's litigation and re-litigation." *Id.* at 314. The Court concluded all four stay factors did not weigh in Gutierrez's favor and vacated the stay. *Id.*

### c. Supreme Court GVR

When the Fifth Circuit issued its mandate, the Court regained jurisdiction over this case. *Arenson v. S. Univ. Law Ctr.*, 963 F.2d 88, 90 (5th Cir. 1992) ("The district court regained jurisdiction over the case upon our issuance of the mandate."). Gutierrez appealed the Fifth Circuit's decision on grounds solely related to the execution chamber claims, and this Court was divested of jurisdiction over the execution chamber claims pending appeal before the Supreme Court. *See Griggs*, 459 U.S. at 58 ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990) ("When one aspect of a case is before the appellate court on interlocutory review, the district court is divested of jurisdiction over that aspect of the case.").

On January 25, 2021, the Supreme Court granted Gutierrez's petition for a writ of certiorari, it vacated the Fifth Circuit's June 12, 2020 order granting the motion to vacate the stay of execution in this case, and remanded to the Fifth Circuit with instructions to remand the case to the District Court for "for further and prompt consideration of the merits of petitioner's underlying claims regarding the presence of a spiritual advisor in the execution chamber in light of the District Court's November 24, 2020 findings of fact." *Gutierrez v. Saenz*, No. 19-8695, 2021 WL 231538, at *1 (U.S. Jan. 25, 2021). In its order, the Supreme Court stated that "[a]lthough this Court's stay of execution shall terminate upon the sending down of the judgment of this Court, the disposition of the petition for a writ of certiorari is without prejudice to a renewed application regarding a stay of execution should petitioner's execution be rescheduled before resolution of his claims regarding the presence of a spiritual advisor in the execution chamber." *Id.*

Following the Supreme Court's mandate, the Fifth Circuit repeated the Supreme Court's instruction and remanded on February 26, 2021, returning jurisdiction over all aspects of this case to this Court. Dkt. No. 133.

## VI. Post-Conviction Laws in Texas

### a. Article 11.071

Texas Code of Criminal Procedure Article 11.071 Procedure in Death Penalty Case ("Article 11.071") specifies the requirements for habeas corpus procedure in death penalty cases. Tex. Code Crim. Proc. Ann. art. 11.071. Section 5(a)(3) grants the right of a subsequent habeas petition if a defendant can show by clear and convincing evidence, he would have been innocent of the death penalty. *Id.* Section 5(a)(3) reads:

> (a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>
> [...]
>
> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

*Id.*

The Fifth Circuit has determined that this section incorporates the Supreme Court's innocence of the death penalty standard as described in *Sawyer v. Whitley*. "The Texas legislature incorporated into § 5(a)(3) both *Sawyer's* definition of 'actual innocence of the death penalty' and *Sawyer's* clear-and-convincing standard of proof for such a claim." *Rocha v. Thaler*, 626 F.3d 815, 823 (5th Cir. 2010).

In *Sawyer v. Whitley*, the Court recognized the importance of being able to challenge the absence of aggravating factors in post-conviction proceedings to demonstrate a person's innocence of the sentence of death. *Sawyer v. Whitley*, 505

U.S. 333, 345 (1992). "Sensible meaning is given to the term 'innocent of the death penalty' by allowing a showing in addition to innocence of the capital crime itself a showing that there was no aggravating circumstance or that some other condition of eligibility had not been met." *Id.*

In applying § 5(a)(3) the CCA determined petitioners must make

"'a threshold showing of evidence that would be at least sufficient to support an ultimate conclusion, by clear and convincing evidence, that no rational factfinder would fail to find' that 'the applicant is ineligible for the death penalty.' In other words, the CCA makes a threshold determination of whether the facts and evidence contained in the successive habeas application, if true, would make a clear and convincing showing that the applicant is actually innocent of the death penalty. The CCA concluded that performing this kind of threshold review was consistent with the fact that, in enacting § 5(a)(3), the Texas 'Legislature apparently intended to codify, more or less, the doctrine found in *Sawyer v. Whitley*.'

*Rocha*, 626 F.3d at 822 (quoting *Ex parte Blue*, 230 S.W.3d 151, 162 (Tex. Crim. App. 2007)).

