IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RUBEN GUTIERREZ, | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO. 1:19-CV-185 |
| v. | § | *DEATH PENALTY CASE* |
| | § | |
| LUIS V. SAENZ, et al., | § | |
| *Defendants.* | § | |

_____

## DEFENDANTS SAENZ AND SAUCEDA'S OPPOSED MOTION FOR STAY OF JUDGMENT PENDING APPEAL

_____

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

JAY CLENDENIN
Assistant Attorney General
State Bar No. 24059589
  *Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: *jay.clendenin@oag.texas.gov*

EDWARD SANDOVAL
First Assistant District Attorney,
Cameron County, Texas

RENE DE COSS
City Attorney, Brownsville, Texas

*Counsel for Defendants*

# TABLE OF CONTENTS

TABLE OF CONTENTS.......................................................................i

TABLE OF AUTHORITIES ..............................................................ii

DEFENDANTS SAENZ AND SAUCEDA'S OPPOSED MOTION FOR STAY OF JUDGMENT PENDING APPEAL ................................................. 1

I.     Short Statement of the Nature and Stage of the Proceeding................. 1

II.    Statement of the Issues to Be Ruled Upon by the Court........................ 3

III.   Summary of the Argument....................................................... 3

ARGUMENT ....................................................................................4

I.     Defendants Are Likely to Succeed on Appeal ..........................................5

       A.    Gutierrez's DNA claims are time-barred........................................5

       B.    This Court granted relief as to a claim Gutierrez did not raise.. 10

       C.    This Court's conclusion that Chapter 64 is constitutionally deficient is unsupported .............................................. 11

II.    A Stay of Judgment Will Not Substantially Injure Gutierrez, But It Will Serve the Public Interest........................................................ 17

CONCLUSION.......................................................................... 19

CERTIFICATE OF CONFERENCE ............................................... 21

CERTIFICATE OF SERVICE ........................................................ 21

# TABLE OF AUTHORITIES

**Cases**                                                          **Page**

*Dawson v. Suthers*, No. 14-CV-1919, 2015 WL 5525786 (D. Colo. Sept. 21, 2015) ................................................................................................................ 17

*District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52 (2009) ................................................................................................................ 16

*Enmund v. Florida*, 458 U.S. 782 (1982) .......................................................... 10

*Ex parte Blue*, 230 S.W.3d 151 (Tex. Crim. App. 2007) ............................ 12, 15

*Ex parte Foster*, No. WR-50,823-02, 2007 WL 2257150 (Tex. Crim. App. Aug. 7, 2007) ................................................................................................... 13

*Ex parte Gutierrez*, 337 S.W.3d 883 (Tex. Crim. App. 2011) ...................... 7, 18

*Ex parte Milam*, No. WR-79,322-04, 2021 WL 197088 (Tex. Crim. App. Jan. 15, 2021) ................................................................................................... 16

*Ex parte Rocha*, No. WR-52,515-04, 2008 WL 5245553, at *1 (Tex. Crim. App. Dec. 17, 2008) .......................................................................................... 15

*Ex parte Sells*, No. WR-62,552-02, 2007 WL 1493151, at *1 (Tex. Crim. App. May 23, 2007) ............................................................................................. 15

*Ex parte Weathers*, No. WR-64,302-02, 2012 WL 1378105 (Tex. Crim. App. Apr. 18, 2012) .................................................................................................... 16

*Ex parte Wood*, 498 S.W.3d 926 (Tex. Crim. App. 2016) ................................. 12

*Gutierrez v. State*, No. AP-77,089, 2020 WL 918669 (Tex. Crim. App. Feb. 26, 2020) ................................................................................................... 9, 18

*Hearn v. McCraw*, --- F. App'x, 2021 WL 1440025 (5th Cir. Apr. 15, 2021)9, 10

*Hebert v. Exxon Corp.*, 953 F.2d 936 (5th Cir. 1992) ........................................4

*Lozano v. Baylor University*, 408 F. Supp. 3d 861 (W.D. Tex. Sept. 27, 2019) .9

ii

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................... 4, 17

*Oregon v. Guzek*, 546 U.S. 517 (2006) .............................................................. 14

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) .............................9

