IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RUBEN GUTIERREZ, | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO. 1:19-CV-185 |
| v. | § | *DEATH PENALTY CASE* |
| | § | |
| LUIS V. SAENZ, et al., | § | |
| *Defendants.* | § | |

---

**DEFENDANTS' OPPOSED MOTION TO RECONSIDER ORDER
DENYING MOTION TO DISMISS AND ORDER GRANTING A
DECLARATORY JUDGMENT**

---

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

JAY CLENDENIN
Assistant Attorney General
State Bar No. 24059589
 *Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: *jay.clendenin@oag.texas.gov*

EDWARD SANDOVAL
First Assistant District Attorney,
Cameron County, Texas

RENE DE COSS
City Attorney, Brownsville, Texas

*Counsel for Defendants*

## TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................................................i

TABLE OF AUTHORITIES ............................................................................... ii

DEFENDANTS' OPPOSED MOTION TO RECONSIDER ORDER DENYING MOTION TO DISMISS AND ORDER GRANTING A DECLARATORY JUDGMENT ............................................................................................................1

I.    Short Statement of the Nature and Stage of the Proceeding ..................1

II.   Statement of the Issues to Be Ruled Upon by the Court .........................3

III.  Summary of the Argument ...........................................................................4

ARGUMENT ......................................................................................................4

I.    Reconsideration of this Court's Prior Orders Is Appropriate ..................4

II.   Gutierrez's DNA Claims Are Time-Barred ...............................................6

III.  This Court Granted Relief as to a Claim Gutierrez Did Not Raise ...... 12

IV.   This Court's Conclusion that Chapter 64 Is Constitutionally Deficient Is Unsupported and Erroneous .................................................................... 14

CONCLUSION ................................................................................................. 20

CERTIFICATE OF CONFERENCE ............................................................. 22

CERTIFICATE OF SERVICE ....................................................................... 22

i

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Austin v. Kroger Texas, L.P.*, 864 F.3d 326 (5th Cir. 2017) ...............................5

*Dawson v. Suthers*, No. 14-CV-1919, 2015 WL 5525786 (D. Colo. Sept. 21, 2015) ............................................................................................................... 19

*District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52 (2009) ............................................................................................................... 19

*Enmund v. Florida*, 458 U.S. 782 (1982) ........................................................ 12

*Ex parte Blue*, 230 S.W.3d 151 (Tex. Crim. App. 2007) ............................ 14, 18

*Ex parte Foster*, No. WR-50,823-02, 2007 WL 2257150 (Tex. Crim. App. Aug. 7, 2007) ............................................................................................................... 15

*Ex parte Gutierrez*, 337 S.W.3d 883 (Tex. Crim. App. 2011) ............................8

*Ex parte Milam*, No. WR-79,322-04, 2021 WL 197088 (Tex. Crim. App. Jan. 15, 2021) ............................................................................................................... 18

*Ex parte Rocha*, No. WR-52,515-04, 2008 WL 5245553 (Tex. Crim. App. Dec. 17, 2008) ........................................................................................................... 18

*Ex parte Sells*, No. WR-62,552-02, 2007 WL 1493151 (Tex. Crim. App. May 23, 2007) ............................................................................................................... 18

*Ex parte Weathers*, No. WR-64,302-02, 2012 WL 1378105 (Tex. Crim. App. Apr. 18, 2012) ........................................................................................................... 18

*Ex parte White*, 506 S.W.3d 39 (Tex. Crim. App. 2016) ............................ 16, 17

*Ex parte Wood*, 498 S.W.3d 926 (Tex. Crim. App. 2016) ................................ 14

*Hardy v. Oprex Surgery (Baytown) L.P.*, No. H-18-3869, 2021 WL 76171 (S.D. Tex. Jan. 8, 2021) ................................................................................................5

*Hearn v. McCraw*, --- F. App'x ---, 2021 WL 1440025 (5th Cir. Apr. 15, 2021) ................................................................................................... 11, 12

*Jackson v. Standard Mortgage Corp.*, No. 6:18-CV-927, 2020 WL 133550 (W.D. La. Jan. 10, 2020) .................................................................................. 6

*Kansas v. Marsh*, 548 U.S. 163 (2006) ............................................................. 20

*Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471 (M.D. La. 2002) ...................................................................................... 5

*Lozano v. Baylor University*, 408 F. Supp. 3d 861 (W.D. Tex. Sept. 27, 2019) ................................................................................................................. 11

*Murray v. Giarratano,* 492 U.S. 1 (1989) ........................................................ 17