### b. Chapter 64

Chapter 64 grants a right to DNA testing. Tex. Code Crim. Proc. Ann. art. 64. The statute's motion requirements allow for testing of biological material that was not previously subject to DNA testing or was subject to testing but can be subject to newer testing techniques. Tex. Code Crim. Proc. Ann. art. 64.01 Motion. After 2011, this section no longer included a no-fault requirement for a defendant to move for DNA testing. *See* Tex. Code Crim. Proc. Ann. art. 64.01 (Effective: September 1, 2007 to August 31, 2011).

Article 64.03 lists the requirements to be eligible for DNA testing:

(a) A convicting court may order forensic DNA testing under this chapter only if:

(1) the court finds that:

(A) the evidence:

(i) still exists and is in a condition making DNA testing possible; and

(ii) has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect;

(B) there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; and

(C) identity was or is an issue in the case; and

(2) the convicted person establishes by a preponderance of the evidence that:

(A) the person would not have been convicted if exculpatory results had been obtained through DNA testing; and

(B) the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.

(b) A convicted person who pleaded guilty or nolo contendere or, whether before or after conviction, made a confession or similar admission in the case may submit a motion under this chapter, and the convicting court is prohibited from finding that identity was not an issue in the case solely on the basis of that plea, confession, or admission, as applicable.

(b-1) Notwithstanding Subsection (c) a convicting court shall order that the requested DNA testing be done with respect to evidence described by Article 64.01(b)(2)(B) if the court finds in the affirmative the issues listed in Subsection (a)(1), regardless of whether the convicted person meets the requirements of Subsection (a)(2).

Tex. Code Crim. Proc. Ann. art. 64.03.

## VII. Legal Standard

### a. Reconsideration

Although a motion to reconsider is not explicitly provided for in the Federal Rules of Civil Procedure, under Rule 54 a Court may revise any of its orders or other decision before the entry of judgment adjudicating all the claims and rights of the parties. Fed. R. Civ. P. 54(b). Reconsideration of interlocutory orders are

discretionary. *Zimzores v. Veterans Admin.*, 778 F.2d 264, 267 (5th Cir. 1985). The Court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981).

### b. Law of the Case, Mandate Rule, GVR

"When a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 562 U.S. 476, 506 (2011). The doctrine expresses the practice of courts to refuse to reopen what has been decided. *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016). Statute, law, and the nature of judicial hierarchy also binds lower courts to honor the mandate of a superior court. 28 U.S.C. § 2106; "The law of the case doctrine posits that ordinarily 'an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on subsequent appeal.'" *United States v. Lee*, 358 F.3d 315, 320 (5th Cir. 2004). The law of the case is not "inviolate" in three circumstances: 1) when facts are later determined to be significantly different, 2) after an intervening change in law, and 3) the earlier decision is clearly erroneous. *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002). "The mandate rule […] has the same exceptions as does the general doctrine of law of the case; these exceptions, if present, would permit a district court to exceed our mandate on remand." *Id.*

A lower court must implement the letter and spirit of the higher court's mandate and cannot ignore explicit directives. *Lee*, 358 F.3d at 321. The mandate rule covers issues decided expressly and by implication. *Id.* A careful reading of the reviewing court's opinion is required to determine what issues were actually decided by the mandate. *Id.*

GVRs ("Grant, Vacate, Remand") are granted by the Supreme Court to conserve its resources and to assist "the court below by flagging a particular issue that it does not appear to have fully considered" and it helps the Supreme Court in obtaining the "benefit of the lower court's insight" before the Supreme Court rules on the merits. *Lawrence on Behalf of Lawrence v. Chater*, 516 U.S. 163, 167 (1996). "A GVR

'does 'not amount to a final determination on the merits.'" *Kenemore v. Roy*, 690 F.3d 639, 642 (5th Cir. 2012). "A GVR does not bind the lower court to which the case is remanded; that court is free to determine whether its original decision is still correct in light of the changed circumstances or whether a different result is more appropriate." *Id.*

"The effect of vacating the judgment below is to take away from it any precedential effect." *Troy State Univ. v. Dickey*, 402 F.2d 515, 516 (5th Cir. 1968). At the same time, the vacated decision is still available to be cited for its "persuasive weight." *NASD Dispute Resolution, Inc. v. Judicial Council*, 488 F.3d 1065, 1069 (9th Cir. 2007); *Johnson v. Bd. of Educ. of City of Chicago*, 457 U.S. 52, 53 (1982). When a decision is vacated "all is effectually extinguished." *Falcon v. Gen. Tel. Co.*, 815 F.2d 317, 320 (5th Cir. 1987) (citing *Lebus v. Seafarer's International Union, Etc.*, 398 F.2d 281 (5th Cir.1968)).