*Reed v. Goertz*, --- F.3d ---, 2021 WL 1574048 (5th Cir. Apr. 22, 2021) ...*passim*

*Reed v. State*, 541 S.W.3d 759 (Tex. Crim. App. 2017) .......................................8

*Rocha v. Thaler*, 626 F.3d 815, 827 (5th Cir. 2010) ................................... 12, 13

*Russell v. Bd. of Trustees*, 968 F.2d 489 (5th Cir. 1992) ....................................6

*Savory v. Lyons*, 469 F.3d 667 (7th Cir. 2006) ...................................................8

*Sawyer v. Whitley*, 505 U.S. 333 (1992) ............................................... 10, 12, 14

*Schlup v. Delo*, 513 U.S. 298 (1995) .................................................................. 16

*Smith v. Palafox*, 728 F. App'x 270 (5th Cir. 2018) ...........................................9

*State v. Miles*, 414 P.3d 680 (Ariz. 2018) ........................................................ 14

*Texas Alliance for Retired Americans v. Hughs*, 976 F.3d 564 (5th Cir. 2020) ............................................................................................................... 18

*Thompson v. Rovella*, 734 F. App'x 787 (2d Cir. 2018) ......................................8

*Tison v. Arizona*, 481 U.S. 137 (1987) ................................................... 10, 12, 14

*United States v. Salerno*, 481 U.S. 739 (1987) ................................................. 16

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) ............................... 11

*Veasey v. Perry*, 769 F.3d 890 (5th Cir. 2014) ................................................. 18

*Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) .......................................... 14

iii

**Statutes and Rules**

Texas Code of Criminal Procedure article 11.071 § 5(a)(3) .....................*passim*

Texas Code of Criminal Procedure article 37.071............................... 11, 12, 14

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RUBEN GUTIERREZ, | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. 1:19-CV-185 |
| v. | § | *DEATH PENALTY CASE* |
| | § | |
| LUIS V. SAENZ, et al., | § | |
| *Defendants*. | § | |

**DEFENDANTS SAENZ AND SAUCEDA'S OPPOSED MOTION FOR
STAY OF JUDGMENT PENDING APPEAL**

## I.   Short Statement of the Nature and Stage of the Proceeding

Plaintiff Ruben Gutierrez was convicted and sentenced to death for the

capital murder of eighty-five-year-old Escolastica Harrison. Gutierrez filed in

this Court an amended civil-rights complaint raising two categories of claims:

(1) claims challenging the constitutionality of Texas's postconviction DNA

testing procedures [1] (DNA claims); and (2) claims challenging the Texas

Department of Criminal Justice's (TDCJ) execution protocol disallowing the

presence of a prison-employed chaplain or outside spiritual advisor inside the

execution room during an execution (spiritual-advisor claims). Pl.'s Amended

Compl. 19–36, ECF No. 45.

Defendants filed a motion to dismiss Gutierrez's amended complaint. *See

generally* Defs' Mot. Dismiss, ECF No. 46. This Court entered an order

---

[1]      Chapter 64 of the Texas Code of Criminal Procedure

1

granting in part and denying in part Defendants' motion to dismiss. Mem. & Order 30–31, ECF No. 48. Specifically, this Court dismissed Gutierrez's DNA claims that sought relitigation of the state court's denial of DNA testing, his Eighth Amendment claims, and his access-to-courts claim; but this Court declined to dismiss Gutierrez's DNA claims to the extent they challenged the constitutionality of Chapter 64 facially and as authoritatively construed by the state court. *Id.* at 12–15.

Following the stay of Gutierrez's most recent scheduled execution, the parties provided additional briefing regarding Gutierrez's challenge to Chapter 64. ECF Nos. 70, 118, 119, 122, 123, 139, 140. Specifically, Defendants moved for reconsideration of this Court's order denying, in part, Defendants' motion to dismiss Gutierrez's DNA claims. Mot. to Reconsider, ECF No. 119. This Court then entered an order denying Defendants' motion for reconsideration and granting Gutierrez a declaratory judgment. Mem. & Order 18, 26, ECF No. 141 (Order). This Court also found Gutierrez's claim challenging Chapter 64's materiality standard failed. Order at 21–22. Defendants Saenz and Sauceda then sought entry of a partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) as to the DNA claims, but this Court did not rule on the motion prior to the expiration of thirty days following entry of this Court's order. *See generally* Defs' Mot. for Entry of Partial Final J., ECF. No. 144. Defendants Saenz and Sauceda filed a notice of this Court's order denying,