*Oregon v. Guzek*, 546 U.S. 517 (2006) .............................................................. 16

*Pennsylvania v. Finley*, 481 U.S. 551 (1987) .................................................. 17

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) ......................... 11

*Reed v. Goertz*, 995 F.3d 425 (5th Cir. 2021)..................................... 4, 7, 9, 11

*Reed v. State*, 541 S.W.3d 759 (Tex. Crim. App. 2017) .................................... 9

*Rocha v. Thaler*, 626 F.3d 815 (5th Cir. 2010) ......................................... 15, 16

*Russell v. Bd. of Trustees*, 968 F.2d 489 (5th Cir. 1992)................................... 7

*Savory v. Lyons*, 469 F.3d 667 (7th Cir. 2006) .................................... 9, 10, 11

*Sawyer v. Whitley*, 505 U.S. 333 (1992) ....................................... 12, 14, 16, 19

*Schlup v. Delo*, 513 U.S. 298 (1995)................................................................. 19

*Smith v. Palafox*, 728 F. App'x 270 (5th Cir. 2018) ....................................... 10

*State v. Miles*, 414 P.3d 680 (Ariz. 2018)........................................................ 17

*Thompson v. Rovella*, 734 F. App'x 787 (2d Cir. 2018) .................................. 10

*Timberlake v. A.H. Robins Co.*, 727 F.3d 1363 (5th Cir. 1984) ...................... 10

*Tison v. Arizona*, 481 U.S. 137 (1987)................................................................ 12

*United States v. Salerno*, 481 U.S. 739 (1987) ................................................. 18

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) ............................... 13

*Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) .......................................... 16

*Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161 (5th Cir. 2010).................4

**Statutes and Rules**

Federal Rule of Civil Procedure 54(b)............................................................. 4, 5

Texas Code of Criminal Procedure article 11.071 § 5(a)(3) .....................*passim*

Texas Code of Criminal Procedure article 37.071 § 2(b)(2) ................ 13, 14, 17

Texas Code of Criminal Procedure article 37.071 § 2(e)(1) ............................ 14

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RUBEN GUTIERREZ, | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. 1:19-CV-185 |
| v. | § | *DEATH PENALTY CASE* |
| | § | |
| LUIS V. SAENZ, et al., | § | |
| *Defendants*. | § | |

**DEFENDANTS' OPPOSED MOTION TO RECONSIDER ORDER
DENYING MOTION TO DISMISS AND ORDER GRANTING A
DECLARATORY JUDGMENT**

## I.     Short Statement of the Nature and Stage of the Proceeding

Plaintiff Ruben Gutierrez was convicted and sentenced to death for the murder of eighty-five-year-old Escolastica Harrison. Gutierrez filed in this Court an amended civil-rights complaint raising two categories of claims: (1) claims challenging the constitutionality of Texas's postconviction DNA testing procedures [1] (DNA claims); and (2) claims challenging the Texas Department of Criminal Justice's (TDCJ) former execution protocol disallowing the presence of a prison-employed chaplain or outside spiritual advisor inside the execution room during an execution (spiritual-advisor claims). Pl.'s Am. Compl. 19–36, ECF No. 45.

---

[1]     Chapter 64 of the Texas Code of Criminal Procedure.

1

Defendants filed a motion to dismiss Gutierrez's amended complaint. *See generally* Defs.' Mot. Dismiss, ECF No. 46. This Court entered an order granting in part and denying in part Defendants' motion to dismiss. Mem. & Order 30–31, ECF No. 48. Specifically, this Court dismissed Gutierrez's DNA claims that sought relitigation of the state court's denial of DNA testing, his Eighth Amendment claims, and his access-to-courts claim; but this Court declined to dismiss Gutierrez's DNA claims to the extent they challenged the constitutionality of Chapter 64 facially and as authoritatively construed by the state court. *Id.* at 12–15.

Following the stay of Gutierrez's previously scheduled execution, the parties provided additional briefing regarding Gutierrez's challenge to Chapter 64. ECF Nos. 70, 118, 119, 122, 123, 139, 140. Specifically, Defendants moved for reconsideration of this Court's order denying, in part, Defendants' motion to dismiss Gutierrez's DNA claims. Mot. to Reconsider, ECF No. 119. This Court then entered an order denying Defendants' motion for reconsideration and granting Gutierrez a declaratory judgment. Mem. & Order 18, 26, ECF No. 141. This Court also found Gutierrez's claim challenging Chapter 64's materiality standard failed. *Id.* at 21–22. Defendants Saenz and Sauceda then sought entry of a partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) as to the DNA claims, but this Court did not rule on the motion prior to the expiration of thirty days following entry of this Court's order. *See*