### c. Section 1983 DNA Testing Challenge: *Osborne* and *Skinner*

The U.S. Supreme Court stated in *Osborne* and then in *Skinner* that challenges to DNA testing procedures may be brought in a § 1983 action because requesting access to testing does not necessarily imply the guilt or innocence of a defendant as the defendant is not yet in possession of exculpatory evidence. *Skinner v. Switzer*, 562 U.S. 521, 534 (2011); *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 55, (2009). Such § 1983 actions are limited, but not barred, by the *Rooker-Feldman* doctrine, which prohibits relitigation of state judgments in federal court. *Skinner*, 562 U.S. at 532. A challenge to the constitutional adequacy of state-law procedures for post-conviction DNA testing is not within *Rooker-Feldman's* ambit. *Id.* So long as the Plaintiff does not challenge the state court decisions on DNA testing themselves "it is not an impediment to the exercise of federal jurisdiction that the 'same or a related question' was earlier aired between the parties in state court." *Skinner*, 562 U.S. at 532.

DNA testing is a powerful tool in the criminal justice system and states are experimenting with the challenges and opportunities posed by DNA evidence. *Osborne*, 557 U.S. 52, 62 (2009). The Supreme Court decided in *Osborne* to not

constitutionalize the area of DNA testing so as to not "short-circuit what looks to be a prompt and considered legislative response" from the states in this fast-developing area of science and law. *Id.* Accordingly, there is no "freestanding" substantive due process right to access DNA evidence, and federal courts should not presume that state criminal procedures are inadequate to deal with DNA evidence. *Osborne*, 557 U.S. at 73-74. Post-conviction DNA testing claims are not "parallel" to a trial right and are not analyzed under the *Brady* framework. *Id.* at 69; *see Brady v. Maryland*, 373 U.S. 83 (1963). Yet, a state's DNA testing procedures must still comply with some baseline constitutional protections. *Osborne*, 557 U.S. at 69.

The questions a court asks are 1) whether the state has granted a liberty interest in demonstrating innocence with new evidence and 2) whether the procedures for vindicating that liberty interest are adequate. *Id.* Such procedures must not "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgress[] any recognized principle of fundamental fairness in operation.'" *Id.* (citing *Medina v. California*, 505 U.S. 437, 446 (1992)). Federal courts may only disturb a state's postconviction procedures if they are "fundamentally inadequate to vindicate the substantive rights provided." *Id.*

To determine if a procedure violates procedural due process a court looks to the standards of the common law as they existed at the time of adoption of the Fifth and Fourteenth Amendment. *Patterson v. New York*, 432 U.S. 197, 202 (1977). Additionally, a procedure should not offend a deeply rooted principle of justice of the American people. *Id.* Widespread acceptance or rejection among the states may indicate whether procedure is contrary to the conscience of the people. *Id.* The Court in *Osborne* found "nothing inadequate" with Alaska's postconviction relief in general or its DNA testing procedures. *Osborne*, 557 U.S. at 69-70. The Court noted that Alaska's procedures requiring evidence to be newly available, diligently pursued and sufficiently material are similar to federal law and the law of other states and are not inconsistent with the conscience of the people or fundamental fairness. *Id.* at 70. The Court held Alaska's constitutionally created right of DNA access provided

additional protection to parties who may not be able to seek testing under statute. *Id.* The *Osborne* Court noted that exhaustion of a state law remedy is not required but can be useful to demonstrate that the procedures do not work in practice. *Id.* at 71.