in part, Defendants' motion to dismiss and this Court's order denying Defendants' motion to reconsider and granting a declaratory judgment. ECF No. 147. Gutierrez then filed a motion to dismiss Defendants' appeal. Mot. to Dismiss for Lack of Jurisdiction, *Gutierrez v. Saenz, et al.*, No. 21-70002 (5th Cir. May 6, 2021).

## II.   Statement of the Issues to Be Ruled Upon by the Court

This Court has granted Gutierrez a declaratory judgment as to the constitutionality of Chapter 64 and appears to have dismissed or otherwise denied Gutierrez's other DNA claims. Order at 7–8, 21–22, 26. Defendants Saenz and Sauceda seek a stay of this Court's declaratory judgment pending the disposition of their appeal of that judgment.

## III.   Summary of the Argument

A stay of this Court's declaratory judgment is appropriate, as Defendants Saenz and Sauceda have a strong likelihood of succeeding on appeal because Gutierrez's DNA claims are plainly time-barred, and this Court's declaratory judgment granted relief as to a claim Gutierrez did not raise. Moreover, Defendants are likely to succeed on appeal because this Court's holding that Chapter 64 violates procedural due process is unfounded. Lastly, a stay is appropriate because Gutierrez will not be irreparably injured if a stay is entered, and the public interest—embodied in Chapter 64—favors a stay pending appeal.

# ARGUMENT

This Court should stay its declaratory judgment pending Defendants' appeal.[2] Under the traditional factors governing a stay, a movant must show the following factors weigh in favor of a stay: (1) whether the stay movant has made a strong showing he is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken*, 556 U.S. at 426. As discussed below, Defendants are likely to succeed on appeal, Gutierrez will not be irreparably injured by the entry of a stay, and the public interest favors clarity regarding its duly enacted statute providing for postconviction DNA testing. Therefore, Defendants respectfully request entry of a stay.

---

[2] Defendants acknowledge that a court's authority to enter a stay of judgment under Federal Rule of Civil Procedure 62 often depends on whether the judgment is monetary or nonmonetary. *See Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992). Nonetheless, Defendants request that this Court exercise its discretion and stay its judgment pending Defendants' appeal. *See Nken v. Holder*, 556 U.S. 418, 421 (2009) ("[A]s part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal.") (citation omitted). Notably, in *Hebert*, the Fifth Circuit explained that Rule 62 did not provide for an automatic stay in cases involving non-money judgments "because a bond may not adequately compensate a non-appealing party for loss incurred as a result of the stay of a non-money judgment." *Hebert*, 953 F.2d at 938. As discussed below, Gutierrez will not suffer any loss if a stay of this Court's declaratory judgment is entered.

4

# I.    Defendants Are Likely to Succeed on Appeal.

This Court should stay its declaratory judgment because Defendants are likely to succeed on appeal. First, this Court's holding that Gutierrez's DNA claims were timely is plainly and indisputably contradicted by the Fifth Circuit's recent holding in *Reed v. Goertz*, --- F.3d ---, 2021 WL 1574048, at *4 (5th Cir. Apr. 22, 2021). Second, this Court granted a declaratory judgment as to a claim Gutierrez did not raise. Third, this Court's conclusion that Chapter 64 and Texas's procedures for subsequent habeas applications are irreconcilable is erroneous.

## A.    Gutierrez's DNA claims are time-barred.

In their motion to dismiss Gutierrez's amended complaint, Defendants argued that Gutierrez's DNA claims were time-barred because they were filed well over two years after he first unsuccessfully sought DNA testing in state court. Defs' Mot. to Dismiss 33–36, ECF No. 46. This Court found Gutierrez's DNA claims timely because they were brought within two years of the Texas Court of Criminal Appeals's (CCA) affirmance of the denial of Gutierrez's *second* Chapter 64 motion. Mem. & Order 14, ECF 48. Additionally, this Court found the claims timely because Gutierrez's second Chapter 64 motion for DNA testing was his first such motion filed after Chapter 64 was amended eight years earlier to remove the former no-fault provision. *Id.* This Court held that February 26, 2020, the date of the CCA's affirmance of the denial of Gutierrez's

second Chapter 64 motion was "the date Gutierrez would have reason to know of his alleged injury." *Id.* This Court's holding is erroneous under *Reed*.