*generally* Defs.' Mot. for Entry of Partial Final J., ECF. No. 144. Defendants Saenz and Sauceda filed a notice of appeal of this Court's orders denying, in part, Defendants' motion to dismiss and granting a declaratory judgment. ECF No. 147. While the appeal was pending, Defendants filed a motion in this Court requesting a stay of the declaratory judgment. *See generally* Defs.' Mot. for Stay of J. Pending Appeal, ECF No. 150. On the same day, Gutierrez filed a motion to dismiss Defendants' appeal. Mot. to Dismiss for Lack of Jurisdiction, *Gutierrez v. Saenz, et al.*, No. 21-70002 (5th Cir. May 6, 2021). This Court did not rule on Defendants' motion for a stay. On June 24, 2021, the Fifth Circuit entered an order granting Gutierrez's motion to dismiss Defendants' appeal. Order, *Gutierrez v. Saenz, et al.*, No. 21-70002 (5th Cir. June 24, 2021). On July 7, 2021, Gutierrez filed a third motion in state court seeking postconviction DNA testing. Mot. for Post-Conviction DNA Testing Pursuant to Chapter 64, *Ex parte Gutierrez*, No. 98-CR-1391-A (107th Dist. Ct. Cameron Cty., Tex.).

## II.   Statement of the Issues to Be Ruled Upon by the Court

This Court granted Gutierrez a declaratory judgment as to the constitutionality of Chapter 64 and appears to have dismissed or otherwise denied Gutierrez's other DNA claims. Mem. & Order 7–8, 21–22, 26, ECF No. 141. Defendants Saenz and Sauceda seek reconsideration under Federal Rule of Civil Procedure 54(b) of this Court's order denying, in part, Defendants'

motion to dismiss Gutierrez's amended complaint, ECF No. 48, and this Court's order granting a declaratory judgment, ECF No. 141.

## III.   Summary of the Argument

Reconsideration of this Court's prior orders, ECF Nos. 48 and 141, is appropriate because Gutierrez's DNA claims are plainly time-barred as made clear by the Fifth Circuit's holding in *Reed v. Goertz*, 995 F.3d 425, 430–31 (5th Cir. 2021). Moreover, this Court abused its discretion by granting a declaratory judgment as to a claim Gutierrez did not raise. Finally, this Court's conclusion that Chapter 64 violates procedural due process is erroneous.

## ARGUMENT

## I.   Reconsideration of this Court's Prior Orders Is Appropriate.

This Court has the authority to reconsider its denial of Defendants' motion to dismiss and its order granting a declaratory judgment. Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *see* ECF No. 141 at 12–13; *see also Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010) ("An order denying summary judgment is interlocutory, and leaves the trial court free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or

4

clarification of the substantive law.") (citation omitted). Defendants sought entry of a partial final judgment to facilitate an appeal of this Court's orders, but this Court has not ruled on the motion.

Following Defendants' appeal of this Court's orders, the Fifth Circuit dismissed the appeal for lack of jurisdiction. Order, *Gutierrez v. Saenz, et al.*, No. 21-70002 (5th Cir. June 24, 2021). Consequently, no final, appealable judgment has been entered in this case and reconsideration of this Court's orders is permissible. *See Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336–37 (5th Cir. 2017) (holding the district court abused its discretion by applying Federal Rule of Civil Procedure 59(e) to a motion to reconsider a pre-judgment order); *Hardy v. Oprex Surgery (Baytown) L.P.*, No. H-18-3869, 2021 WL 76171, at *2 (S.D. Tex. Jan. 8, 2021) ("Here, the court considers Hardy's motion under Rule 54(b), not Rule 54(e), because the court's summary judgment order preserves one of her claims."); *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475 (M.D. La. 2002) ("The only limitation on [reconsideration under Rule 54(b)] is that if the court issues an order which expressly states that there is no just reason for delay, the order becomes a judgment that is final and appealable. . . . Rule 59(e) does not apply until such a final judgment has been entered."). As discussed below, the Fifth Circuit's holding in *Reed* and the erroneous bases of the declaratory judgment are sufficient reasons for this Court to reconsider its prior orders. *See Austin*, 864

F.3d at 336–37 (discussing the relative flexibility of Rule 54(b) allowing for reconsideration prior to entry of judgment and stating that the district court is free to reconsider a decision even in the absence of new evidence or an intervening change in law); *Jackson v. Standard Mortgage Corp.*, No. 6:18-CV-927, 2020 WL 133550, at *2 (W.D. La. Jan. 10, 2020) (noting that, *inter alia*, manifest errors of law or fact and intervening changes in the law are bases for reconsideration).