Circuit courts addressing § 1983 DNA complaints have encountered facial and "as-applied" procedural Due Process claims. An as-applied challenge is not permissible if used to collaterally attack the state-court judgment. *McKithen v. Brown*, 481 F.3d 89, 98–99 (2d Cir. 2007) ("[B]y bringing an as-applied challenge, [Plaintiff] is asking the federal district court to review the validity of the state court judgment"); *Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1263 (11th Cir. 2012) (holding that the *Rooker-Feldman* doctrine bars Plaintiff's as applied procedural due process attack on the state court judgment); *Wade v. Monroe Cty. Dist. Attorney*, 800 F. App'x 114, 119 (3d Cir. 2020) (reversing because "the state court entered a ruling based upon Wade's situation, and made no broad pronouncement about how the statute should be construed in all cases"). Instead, an as-applied challenge is permissible so far as it illuminates the authoritative construction of a state law to determine constitutional adequacy. *Morrison v. Peterson*, 809 F.3d 1059, 1070 (9th Cir. 2015) (finding plaintiff's as-applied challenge is permissible and "merely argues a defect that is not apparent from the face of the statute"). The Second Circuit approved of a plaintiff's as-applied challenge and reinstated a jury verdict which determined plaintiff was deprived of procedural due process by the city's poor evidence handling system. *Newton v. City of New York*, 779 F.3d 140, 159 (2d Cir. 2015).

In unpublished opinions, the Fifth Circuit has repeatedly identified Article 64 of the Texas Code of Criminal Procedure as a substantive right created by the state for post-conviction DNA testing. "Texas has created a right to post-conviction DNA testing in Article 64 of the Texas Code of Criminal Procedure. Thus, '[w]hile there is no freestanding right for a convicted defendant to obtain evidence for postconviction DNA testing, Texas has created such a right, and, as a result, the state[-]provided procedures must be adequate to protect the substantive rights provided.'" *Emerson*

*v. Thaler*, 544 F. App'x 325, 327-28 (5th Cir. 2013) (quoting *Elam v. Lykos*, 470 F. App'x. 275, 276 (5th Cir. 2012)).

### d. Procedural Due Process and *Medina*

The protections of procedural due process have "limited operation" and the Supreme Court has construed the category of infractions that violate fundamental fairness "very narrowly." *Medina*, 505 U.S. at 443. The Due Process Clause does not establish federal courts as promulgators of state rules of criminal procedure nor should federal courts cause "undue interference" with legislative judgments and the Constitution's balance of liberty and order. *Id.* (citing *Spencer v. Texas*, 385 U.S. 554, 564 (1967)). A procedure should not offend "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson*, 432 U.S. at 202. Historical practice may be probative of whether a procedural rule can be characterized as fundamental. *Medina*, 505 U.S. at 446. Contemporary widespread acceptance or rejection among the states may also help illuminate whether a procedure is contrary to the conscience of the people. *Schad v. Arizona*, 501 U.S. 624, 642 (1991).

The historical and state consensus inquiries are often combined to determine if a procedure violates due process, with great deference being given to established historical practice. *Id.* Constitutionality is not established by cataloging the practices of the states; nor does it ignore basic principles of justice. *Martin v. Ohio*, 480 U.S. 228, 236 (1987); *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). When a practice defies the structural prerequisites of the country's criminal justice system, due process is appropriately invoked. *Cooper v. Oklahoma*, 517 U.S. 348, 368 (1996). Fundamental fairness is not an easy rule to apply and a district court should be careful to not impose personal notions of fairness. *Dowling v. United States*, 493 U.S. 342, 353 (1990).

## VIII.  Analysis

### a. Motion for Reconsideration

Defendants move the Court to reconsider its prior ruling granting in part and denying in part Defendants' Rule 12 motion to dismiss in light of the Fifth Circuit's opinion vacating the stay of execution. Dkt. No. 119; Fed. R. Civ. P. 12.

The Fifth Circuit's decision did not consider the 12(b) legal standard for determining whether there was a lack of subject matter jurisdiction or whether Gutierrez stated a claim upon which relief could be granted. *Gutierrez*, 818 F. App'x at 312. Although the Fifth Circuit ruled on several issues, it did not consider the sufficiency of Gutierrez's complaint survive a Rule 12(b) challenge because the Rule 12(b) decision was not before the Fifth Circuit and is an entirely different legal standard. *Id.* The Fifth Circuit's decision was at a different procedural stage of the litigation. *Id.* After reviewing this Court's Rule 12 decision, the undersigned finds no sufficient cause to rescind or modify its order. *See Melancon*, 659 F.2d at 553. This Court will also not make another ruling on those issues. *See Musacchio*, 136 S. Ct. at 716. Accordingly, the Court **DENIES** Defendants' motion for reconsideration. Dkt. No. 119.