In *Reed*, following his unsuccessful attempt at obtaining DNA testing in state court, the plaintiff challenged the constitutionality of Chapter 64. *Reed*, 2021 WL 1574048, at *2 ("Reed's amended complaint challenges the constitutionality of Chapter 64, both on its face and as applied to him."). The Fifth Circuit held that the limitations period for a § 1983 claim—like Gutierrez's—"begins to run 'the moment the plaintiff becomes aware [ ] he has suffered an injury or has sufficient information to know that he has been injured.'" *Id.* at *4 (quoting *Russell v. Bd. of Trustees*, 968 F.2d 489, 493 (5th Cir. 1992)). The plaintiff complained, as Gutierrez does, "that he was denied access to the physical evidence that he wished to test." *Id.* And because "[a]n injury accrues when a plaintiff *first* becomes aware, or should have become aware, that his right has been violated," a claim challenging the constitutionality of Chapter 64 accrues when the trial court denies a motion for postconviction DNA testing. *Id.* (emphasis in original). The Fifth Circuit found the plaintiff's claims time-barred because he "had the necessary information to know his rights were allegedly being violated as soon as the trial court denied his motion for post-conviction relief." *Id.* The Fifth Circuit explicitly rejected the argument that such claims do not accrue until the conclusion of an appeal from the trial court's denial of a Chapter 64 motion. *Id.*

As in *Reed*, Gutierrez had a complete and present cause of action as of July 27, 2010, when the trial court first denied Gutierrez's request for postconviction DNA testing. Order, *Ex parte Gutierrez*, No. 98-CV-1391-A (107th Dist. Ct. Cameron Co., Tex.). The Fifth Circuit's holding in *Reed* flatly contradicts this Court's conclusion that Gutierrez's claims did not accrue until the conclusion of the appeal of the denial of his *second* Chapter 64 motion.

Moreover, this Court cited no relevant authority for the proposition that a cause of action like Gutierrez's re-accrues simply by the filing of a successive motion for postconviction DNA testing. Gutierrez knew when his first motion for DNA testing was denied that Chapter 64 did not provide for postconviction DNA testing for the purpose of affecting his punishment. Similarly, the 2011 amendment to Chapter 64 removing the former no-fault provision did not constitute a fresh accrual (a fact plainly shown by Gutierrez's subsequent failure to file another Chapter 64 motion until 2019), since the no-fault provision was only one of many grounds on which Gutierrez's first Chapter 64 motion was denied. *Ex parte Gutierrez*, 337 S.W.3d 883, 899–902 (Tex. Crim. App. 2011). Relatedly, Gutierrez disclaimed reliance on the 2011 amendment to Chapter 64 as a basis for finding his claims timely. Pl.'s Reply 4, ECF No. 122; Opp'n to Mot. to Vacate 17–18, *Gutierrez v. Saenz, et al.*, No. 20-70009 (5th Cir. June 12, 2020).

Gutierrez has argued that his DNA claims did not accrue until the conclusion of his second Chapter 64 proceedings because he presented new evidence (e.g., witness affidavits) and he was given the opportunity in 2019 to review the State's files. But his second unsuccessful attempt at obtaining postconviction DNA testing did not constitute a new accrual. *See Reed*, 2021 WL 1574048, at *4; *Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006) ("[Plaintiff's] continued lack of access to the evidence is not a fresh act on the part of [Defendant]. Rather, it is the natural consequence of the discrete act that occurred when [Defendants] first denied access to the evidence."). Additionally, Gutierrez's "new" evidence was irrelevant to his Chapter 64 proceedings. *Reed v. State*, 541 S.W.3d 759, 774 (Tex. Crim. App. 2017). Gutierrez's substitute counsel's purported discovery of a hair among the State's files—following a decade's worth of representation by his previously appointed counsel—does not constitute a new accrual, and Gutierrez has not identified any support for his argument. Rather, Gutierrez's purported discovery of a single piece of evidence almost ten years after his initial Chapter 64 litigation is more appropriately understood as an argument for equitable tolling. *See Thompson v. Rovella*, 734 F. App'x 787, 790 (2d Cir. 2018); *Savory*, 469 F.3d at 674. But Gutierrez's demonstrable failure to exercise diligence during the years that followed the state court's denial of his first Chapter 64 motion disentitles him to equitable tolling. *See Thompson*, 734 F. App'x at 790–91.