## II.   **Gutierrez's DNA Claims Are Time-Barred.**

In their motion to dismiss Gutierrez's amended complaint, Defendants argued that Gutierrez's DNA claims were time-barred because they were raised well over two years after he first unsuccessfully sought DNA testing in state court. Defs.' Mot. to Dismiss 33–36, ECF No. 46. This Court found Gutierrez's DNA claims timely because they were brought within two years of the Texas Court of Criminal Appeals's (CCA) affirmance of the denial of Gutierrez's *second* Chapter 64 motion. Mem. & Order 14, ECF 48. Additionally, this Court found the claims timely because Gutierrez's second Chapter 64 motion for DNA testing was his first such motion filed after Chapter 64 was amended eight years earlier to remove the former no-fault provision. *Id.* This Court held that February 26, 2020—the date of the CCA's affirmance of the denial of Gutierrez's second Chapter 64 motion—was "the date Gutierrez

6

would have reason to know of his alleged injury." *Id.* This Court's holding is erroneous under *Reed*.

In *Reed*, following his unsuccessful attempt at obtaining DNA testing in state court, the plaintiff filed a § 1983 action challenging the constitutionality of Chapter 64. *Reed*, 995 F.3d at 428 ("Reed's amended complaint challenges the constitutionality of Chapter 64, both on its face and as applied to him."). The Fifth Circuit held that the limitations period for a § 1983 claim—like Gutierrez's—"begins to run 'the moment the plaintiff becomes aware [ ] he has suffered an injury or has sufficient information to know that he has been injured.'" *Id.* at 431 (quoting *Russell v. Bd. of Trustees*, 968 F.2d 489, 493 (5th Cir. 1992)). The plaintiff complained, as Gutierrez does, "that he was denied access to the physical evidence that he wished to test." *Id.* And because "[a]n injury accrues when a plaintiff *first* becomes aware, or should have become aware, that his right has been violated," a claim challenging the constitutionality of Chapter 64 accrues when the trial court denies a motion for postconviction DNA testing. *Id.* (emphasis in original). The Fifth Circuit found the plaintiff's claims time-barred because he "had the necessary information to know his rights were allegedly being violated as soon as the trial court denied his motion for post-conviction relief." *Id.* The Fifth Circuit explicitly rejected the argument that such claims do not accrue until the conclusion of an appeal from the trial court's denial of a Chapter 64 motion. *Id.*

7

As shown by *Reed*, Gutierrez had a complete and present cause of action as of July 27, 2010, when the trial court denied his first request for postconviction DNA testing. Order, *Ex parte Gutierrez*, No. 98-CV-1391-A (107th Dist. Ct. Cameron Cty., Tex.). The Fifth Circuit's holding in *Reed* directly contravenes this Court's holding that Gutierrez's claims did not accrue until the conclusion of the appeal of the denial of his *second* Chapter 64 motion. Mem. & Order, ECF No. 48 at 14.

Moreover, this Court cited no relevant authority for the proposition that a cause of action like Gutierrez's re-accrues simply by the filing of a successive motion for postconviction DNA testing. Gutierrez knew when his first motion for DNA testing was denied that Chapter 64 did not provide for postconviction DNA testing for the purpose of affecting his punishment. Similarly, the 2011 amendment to Chapter 64 removing the former no-fault provision did not constitute a fresh accrual (a fact plainly shown by Gutierrez's subsequent failure to file another Chapter 64 motion until 2019), since the no-fault provision was only one of many grounds on which Gutierrez's first Chapter 64 motion was denied. *See Ex parte Gutierrez*, 337 S.W.3d 883, 899–902 (Tex. Crim. App. 2011). And importantly, Gutierrez disclaimed reliance on the 2011 amendment to Chapter 64 as a basis for finding his claims timely. Pl.'s Reply 4, ECF No. 122 ("Contrary to Defendants' suggestion, Mr. Gutierrez does not contend that the 2011 amendment to Chapter 64 either expanded Gutierrez's

ability to seek DNA testing or provided a basis to restart his limitations period.") (internal quotation marks and alterations omitted); Opp'n to Mot. to Vacate 17–18, *Gutierrez v. Saenz, et al.*, No. 20-70009 (5th Cir. June 12, 2020).