### b. Fifth Circuit's Ruling

In vacating this Court's stay of execution, the Fifth Circuit ruled that, as a matter of law, Chapter 64's materiality standard[3] on its face and as applied by the CCA does not offend the constitution. *Gutierrez v. Saenz*, 818 F. App'x 309, 312-13 (5th Cir. 2020). The Supreme Court vacated this order. Although the DNA question was not on appeal, the result of vacatur is that the conclusions of the Fifth Circuit no longer have mandatory effect and instead may be considered for their "persuasive weight." *See NASD Dispute Resolution*, 488 F.3d at 1069; *Lee*, 358 F.3d at 320; *Falcon*, 815 F.2d at 320.

The Fifth Circuit's decision attempted to reach a conclusion on the merits of the DNA testing motion under Texas law. It concluded that Gutierrez failed to show "how the DNA testing he requests would be 'sufficiently material' to negate

---

[3]     Under Chapter 64 a convicted person must show "by a preponderance of the evidence that: (A) [he] would not have been convicted if exculpatory results had been obtained through DNA testing." Art. 64.03(a)(2).

his guilt thus justifying the pursuit of DNA testing" under Chapter 64 of Texas law. *Gutierrez v. Saenz*, 818 F. App'x at 314-15. The Fifth Circuit determined that under Chapter 64, Gutierrez had not shown by a preponderance of the evidence that he would not have been convicted of the death penalty if exculpatory results were obtained, and therefore he cannot prevail. *Id.*

This conclusion about a fundamental issue is clearly erroneous as a matter of law. The Fifth Circuit did not have jurisdiction to rule on Gutierrez's DNA testing motion because Gutierrez's DNA testing motion reached a merits determination in the highest criminal court in the state of Texas. *See* Dkt. 48 at 11; *Gutierrez v. State*, No. AP-77,089, 2020 WL 918669, at *1 (Tex. Crim. App. Feb. 26, 2020). This type of review of a state court proceeding is reserved for the United States Supreme Court and when performed by a lower Court, such as the Fifth Circuit, it is violative of the *Rooker-Feldman* doctrine. *See* Dkt. No. 48 at 11-12; *Lance*, 546 U.S. at 463 (holding the *Rooker-Feldman* doctrine bars parties from appealing an unfavorable state-court decision to a lower federal court). It was for this reason that this Court did not pass judgment on this question when it was presented at an earlier stage of this litigation. *See* Dkt. 48 at 11. Accordingly, the Court concludes that the Fifth Circuit's decision on this issue is not persuasive. *See id.*

In the vacated opinion the Fifth Circuit decided that, as a matter of law, Chapter 64's standard of proof for testing on its face and as applied by the CCA does not offend the constitution. *Gutierrez v. Saenz*, 818 F. App'x 309, 312-13 (5th Cir. 2020). The Fifth Circuit stated "[a]lthough the Court in *Osborne* did not resolve the appropriate materiality standard, it did approve of Alaska's postconviction procedures, as applied to DNA testing, requiring that defendants seeking access to DNA evidence must show the evidence is 'sufficiently material.'" *Gutierrez v. Saenz*, 818 F. App'x at 312. The Fifth Circuit concluded "[w]e see no constitutionally relevant distinction between what was approved in *Osborne* — sufficiently material — and requiring an inmate to show materiality by a preponderance of the evidence." *Id.* Gutierrez argues this overstates and misconstrues the holdings in *Osborne* and Chapter 64. Dkt. No. 118.

The Fifth Circuit summarized Chapter 64's standard as requiring the movant to "show materiality by a preponderance of the evidence." *Gutierrez v. Saenz*, 818 F. App'x at 312. To be specific, the standard is "by a preponderance of the evidence that: (A) [petitioner] would not have been convicted if exculpatory results had been obtained through DNA testing." Art. 64.03(a)(2). Materiality means "having a natural tendency to influence, or [being] capable of influencing, the decision of the decisionmaking body to which it was addressed." *United States v. Fountain*, 277 F.3d 714, 717 (5th Cir. 2001) (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1998)). Materiality can also be defined as "[h]aving some logical connection with the consequential fact. *Material*, Black's Law Dictionary (11th ed. 2019).