8

Even assuming Gutierrez's substitute counsel located the hair that was recovered from the victim's hand, Gutierrez is not entitled to tolling based on that assertion. *See Gutierrez v. State*, No. AP-77,089, 2020 WL 918669, at *5 n.6 (Tex. Crim. App. Feb. 26, 2020). While *fraudulent* concealment can toll the limitations period, Gutierrez does not argue, nor is it the case, that the State's assertion in 2010 that it was unable to locate the hair was fraudulent. *See Smith v. Palafox*, 728 F. App'x 270, 277 (5th Cir. 2018) (declining to toll the limitations period for a medical-negligence case where plaintiff's evidence did not show the defendant knew his assertions were false); *Piotrowski v. City of Houston*, 237 F.3d 567, 577 n.13 (5th Cir. 2001); *Lozano v. Baylor University*, 408 F. Supp. 3d 861, 900 (W.D. Tex. Sept. 27, 2019).

Notably, the Fifth Circuit recently declined to apply the "continuing violation doctrine" to a claim challenging the plaintiff's sex-offender-registration requirement, holding that the claim accrued when the plaintiff first learned of his alleged injury. *Hearn v. McCraw*, --- F. App'x, 2021 WL 1440025, at *2–3 (5th Cir. Apr. 15, 2021). The court rejected the plaintiff's argument that the requirement that he register annually provided new accruals. *Id.* at *2. As in *Reed* and *Hearn*, Gutierrez's DNA claims allege one violation—the denial of his request for access to evidence to conduct DNA testing, which Gutierrez learned of in 2010. *See Reed*, 2021 WL 1574048, at *4. His subsequent unsuccessful attempt to obtain access to evidence to conduct

9

DNA testing was not a "separate breach." *Hearn*, 2021 WL 1440025, at *2. And as in *Hearn*, there is reason not to permit Gutierrez to revive his limitations period after sleeping on his rights for almost a decade. *Id.* at *3. Because Gutierrez's DNA claims were plainly time-barred and should have been dismissed as such, Defendants are likely to succeed on appeal.

### B.   This Court granted relief as to a claim Gutierrez did not raise.

In his amended complaint, Gutierrez argued the CCA erred in denying his request for postconviction DNA testing because the results could show he lacked the requisite culpability under *Enmund/Tison*[3] to be sentenced to death. Amended Compl. 29, ECF No. 45. Gutierrez argued that the absence in Chapter 64 for a provision for testing for the purpose of affecting punishment prevents movants from establishing actual innocence of the death penalty and that their execution would constitute a miscarriage of justice. *Id.* (quoting *Sawyer v. Whitley*, 505 U.S. 333, 335 (1992)). Gutierrez also argued Chapter 64 was deficient because it does not permit testing to establish an aggravating circumstance was invalid or that mitigating circumstances exist. *Id.*

This Court granted relief on a different, unpled, basis. Specifically, this Court held that Chapter 64 violates procedural due process because it is

---

[3]   *Enmund v. Florida*, 458 U.S. 782, 797 (1982); *Tison v. Arizona*, 481 U.S. 137, 157–158 (1987).

"irreconcilable" with Texas's subsequent state habeas statute, article 11.071 § 5(a)(3). Order at 24. The conflict exists, this Court held, because Chapter 64 does not provide for testing for the purpose of demonstrating innocence of the death penalty, but article 11.071 § 5(a)(3) allows a state habeas applicant to obtain merits review of a subsequent habeas application if he makes a showing by clear and convincing evidence that, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues. *Id.* at 23, 23 n. 4 (quoting Tex. Code Crim. Proc. art. 37.071). But in his briefing to this Court, Gutierrez never cited § 5(a)(3), the anti-parties special issue in article 37.071 § 2(b)(2), or otherwise referred to subsequent state habeas applications. Because this Court granted relief on a claim not raised by Gutierrez, Defendants are likely to succeed on appeal. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("[Courts] do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties.") (cleaned up).