Gutierrez has argued that his DNA claims did not accrue until the conclusion of his second Chapter 64 proceeding because he presented new evidence (e.g., witness affidavits) in support of his second Chapter 64 motion and he was given the opportunity in 2019 to review the State's files at which time he found a hair that he alleged was one that had not been recovered at the time of his first Chapter 64 proceedings. Pl.'s Am. Compl. 12, 27 n.9, ECF No. 45; Pl.'s Reply 4, ECF No. 122. But his second unsuccessful attempt at obtaining postconviction DNA testing did not constitute a new accrual. *See Reed*, 995 F.3d at 431; *Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006) ("[Plaintiff's] continued lack of access to the evidence is not a fresh act on the part of [Defendant]. Rather, it is the natural consequence of the discrete act that occurred when [Defendants] first denied access to the evidence."). Additionally, Gutierrez's "new" evidence was irrelevant to his Chapter 64 proceedings. *Reed v. State*, 541 S.W.3d 759, 774 (Tex. Crim. App. 2017) ("[O]ur review in this context does not consider post-trial factual developments.").

And Gutierrez's substitute counsel's purported discovery of a hair among the State's files—following a decade's worth of representation by his previously appointed counsel—does not constitute a new accrual, and Gutierrez has not

9

identified any support for such an argument. Pl.'s Reply 4, ECF No. 122. Rather, Gutierrez's purported discovery of a single piece of evidence almost ten years after his initial Chapter 64 litigation concluded is more appropriately understood as an argument for equitable tolling, which requires a plaintiff to show he diligently pursued his rights and the existence of an extraordinary circumstance that stood in the way of a timely filing. *See Thompson v. Rovella*, 734 F. App'x 787, 790 (2d Cir. 2018); *Savory*, 469 F.3d at 674. But Gutierrez's demonstrable failure to exercise diligence during the near-decade that followed the state court's denial of his first Chapter 64 motion disentitles him to equitable tolling. *See Thompson*, 734 F. App'x at 790–91.

Moreover, while *fraudulent* concealment can toll the limitations period, Gutierrez has not even alleged, nor is it the case, that the State's assertion in 2010 that it was unable to locate the hair was fraudulent. Pl.'s Opp'n to Mot. to Dismiss 37, ECF No. 47;[2] *see Smith v. Palafox*, 728 F. App'x 270, 277 (5th Cir. 2018) (declining to toll the limitations period for a medical-negligence case where plaintiff's evidence did not show the defendant knew his assertions were

---

[2]    Gutierrez cited in his opposition a case addressing an allegation of fraudulent concealment, but Gutierrez made no such factual allegation in his amended complaint—or any other pleading—of fraudulent concealment. Pl.'s Opp'n to Mot. to Dismiss 37–38, ECF No. 47 (citing *Timberlake v. A.H. Robins Co.*, 727 F.3d 1363, 1366 (5th Cir. 1984)). Notably, in *Timberlake*, the Fifth Circuit stated that to prove fraudulent concealment a plaintiff must prove the defendant had actual knowledge of the facts allegedly concealed and a fixed purpose to conceal the wrong. 727 F.2d at 1366. Gutierrez made no such factual allegations in his pleadings.

false); *Piotrowski v. City of Houston*, 237 F.3d 567, 577 n.13 (5th Cir. 2001); *Lozano v. Baylor University*, 408 F. Supp. 3d 861, 900 (W.D. Tex. Sept. 27, 2019). Rather, Gutierrez merely alleged that his assertion of innocence and the lack of DNA testing in his case were bases for equitable tolling. Pl.'s Opp'n to Mot. to Dismiss 37, ECF No. 47. But such allegations—allegations that would justify equitable tolling in virtually every case involving a criminal defendant's unsuccessful effort to obtain postconviction DNA testing in state court—are patently insufficient to show his case is extraordinary. *Savory*, 469 F.3d at 674 (finding the plaintiff's continued assertion of innocence insufficient to warrant equitable tolling). Consequently, Gutierrez has not even pled facts that could justify tolling of his limitations period.

Notably, the Fifth Circuit recently declined to apply the "continuing violation doctrine" to a claim challenging the plaintiff's sex-offender-registration requirement, holding that the claim accrued when the plaintiff first learned of his alleged injury. *Hearn v. McCraw*, --- F. App'x ---, 2021 WL 1440025, at *2–3 (5th Cir. Apr. 15, 2021). The court rejected the plaintiff's argument that the requirement that he register annually provided new accruals. *Id.* at *2. As in *Reed* and *Hearn*, Gutierrez's DNA claims allege one violation—the denial of his request for access to evidence to conduct DNA testing, which Gutierrez learned of in 2010. *See Reed*, 995 F.3d at 431. His subsequent unsuccessful attempt to obtain access to evidence to conduct DNA

testing was not a "separate breach." *Hearn*, 2021 WL 1440025, at *2. And as in *Hearn*, there is reason not to permit Gutierrez to revive his limitations period after sleeping on his rights for almost a decade. *Id.* at *3. Because Gutierrez's DNA claims are plainly time-barred, this Court should reconsider its prior orders and dismiss those claims as such.