Prospectively assessing whether yet-to-be-performed DNA testing results would have led the jury to a different outcome from the one they reached based on all the evidence is a different type of undertaking than determining if a fact is "capable of influencing [] the decision of the decision-making body." *Fountain*, 277 F.3d at 717. Therefore, even if the Supreme Court intended to signal approval of a "sufficiently material" standard for DNA testing, which is unclear, the Court cannot infer from such approval that the Supreme Court also intended to indicate that it approved of a 'preponderance of the evidence he would not have been convicted' standard. *See Osborne*, 557 U.S. at 69-70. The Court therefore declines to follow the Fifth Circuit's vacated conclusion on this matter. *See Gutierrez v. Saenz*, 818 F. App'x at 312.

Additionally, after a thorough review of the Fifth Circuit's decision, this Court concludes the Fifth Circuit did not discuss Gutierrez's claim that Chapter 64 violates procedural due process because it denies a movant the ability to test evidence that would demonstrate he is innocent of the death penalty, as opposed to demonstrating innocence of capital murder. *See Gutierrez*, 818 F. App'x at 314. This claim is legally distinct from the other questions ruled on by the Fifth Circuit and was omitted from the opinion. *See id*. Therefore, this Court must rule on this issue without the benefit of the persuasive authority of the Fifth Circuit's vacated opinion. See *NASD*, 488 F.3d at 1069.

### c. Is Chapter 64's 'Preponderance of the Evidence' Test Insurmountable?

Gutierrez first challenges Chapter 64 on the grounds that the evidentiary standard to obtain DNA testing is so high that is virtually impossible to meet on its face and as applied by the CCA. Dkt. No. 118.

Historical practice and this country's fundamental principles of justice do not countenance an illusory right that cannot be obtained. *See Patterson*, 432 U.S. at 202. Rights that are ostensibly granted but then taken away through inadequate procedure offend procedural due process. *See Osborne*, 557 U.S. at 69; *Cooper*, 517 U.S. at 368. Therefore, because Texas has granted a substantive right to DNA testing under Chapter 64, making that right meaningless through an impossibly high evidentiary standard that no petitioner could reasonably meet would create a procedure that is fundamentally inadequate and offends the Constitution. *See Medina*, 505 U.S. at 443; *See Osborne*, 557 U.S. at 69.

Under Chapter 64, to obtain testing a petitioner must prospectively demonstrate "by a preponderance of the evidence that: (A) [petitioner] would not have been convicted if exculpatory results had been obtained through DNA testing." Art. 64.03(a)(2). This is undoubtably a complex and high standard of proof. *See id.* It places a great burden on the petitioner to present compelling hypotheticals as to what DNA evidence might show if tested while leaving great leeway for Texas courts to speculate as to how these hypotheticals would or would not have influenced a jury verdict. *See id.*

Even in the face of this high standard, Gutierrez's challenge fails for three reasons. First, the Court is mindful of the Supreme Court's holding in *Osborne* that there is no freestanding right to DNA evidence under substantive due process. *See Osborne*, 557 U.S. at 72. This Court will not impose its own notion of fundamental fairness on Chapter 64 and further blur the line between substantive and procedural due process. *See Dowling v*, 493 U.S. at 353; *Medina*, 505 U.S. at 443. Second, Gutierrez has only shown that Art. 64.03(a)(2) is a very difficult standard to meet. *See* Dkt. No. 118. He has not shown that it is impossible for him or another

petitioner to ever meet this high burden. *See id.* Gutierrez has not shown it is impossible to receive DNA testing under Chapter 64. In its decisions the CCA has articulated how it believes Gutierrez's petition is lacking, and implied what would be required for a successful petition. *See Gutierrez v. State*, No. AP-77,089, 2020 WL 918669; *see also Esparza v. State*, 282 S.W.3d 913, 922 (Tex. Crim. App. 2009). Third, Gutierrez has not demonstrated that the 'preponderance of the evidence he would not have been convicted' standard offends historical practice or a fundamental principle of justice of the nation. *See* Dkt. No. 118; *Osborne*, 557 U.S. at 69. While Gutierrez has shown that many states establish much lower standards of proof for access to DNA testing, a counting of majorities is insufficient to meet this standard of procedural due process. *See* Dkt. No. 118, *Martin,* 480 U.S. at 236; *Dowling*, 493 U.S. at 353.