## C. This Court's conclusion that Chapter 64 is constitutionally deficient is unsupported.

Even if Gutierrez's briefing could be liberally construed as raising the claim as to which this Court granted a declaratory judgment, Defendants are likely to succeed on appeal of that judgment. This Court based its opinion on

the assertion that the absence in Chapter 64 of a provision for testing to prove innocence of the death penalty renders § 5(a)(3) "illusory." Order at 24. But this conclusion is mistaken for several reasons.

First, the CCA has not held that § 5(a)(3) wholly codified the *Sawyer* actual-innocence-of-the-death-penalty exception. *See Ex parte Blue*, 230 S.W.3d 151, 160 n.42 (Tex. Crim. App. 2007) ("We hesitate to declare that Article 11.071, Section 5(a)(3) *wholly* codifies the Supreme Court's doctrine of 'actual innocence of the death penalty,' even inasmuch as it has tied the exception to the bar on subsequent writs to the statutory criteria for the death penalty under Article 37.071.") (emphasis in original). And the undersigned's research has not uncovered a case in which the CCA held the anti-parties special issue under article 37.071 § 2(b)(2) is within the ambit of article 11.071 § 5(a)(3).[4] *See Ex parte Wood*, 498 S.W.3d 926, 929 (Tex. Crim. App. 2016) (Alcala, J., concurring in stay of execution) (Judge Alcala's explanation that she "*would* hold that *Tison* spells out the same type of categorical ban on the

---

[4]     In *Ex parte Blue*, the CCA acknowledged that it would be theoretically possible to satisfy § 5(a)(3) by showing, but for a constitutional error, no rational juror would have answered the mitigation special issue—codified in article 37.071 § 2(e)(1)—in the State's favor. 230 S.W.3d at 160 n.42. As the Fifth Circuit explained in *Rocha v. Thaler*, a claim alleging trial counsel's failure to adequately present mitigating evidence is not a claim of categorical ineligibility for the death penalty. 626 F.3d 815, 827 (5th Cir. 2010). This, despite § 5(a)(3)'s reference to Texas's statutory special issues. Thus, the inclusion of the anti-parties special issue in the statutory scheme does not compel the conclusion that a claim alleging insufficient culpability in the capital murder is a claim alleging ineligibility for the death penalty.

death penalty for certain individuals much in the same way as *Atkins* has for intellectually disabled offenders") (emphasis added); *cf. Ex parte Foster*, No. WR-50,823-02, 2007 WL 2257150, at *1 (Tex. Crim. App. Aug. 7, 2007) (dismissing under article 11.071 § 5 claim alleging new evidence shows "no jury could have found he anticipated a life would be taken"). This Court identified no precedent suggesting that the CCA would consider a claim raised in a subsequent habeas application based on new DNA testing results alleging actual innocence of the death penalty because the results contradict the jury's finding on the anti-parties special issue. That is, Chapter 64 does not deny a death-sentenced inmate a right that article 11.071 § 5(a)(3) provides, and it does not "barricade" the primary avenue for a death-sentenced inmate to make use of § 5(a)(3). Order at 24–25. Consequently, there is no inconsistency between Chapter 64 and § 5(a)(3), and the foundation of this Court's declaratory judgment is flawed.