## III.   This Court Granted Relief as to a Claim Gutierrez Did Not Raise.

In his amended complaint, Gutierrez argued the CCA erred in denying his request for postconviction DNA testing because the results could show he lacked the requisite culpability under *Enmund/Tison*[3] to be sentenced to death. Pl.'s Am. Compl. 29, ECF No. 45. Gutierrez argued that the absence in Chapter 64 of a provision for testing for the purpose of affecting punishment prevents movants from establishing actual innocence of the death penalty and that their execution would constitute a miscarriage of justice. *Id.* (quoting *Sawyer v. Whitley*, 505 U.S. 333, 335 (1992)). Gutierrez also argued Chapter 64 was deficient because it does not permit testing to establish an aggravating circumstance was invalid or that mitigating circumstances exist. *Id.*

This Court granted relief on a different, unpled, basis. Specifically, this Court held that Chapter 64 violates procedural due process because it is "irreconcilable" with Texas's subsequent state habeas statute, article 11.071

---

[3]     *Enmund v. Florida*, 458 U.S. 782, 797 (1982); *Tison v. Arizona*, 481 U.S. 137, 157–158 (1987).

§ 5(a)(3). Mem. & Order 24, ECF No. 141. The conflict exists, this Court held, because Chapter 64 does not provide for testing for the purpose of demonstrating innocence of the death penalty, but article 11.071 § 5(a)(3) allows a state habeas applicant to obtain merits review of a subsequent habeas application if he makes a showing by clear and convincing evidence that, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues. *Id.* at 23, 23 n. 4 (quoting Tex. Code Crim. Proc. art. 37.071).

In his extensive briefing to this Court, Gutierrez never cited § 5(a)(3), the anti-parties special issue in article 37.071 § 2(b)(2), or otherwise referred to subsequent state habeas applications. Because this Court granted relief on a claim not raised by Gutierrez—thereby abusing its discretion by violating the principle of party presentation—this Court should reconsider its order granting a declaratory judgment and dismiss Gutierrez's DNA claims. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("[Courts] do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties.") (cleaned up).

IV.    **This Court's Conclusion that Chapter 64 Is Constitutionally Deficient Is Unsupported and Erroneous.**

Even if Gutierrez's briefing could be liberally construed as raising the claim as to which this Court granted a declaratory judgment, this Court should reconsider its order granting a declaratory judgment. This Court based its opinion on the assertion that the absence in Chapter 64 of a provision for testing to prove innocence of the death penalty renders § 5(a)(3) "illusory." Mem. & Order 24, ECF No. 141. But this conclusion is mistaken for several reasons.

First, the CCA has not held that § 5(a)(3) wholly codified the *Sawyer* actual-innocence-of-the-death-penalty exception. *See Ex parte Blue*, 230 S.W.3d 151, 160 n.42 (Tex. Crim. App. 2007) ("We hesitate to declare that Article 11.071, Section 5(a)(3) *wholly* codifies the Supreme Court's doctrine of 'actual innocence of the death penalty,' even inasmuch as it has tied the exception to the bar on subsequent writs to the statutory criteria for the death penalty under Article 37.071.") (emphasis in original). And the undersigned's research has not uncovered a case in which the CCA held the anti-parties special issue under article 37.071 § 2(b)(2) is within the ambit of article 11.071 § 5(a)(3).[4] *See Ex parte Wood*, 498 S.W.3d 926, 929 (Tex. Crim. App. 2016)

---

[4]    In *Ex parte Blue*, the CCA acknowledged that it would be theoretically possible to satisfy § 5(a)(3) by showing, but for a constitutional error, no rational juror would have answered the mitigation special issue—codified in article 37.071 § 2(e)(1)—in

14

(Alcala, J., concurring in stay of execution) (Judge Alcala's explanation that she "*would* hold that *Tison* spells out the same type of categorical ban on the death penalty for certain individuals much in the same way as *Atkins* has for intellectually disabled offenders") (emphasis added); *cf. Ex parte Foster*, No. WR-50,823-02, 2007 WL 2257150, at *1 (Tex. Crim. App. Aug. 7, 2007) (dismissing under article 11.071 § 5 claim alleging new evidence shows "no jury could have found he anticipated a life would be taken"). This Court identified no precedent suggesting that the CCA would consider a claim raised in a subsequent habeas application based on new DNA testing results alleging actual innocence of the death penalty because the results contradict the jury's finding on the anti-parties special issue. That is, Chapter 64 does not deny a death-sentenced inmate a right that article 11.071 § 5(a)(3) provides, and it does not "barricade" the primary avenue for a death-sentenced inmate to make use of § 5(a)(3). Mem. & Order 24–25, ECF No. 141. Consequently, there is no inconsistency between Chapter 64 and § 5(a)(3), and the foundation of this Court's declaratory judgment is fundamentally flawed.