The Court acknowledges the potentially problematic nature of a statutory "escape hatch" that allows denial of DNA testing when a court concludes the "DNA testing which has never occurred cannot reasonably produce exculpatory evidence that would exonerate the movant." *See Wilson v. Marshall*, No. 214CV01106MHTSRW, 2018 WL 5074689, at *14 (M.D. Ala. Sept. 14, 2018), report and recommendation adopted, No. 2:14CV1106-MHT, 2018 WL 5046077 (M.D. Ala. Oct. 17, 2018). Yet so too must the Court take note of other statutory procedures which require a strong showing of new evidence before receiving relief. *See Garcia v. Sanchez*, 793 F. Supp. 2d 866, 891 (W.D. Tex.) (citing *House v. Bell*, 547 U.S. 518, 536 (2006), *aff'd sub nom. Garcia v. Castillo*, 431 F. App'x 350 (5th Cir. 2011)).

DNA testing is a new and developing area of law and without a greater showing by Gutierrez of prejudice or impossibility of access, the Court concludes it is premature to discern a fundamental principle of justice for burdens of proof in DNA testing procedure. *See Martin,* 480 U.S. at 236; *Dowling*, 493 U.S. at 353; *Osborne*, 557 U.S. at 69; *Medina*, 505 U.S. at 443.

### d. Does Chapter 64 Otherwise Offend Procedural Due Process?

As discussed above, Texas has established a substantive right to DNA testing in Article 64 of its code of Criminal Procedure. *See Gutierrez v. Saenz et al.*, No. 20-

70009 at 3; *Emerson*, 544 F. App'x at 327–28. Texas has construed this right to mean a person can only obtain DNA testing when the movant can show the testing would demonstrate he is innocent of the crime for which he is convicted. *Gutierrez v. State*, 2020 WL 918669, at *8. Texas denies DNA testing of evidence that would only demonstrate a person is innocent of the death penalty. *Gutierrez v. State*, 2020 WL 918669, at *8.

Texas has also established a substantive right to bring a subsequent habeas petition for a person convicted of the death penalty when that person can show "by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury…." Tex. Code Crim. Proc. art. 11.071 § 5(a)(3).[4] This section incorporates the actual innocence of the death penalty doctrine as described in *Sawyer. Rocha*, 626 F.3d at 822 (citing *Sawyer*, 505 U.S. at 345). Article 11.071 has been construed by the CCA to mean that petitioners must make a threshold showing that "the applicant is actually innocent of the death penalty." *Id.*

---

[4]      Article 11.071 § 5(a)(3) incorporates Tex. Code Crim. Proc. Ann. art. 37.071 which mandates the special verdict questions to be answered by the jury during the punishment phase of a capital case:

> (b) On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:
> (1) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
> (2) in cases in which the jury charge at the guilt or innocence stage permitted the jury to find the defendant guilty as a party under Sections 7.01 and 7.02, Penal Code, whether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.
> (c) The state must prove each issue submitted under Subsection (b) of this article beyond a reasonable doubt, and the jury shall return a special verdict of "yes" or "no" on each issue submitted under Subsection (b) of this Article.
> (d) The court shall charge the jury that:
> (1) in deliberating on the issues submitted under Subsection (b) of this article, it shall consider all evidence admitted at the guilt or innocence stage and the punishment stage, including evidence of the defendant's background or character or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

Tex. Code Crim. Proc. Ann. art. 37.071.

These two statutory provisions are irreconcilable. Texas grants the substantive right to file a second habeas petition with a clear and convincing showing of innocence of the death penalty in Article 11.071, and then Chapter 64 denies the petitioner access to DNA evidence by which a person can avail himself of that right.[5] *See Gutierrez v. State*, 2020 WL 918669, at *8; Tex. Code Crim. Proc. art. 11.071 § 5(a)(3); Tex. Crim. Proc. Code art. 64.03(a)(C)(2)(A); *See Osborne*, 557 U.S. at 62. Article 11.071 § 5(a)(3) creates a substantive right uniquely for a defendant convicted of the death penalty, and that right is protected by procedural due process just as Chapter 64 creates a right that is protected by procedural due process. *See Osborne*, 557 U.S. at 62. These procedures cannot "'transgress[] any recognized principle of fundamental fairness in operation." *Id.* (quoting *Medina*, 505 U.S. at 448).