Second, and relatedly, this Court did not identify any precedent supporting the proposition that DNA testing for the purpose of showing actual innocence of the death penalty would prove ineligibility of the death penalty rather than mere unsuitability. *See Rocha*, 626 F.3d at 823; *id.* at 826–27 ("Evidence that might have persuaded the jury to decline to impose the death penalty is irrelevant under *Sawyer*."); *see also Ex parte White*, 506 S.W.3d 39, 48–50 (Tex. Crim. App. 2016) (rejecting applicant's argument that evidence

that lessens a defendant's moral culpability falls under Texas Code of Criminal Procedure article 11.073 because the statute applies only to evidence related to "guilt claims" and explaining that under the CCA's actual innocence jurisprudence, punishment claims "are not really about innocence"); *cf. Webster v. Daniels*, 784 F.3d 1123, 1139 (7th Cir. 2015) ("[T]he Supreme Court has now established the Constitution itself forbids the execution of certain people: those who satisfy the criteria for intellectual disability that the Court has established, and those who were below the age of 18 when they committed the crime. In virtually all other situations, Congress has almost unlimited discretion to select the penalty, or the range of penalties, that go along with a particular crime."). Rather, DNA testing for the purpose identified by Gutierrez and this Court would only permit a capital defendant to relitigate his guilt at the punishment phase, a right that does not exist. *Oregon v. Guzek*, 546 U.S. 517, 525 (2006). Similarly, the Supreme Court in *Sawyer* emphasized that the actual-innocence-of-the-death-penalty exception "must be subject to determination by relatively objective standards." 505 U.S. at 340. But the assessment of a defendant's culpability under *Enmund / Tison* or Texas's anti-parties special issue is necessarily a subjective one. Tex. Code Crim. Proc. art. 37.071 § 2(b)(2); *see State v. Miles*, 414 P.3d 680, 683 (Ariz. 2018) ("The culpable reckless mental state under *Tison* . . . is a subjective one."). And because the CCA has not explicitly incorporated article 37.071 § 2(b)(2) into article 11.071

14

§ 5(a)(3), this Court's conclusion that Chapter 64 is constitutionally defective for not providing for punishment-related testing is mistaken.

Importantly, the Supreme Court has held there is no due process right to collateral proceedings at all. *See Murray v. Giarratano,* 492 U.S. 1, 7-8 (1989); *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); *Ex parte White*, 506 S.W.3d at 52 ("Like Chapter 64, Article 11.073 is a statute that created a remedy that did not exist, and was not required to exist, prior to the enactment of the statute."). "State collateral proceedings are not constitutionally required as an adjunct to the state criminal proceedings and serve a different and more limited purpose than either the trial or appeal." *Giarratano,* 492 U.S. at 10. Again, the CCA was not required to—and, indeed, could not—grant DNA testing for the purpose of affecting Gutierrez's punishment. *See Ex parte White*, 506 S.W.3d at 51. And neither Gutierrez nor this Court have shown that the CCA would have considered a claim based on such evidence under § 5(a)(3).

Third, this Court's assertion that the absence of a provision for punishment-related DNA testing in Chapter 64 renders article 11.071 § 5(a)(3) "illusory" is erroneous. The CCA regularly considers applications under that provision,[5] and it has granted applicants merits review of claims alleging

---

[5]     *See, e.g., Ex parte Blue*, 230 S.W.3d at 160; *Ex parte Rocha*, No. WR-52,515-04, 2008 WL 5245553, at *1 (Tex. Crim. App. Dec. 17, 2008); *Ex parte Sells*, No. WR-62,552-02, 2007 WL 1493151, at *1 (Tex. Crim. App. May 23, 2007).

ineligibility for the death penalty under it. *See, e.g., Ex parte Milam*, No. WR-79,322-04, 2021 WL 197088, at *1 (Tex. Crim. App. Jan. 15, 2021); *Ex parte Weathers*, No. WR-64,302-02, 2012 WL 1378105, at *1 (Tex. Crim. App. Apr. 18, 2012). Consequently, there is no support for a facial invalidation of Chapter 64 based on its interplay with § 5(a)(3). *See United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that the Bail Reform Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid[.]").