---

the State's favor. 230 S.W.3d at 160 n.42. As the Fifth Circuit explained in *Rocha v. Thaler*, a claim alleging trial counsel's failure to adequately present mitigating evidence is not a claim of categorical ineligibility for the death penalty. 626 F.3d 815, 827 (5th Cir. 2010). This, despite § 5(a)(3)'s reference to Texas's statutory special issues. Thus, the inclusion of the anti-parties special issue in the statutory scheme does not compel the conclusion that a claim alleging insufficient culpability in the capital murder amounts to a claim alleging ineligibility for the death penalty.

15

Second, and relatedly, this Court did not identify any precedent supporting the proposition that DNA testing for the purpose of showing actual innocence of the death penalty would prove ineligibility of the death penalty rather than mere unsuitability. *See Rocha*, 626 F.3d at 823; *id.* at 826–27 ("Evidence that might have persuaded the jury to decline to impose the death penalty is irrelevant under *Sawyer*."); *see also Ex parte White*, 506 S.W.3d 39, 48–50 (Tex. Crim. App. 2016) (rejecting applicant's argument that evidence that lessens a defendant's moral culpability falls under Texas Code of Criminal Procedure article 11.073 because the statute applies only to evidence related to "guilt claims" and explaining that under the CCA's actual innocence jurisprudence, punishment claims "are not really about innocence"); *cf. Webster v. Daniels*, 784 F.3d 1123, 1139 (7th Cir. 2015) ("[T]he Supreme Court has now established the Constitution itself forbids the execution of certain people: those who satisfy the criteria for intellectual disability that the Court has established, and those who were below the age of 18 when they committed the crime. In virtually all other situations, Congress has almost unlimited discretion to select the penalty, or the range of penalties, that go along with a particular crime."). Rather, DNA testing for the purpose identified by Gutierrez would only permit a capital defendant to relitigate his guilt at the punishment phase, a right that does not exist. *Oregon v. Guzek*, 546 U.S. 517, 525 (2006). Similarly, the Supreme Court in *Sawyer* emphasized that the

16

actual-innocence-of-the-death-penalty exception "must be subject to determination by relatively objective standards." 505 U.S. at 340. But the assessment of a defendant's culpability under *Enmund/Tison* or Texas's anti-parties special issue is necessarily a subjective one. Tex. Code Crim. Proc. art. 37.071 § 2(b)(2); *see State v. Miles*, 414 P.3d 680, 683 (Ariz. 2018) ("The culpable reckless mental state under *Tison* . . . is a subjective one."). And again, because the CCA has not explicitly incorporated article 37.071 § 2(b)(2) into article 11.071 § 5(a)(3), this Court's conclusion that Chapter 64 is constitutionally defective for not providing for punishment-related testing is mistaken.

Importantly, the Supreme Court has held there is no due process right to collateral proceedings at all. *See Murray v. Giarratano,* 492 U.S. 1, 7-8 (1989); *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); *Ex parte White*, 506 S.W.3d at 52 ("Like Chapter 64, Article 11.073 is a statute that created a remedy that did not exist, and was not required to exist, prior to the enactment of the statute."). "State collateral proceedings are not constitutionally required as an adjunct to the state criminal proceedings and serve a different and more limited purpose than either the trial or appeal." *Giarratano,* 492 U.S. at 10. The CCA was not required to—and, indeed, could not—grant DNA testing for the purpose of affecting Gutierrez's punishment. *See Ex parte White*, 506 S.W.3d at 51. And neither Gutierrez nor this Court have shown that the CCA

17

would have considered a claim based on such evidence presented in a subsequent state habeas application under § 5(a)(3).