The procedural due process doctrine protects against procedures which confound the structural prerequisites of the criminal justice system. *Cooper*, 517 U.S. at 367. A process which amounts to a "meaningless ritual" is historically and contemporarily disproved of by the courts. *See Douglas v. People of State of Cal.*, 372 U.S. 353 at 358 (1963); *Burns v. United States*, 501 U.S. 129, 136 (1991) (holding a statutory reading "renders meaningless the parties' express right") *abrogation recognized by Dillon v. United States*, 560 U.S. 817 (2010); *Griffin v. Illinois*, 351 U.S. 12, 17 (1956) (deciding a law would render rights "meaningless promises"). When such conflict is found between laws, they must be interpreted to preserve the substantive rights or risk constitutional infirmity. *See id.*

A bar on Chapter 64 DNA testing to demonstrate innocence of the death penalty renders Article 11.071 § 5(a)(3) illusory. *See Gutierrez v. State*, 2020 WL 918669, at *8; Tex. Code Crim. Proc. art. 11.071 § 5(a)(3). Only the few people who can make a clear and convincing showing of innocence of the death penalty without DNA evidence may avail themselves of the right. Texas procedure creates a process which gives a person sentenced to death the substantive right to bring a subsequent

---

[5]     For criminal defendants, DNA testing is "powerful new evidence unlike anything known before" for the purposes of proving culpability. *See Osborne*, 557 U.S. at 62.

habeas action under Article 11.071 § 5(a)(3), but then barricades the primary avenue for him to make use of that right. *See Gutierrez v. State*, 2020 WL 918669, at *8; Tex. Code Crim. Proc. art. 11.071 § 5(a)(3); Tex. Crim. Proc. Code art. 64.03(a)(C)(2)(A).

Defendants argue Gutierrez's challenge to Chapter 64 for denying testing for ineligibility of the death penalty fails because "Gutierrez can only challenge the procedures that are provided by a state's postconviction testing scheme—he cannot insist that a federal court require the state to add procedures that do not exist in the statute." *See* Dkt. No. 119 at 29. This argument fails because Texas law already provides in statute a procedure and substantive right based on innocence of the death penalty. *See* Article 11.071 § 5(a)(3). The Court need not impose its own notions of fairness, invoke substantive due process, or become a promulgator of state rules of procedure. *See Dowling*, 493 U.S. at 353. *Medina*, 505 U.S. at 443; *Osborne*, 557 U.S. at 69. Instead, the Court must only insist on access to the rights and processes that Texas law already provides. *See* Article 11.071 § 5(a)(3).

A stark conflict exists between Chapter 64 and Article 11.071. Texas courts have applied these laws in a way that denies a habeas petitioner sentenced to death his rights granted by the State of Texas and protected under the Due Process Clause of the Constitution. *See Osborne*, 557 U.S. at 69. *Douglas*, 372 U.S. 353 at 358. Due process does not countenance procedural sleight of hand whereby a state extends a right with one hand and then takes it away with another. To do so renders meaningless an express right and transgresses a principle of fundamental fairness. *See Osborne*, 557 U.S. at 69; *Medina*, 505 U.S. at 446; *Douglas*, 372 U.S. at 358; *Burns*, 501 U.S. at 136; *Griffin v. Illinois*, 351 U.S. at 17.

The Court **HOLDS** that granting a right to a subsequent habeas proceeding for innocence of the death penalty but then denying DNA testing for a movant to avail himself of that right creates a system which is fundamentally inadequate to vindicate the substantive rights the State of Texas provides. *See Gutierrez v. State*, 2020 WL 918669, at *8; Tex. Code Crim. Proc. art. 64.03(a)(C)(2)(A); Tex. Code

Crim. Proc. Ann. art. 11.071 § 5(a)(3); *See Osborne*, 557 U.S. 52, 69 (2009); *Medina*, 505 U.S. at 446.

## IX. Conclusion

For the aforementioned reasons, the Court **DENIES** Defendants' motion for reconsideration. Dkt. No. 119.

Furthermore, the Court **GRANTS** Gutierrez a declaratory judgment concluding that giving a defendant the right to a successive habeas petition for innocence of the death penalty under Texas Code of Criminal Procedure Article 11.071 § 5(a)(3) but then denying him DNA testing under Texas Code of Criminal Procedure Article 64.03(a)(C)(2)(A) unless he can demonstrate innocence of the crime is fundamentally unfair and offends procedural due process.

SIGNED this 23rd day of March, 2021.

Hilda Tagle
Senior United States District Judge