Lastly, deference should be afforded to the Texas Legislature's judgment that postconviction DNA testing should be permitted only for the purpose of demonstrating innocence of the crime of conviction. *See District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009) ("The State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief. When a State chooses to offer help to those seeking relief from convictions, due process does not dictate the exact form such assistance must assume.") (cleaned up); *cf. Schlup v. Delo*, 513 U.S. 298, 324–25 (1995) ("Of greater importance, the individual interest in avoiding injustice is most compelling in the context of actual innocence. The quintessential miscarriage of justice is the execution of a person who is entirely innocent.");

*Dawson v. Suthers*, No. 14-CV-1919, 2015 WL 5525786, at *5 (D. Colo. Sept. 21, 2015) (rejecting equal protection challenge to state's postconviction DNA testing procedures because "[i]t is patently reasonable for the government to grant persons claiming actual innocence more access to postconviction remedies than it grants to persons who claim that their culpability for a crime is lessened by a diminished capacity"). And as discussed above, the absence in Chapter 64 of a provision for punishment-related testing does not deprive death-sentenced inmates to a right otherwise protected by state law. Consequently, Chapter 64 is not constitutionally infirm, and Defendants are likely to succeed in making such a showing on appeal.

## II.   A Stay of Judgment Will Not Substantially Injure Gutierrez, But It Will Serve the Public Interest.

A stay of this Court's declaratory judgment is also appropriate because it will not substantially injure Gutierrez. *See Nken*, 556 U.S. at 426. As this Court properly determined, Gutierrez cannot obtain an injunction by way of this § 1983 action requiring the custodians of the evidence to release it for DNA testing. Mem. & Order 11–12, ECF No. 48. This Court's declaratory judgment is the extent of the relief Gutierrez can obtain. *See* Order 7–8. Moreover, the CCA has already *twice* determined Gutierrez would not be entitled to DNA testing for the purpose of showing he was actually innocent of the death

17

penalty even if Chapter 64 provided for such testing. *Gutierrez v. State*, 2020 WL 918669, at \*8; *Ex parte Gutierrez*, 337 S.W.3d at 901.

Conversely, Defendants will be injured absent a stay of this Court's declaratory judgment. While this Court did not—and could not—grant an injunction requiring DNA testing, Defendants are nonetheless injured by the declaratory judgment insofar as this Court has declared Texas's postconviction DNA testing procedures unconstitutional. *Cf. Texas Alliance for Retired Americans v. Hughs*, 976 F.3d 564, 569 (5th Cir. 2020) ("When the State is seeking to stay a preliminary injunction, it's generally enough to say any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.") (internal quotation marks alterations omitted). In the same way, the public interest would be served by a stay of this Court's declaratory judgment. *Veasey v. Perry*, 769 F.3d 890, 895 (5th Cir. 2014) ("The State will be irreparably harmed if the stay is not issued. When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws.") (internal quotation marks omitted). Consequently, this Court should enter a stay of the declaratory judgment pending Defendants' appeal.

## CONCLUSION

For the reasons discussed above, Defendants respectfully request that this Court stay its declaratory judgment pending the conclusion of Defendants' appeal.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Jay Clendenin
JAY CLENDENIN
Assistant Attorney General
State Bar No. 24059589
Southern District Admission No. 920324

Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
email:  *jay.clendenin@oag.texas.gov*

s/ Edward Sandoval
EDWARD SANDOVAL
First Assistant District Attorney, Cameron
County, Texas
State Bar No. 24063779
Southern District Admission No. 1057169

19

964 East Harrison St.
Brownsville, Texas 78520
email: *appellate@co.cameron.tx.us*

s/ Rene De Coss
RENE DE COSS
City Attorney, Brownsville, Texas
State Bar No. 00795315
Southern District Admission No. 20563

914 E. Van Buren
Brownsville, Texas 78520
email: *rene.decoss@brownsvilletx.gov*

*Counsel for Defendants*

## CERTIFICATE OF CONFERENCE

I, Jay Clendenin, Assistant Attorney General of Texas, certify that I conferred with counsel for Plaintiff and was told that he opposes this motion.

s/ Jay Clendenin
JAY CLENDENIN
Assistant Attorney General

## CERTIFICATE OF SERVICE

I do herby certify that on May 6, 2021, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record, who consented in writing to accept the NEF as service of this document by electronic means:

Peter Walker
Federal Community Defender
for the Eastern District of Pennsylvania
601 Walnut St., Suite 545 West
Philadelphia, PA  19106
peterwalker@fd.org

Richard Rogers, III
3636 S. Alameda St., Suite D191
Corpus Christi, Texas 78411
rwrogersiii@aol.com

s/ Jay Clendenin
JAY CLENDENIN
Assistant Attorney General