Third, this Court's assertion that the absence of a provision for punishment-related DNA testing in Chapter 64 renders article 11.071 § 5(a)(3) "illusory" is erroneous. Mem. & Order 24, ECF No. 141. The CCA regularly considers applications under that provision,[5] and it has granted applicants merits review of claims alleging ineligibility for the death penalty under it, *see, e.g., Ex parte Milam*, No. WR-79,322-04, 2021 WL 197088, at *1 (Tex. Crim. App. Jan. 15, 2021); *Ex parte Weathers*, No. WR-64,302-02, 2012 WL 1378105, at *1 (Tex. Crim. App. Apr. 18, 2012). Consequently, there is no support for a facial invalidation of Chapter 64 based on its interplay with § 5(a)(3). *See United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that the Bail Reform Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid[.]").

---

[5] *See, e.g., Ex parte Blue*, 230 S.W.3d at 160; *Ex parte Rocha*, No. WR-52,515-04, 2008 WL 5245553, at *1 (Tex. Crim. App. Dec. 17, 2008); *Ex parte Sells*, No. WR-62,552-02, 2007 WL 1493151, at *1 (Tex. Crim. App. May 23, 2007).

Lastly, deference should be afforded to the Texas Legislature's judgment that postconviction DNA testing should be permitted only for the purpose of demonstrating innocence of the crime of conviction. *See District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009) ("The State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief. When a State chooses to offer help to those seeking relief from convictions, due process does not dictate the exact form such assistance must assume.") (cleaned up); *cf. Schlup v. Delo*, 513 U.S. 298, 324–25 (1995) ("Of greater importance, the individual interest in avoiding injustice is most compelling in the context of actual innocence. The quintessential miscarriage of justice is the execution of a person who is entirely innocent."); *Dawson v. Suthers*, No. 14-CV-1919, 2015 WL 5525786, at *5 (D. Colo. Sept. 21, 2015) (rejecting equal protection challenge to state's postconviction DNA testing procedures because "[i]t is patently reasonable for the government to grant persons claiming actual innocence more access to postconviction remedies than it grants to persons who claim that their culpability for a crime is lessened by a diminished capacity"). Deference is particularly appropriate here, as Texas has declined to extend postconviction DNA testing for the purpose of making a subjective showing that the Supreme Court has acknowledged "does not translate easily into the context of an alleged error at the sentencing phase of a trial on a capital offense." *Sawyer*, 505 U.S. at 340;

19

*cf. Kansas v. Marsh*, 548 U.S. 163, 180 (2006) ("[T]he availability of DNA testing, and the questions is might raise about the accuracy of guilt-phase determinations in capital cases, is simply irrelevant to the question before the Court today, namely, the constitutionality of Kansas' capital *sentencing* scheme.") (emphasis in original). And as discussed above, the absence in Chapter 64 of a provision for punishment-related testing does not deprive death-sentenced inmates to a right otherwise protected by state law. Consequently, Chapter 64 is not constitutionally infirm, and this Court should reconsider its prior order and dismiss all of Gutierrez's DNA claims with prejudice.

## CONCLUSION

For these reasons, this Court should reconsider its orders denying, in part, Defendants' motion to dismiss and granting Gutierrez a declaratory judgment and dismiss with prejudice all of Gutierrez's DNA claims.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Jay Clendenin
JAY CLENDENIN
Assistant Attorney General
State Bar No. 24059589
Southern District Admission No. 920324

Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
email:  *jay.clendenin@oag.texas.gov*

s/ Edward Sandoval
EDWARD SANDOVAL
First Assistant District Attorney, Cameron
County, Texas
State Bar No. 24063779
Southern District Admission No. 1057169

964 East Harrison St.
Brownsville, Texas 78520
email: *appellate@co.cameron.tx.us*

s/ Rene De Coss
RENE DE COSS
City Attorney, Brownsville, Texas
State Bar No. 00795315
Southern District Admission No. 20563

914 E. Van Buren
Brownsville, Texas 78520
email: *rene.decoss@brownsvilletx.gov*

*Counsel for Defendants*

21

## CERTIFICATE OF CONFERENCE

I, Jay Clendenin, Assistant Attorney General of Texas, certify that I conferred with counsel for Gutierrez and was told that he opposes this motion.

s/ Jay Clendenin
JAY CLENDENIN
Assistant Attorney General

## CERTIFICATE OF SERVICE

I do herby certify that on July 7, 2021, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record, who consented in writing to accept the NEF as service of this document by electronic means:

Peter Walker
Federal Community Defender
for the Eastern District of Pennsylvania
601 Walnut St., Suite 545 West
Philadelphia, PA  19106
peterwalker@fd.org

Richard Rogers, III
3636 S. Alameda St., Suite D191
Corpus Christi, Texas 78411
rwrogersiii@aol.com

s/ Jay Clendenin
JAY CLENDENIN
Assistant Attorney General

22