Case 1:19-cv-00185 Document 213 Filed on 03/10/23 in TXSD Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
March 10, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| RUBEN GUTIERREZ, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL NO. 1:19-cv-00185 |
| § | |
| LUIS V. SAENZ, *et al*, § | |
| § | |
| Defendants. § | |

### ORDER OF DISMISSAL

Before the Court is a motion to dismiss filed by Defendants Bryan Collier, Executive Director of the Texas Department of Criminal Justice (TDCJ); Bobby Lumpkin, Director of the TDCJ-Correctional Institutions Division; and Kelly Strong, Warden of the TDCJ Huntsville Unit. (Docket Entry No. 209).

Ruben Gutierrez was convicted of capital murder by a jury and sentenced to death in 1999. On September 9, 2019, Gutierrez filed a civil-rights complaint pursuant to 42 U.S.C. § 1983. Gutierrez's complaint raised two categories of claims: (1) challenges the constitutionality of the DNA testing procedures in Chapter 64 of the Texas Code of Criminal Procedure, Motion for Forensic DNA Testing ("Chapter 64") and (2) claims involving TDCJ's execution protocol which disallowed the assistance of a spiritual advisor during an execution.

On March 23, 2021, Gutierrez was granted a declaratory judgment as to the constitutionality of Chapter 64. (Docket No. 141).[1] That matter is currently before the Fifth Circuit. *Gutierrez v. Saenz*, 21-70009. Only Gutierrez's claims involving his religious rights during his execution remain before this Court. Gutierrez does not currently face any execution

---

[1] The Honorable United States District Court Judge Hilda G. Tagle originally presided over this case. On December 27, 2021, the case was reassigned to the undersigned.

1

date.

The Defendants filed a motion to dismiss Gutierrez's lawsuit as moot pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Docket No. 209). Gutierrez has filed a response in opposition. (Docket No. 210). The Defendants have filed a reply. (Docket No. 211). After reviewing the briefing, the record, and the law, the Court finds that this action is now moot. The Court will **grant** the Defendants' motion to dismiss.

### I. Background

In 1985, Texas adopted an official execution protocol which required a TDCJ-employed chaplain to assist in every execution. In early 2019, a Texas inmate sued because TDCJ protocol would not allow an outside spiritual advisor of his choice in the execution chamber. The litigation led to TDCJ adopting an execution protocol which excluded all spiritual advisors, including prison chaplains, from the execution chamber. *See Barbee v. Collier*, 2022 WL 16710723, at *2-4 (S.D. Tex. 2022) (detailing the history of Texas' clergy-in-the-execution-chamber cases).

When Gutierrez filed this lawsuit, he asked for what TDCJ had guaranteed before the 2019 change in policy: a prison chaplain's presence in the execution chamber during his final moments. Alternatively, Gutierrez asked for the presence of a spiritual advisor who is not employed by the prison system. In his complaint, Gutierrez sought three forms of relief: (1) a declaratory judgment that TDCJ's policy violates his rights under the First Amendment's Establishment and Free Exercise Clauses; (2) a declaratory judgment that TDCJ's policy violates RLIUPA; and (3) a "preliminary and permanent injunction prohibiting Defendants from executing Mr. Gutierrez until they can do so in a way that does not violate his rights." (Docket No. 1 at 35).

Since Gutierrez filed this lawsuit, TDCJ has again revised its policy. On April 21, 2021, TDCJ adopted a new execution protocol which, with certain preliminary requirements, will allow

2

a Texas inmate's chosen spiritual advisor to accompany him during an execution ("2021 protocol"). The 2021 protocol gives precise details about the qualifications of, background check for, and training of an inmate's spiritual advisor. Still, "[t]he Execution Policy is silent as to what a spiritual advisor may do inside the execution chamber." (Docket No. 209 at 11). The 2021 Protocol neither prohibits nor permits a spiritual advisor from praying or maintaining physical contact with the condemned.

Prison officials initially interpreted the 2021 policy to allow a spiritual advisor's presence in the execution chamber, but still to prevent any touch or prayer.[2] Gutierrez amended his complaint to include his worry that TDCJ would not honor his requested accommodations. (Docket No. 182). All that remains in this lawsuit is Gutierrez's concern that TDCJ will not allow his chosen spiritual advisor to touch him or pray during any future execution.

The Defendants have moved to dismiss this case under Rule 12(b)(1). (Docket No. 209). The Defendants base their motion on an affidavit by Director Lumpkin. In that affidavit, Director Lumpkin promises that TDCJ will accommodate Gutierrez's requests during his execution. On that basis, the Defendants argue that they "have formally approved all of Gutierrez's religious requests for accommodation in the execution chamber" because his "chosen spiritual advisor will be permitted in the execution chamber, may pray aloud, and may lay a hand on Gutierrez's left shoulder during the execution process." (Docket No. 209 at 5). "Additionally, should Gutierrez's spiritual advisor agree to provide Last Rites, Communion, or anointing for Gutierrez, he will be permitted to do so. All relief Gutierrez has requested . . . has been approved, and there is nothing left to enjoin." (Docket No. 209 at 5).

---

[2] Facing an execution date that was later lifted, Gutierrez filed a separate lawsuit on August 25, 2021, that travels the same path as the instant case. *Gutierrez v. Collier et al.*, No. 1:21-cv-129. The parties have focused on litigating Gutierrez's concerns in the instant lawsuit.

3

## II. Rule 12(b)(1) Standard

The Defendants move for dismissal under Rule 12(b)(1). "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—*i.e.* where the controversy is no longer live and ongoing." *Front Range Equine Rescue v. Vilsack*, 782 F.3d 565, 568 (10th Cir. 2015) (internal quotation marks omitted); *see also United States v. Heredia-Holguin*, 823 F.3d 337, 340 (5th Cir. 2016) ("Under Article III's case-or-controversy requirement, to invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.") (quotation omitted). When the controversy between litigants "has resolved to the point that they no longer qualify as 'adverse parties with sufficient legal interests to maintain the litigation,' [courts] are without power to entertain the case." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009) (citation omitted). "If a claim is moot, it presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." *National Rifle Ass'n of America v. McCraw*, 719 F.3d 338, 344 (5th Cir. 2013) (internal quotation marks and citation omitted).

## III. The Defendants' Motion to Dismiss

The Defendants argue that "TDCJ officials have provided relief beyond that which Gutierrez asked for in this lawsuit . . . ." (Docket Entry No. 209 at 11). With that promise of accommodating Gutierrez's religious rights, the Defendants argue that Gutierrez's request for "declaratory relief is . . . moot" and "[t]here is nothing more to enjoin in this case." (Docket Entry No. 209 at 11, 16).

4

### A.  Declaratory Judgment

Gutierrez's complaint requested that this Court enter a declaratory judgment stating that TDCJ's execution policy violated the First Amendment and RLUIPA. Gutierrez challenged the policy that "preclude[ed] all chaplains and spiritual advisors from being present in the execution chamber." (Docket No. 1 at 29). Since Gutierrez filed this lawsuit, TDCJ changed its execution protocol. This case is no longer about whether a spiritual advisor may be present in the execution chamber, but what spiritual assistance they may provide during the execution.

"It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). Texas has changed the policy for which Gutierrez sought a declaratory judgment. This Court cannot declare past conduct unconstitutional. *See Lewis v. La. State Bar Ass'n*, 792 F.2d 493, 496 (5th Cir. 1986). Entering a declaratory judgment after TDCJ has changed its policy would amount to "'nothing more than a gratuitous comment without any force or effect.'" *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985) (quoting *Northern Virginia Women's Medical Center v. Balch*, 617 F.2d 1045, 1049 (4th Cir. 1980)).

Gutierrez has not responded to the Defendants' motion to dismiss with any argument that his request for declaratory judgments still represent a live controversy. The Court, therefore, finds that his request for that relief is moot.

### B.  Permanent and Preliminary Injunction

Gutierrez requests a permanent and preliminary injunction "prohibiting Defendants from executing Mr. Gutierrez until they can do so in a way that does not violate his rights." (Docket

No. 1 at 35). As previously discussed, the Defendants rely on an affidavit in which Director Lumpkin agrees to conduct any execution in accordance with Gutierrez's requested accommodations. Under Texas law, Director Lumpkin is the official who is statutorily responsible for overseeing executions in the State of Texas. Tex. Code. Crim. Pro. § 43.15. Director Lumpkin avers that he is "the official with authority to make changes to the execution policy and the ultimate decision-maker for approving requests for religious accommodations related to the execution process." (Docket No. 209, Exhibit A). Director Lumpkin's sworn statement indicates that Gutierrez's requested accommodations have been officially approved and will not be withdrawn. (Docket No. 209, Exhibit A).

With that, the Defendants argue that there is no continuing violation of federal law as to Gutierrez. The Defendants essentially argue that "TDCJ officials have provided relief beyond that which Gutierrez asked for in this lawsuit or in any prison grievance, and beyond the basis for Gutierrez's stay of execution. There is nothing more to enjoin in this case." (Docket No. 209 at 11). On that basis, the Defendants argue that this case is moot.

Gutierrez's response to the dismissal motion includes a proposed injunction. (Docket No. 210, Exhibit 1).[3] Gutierrez's proposed injunction mirrors, and in some places exactly replicates, the guarantees Director Lumpkin made in his affidavit. *Compare* Docket No. 209, Exhibit A *with* Docket No. 210, Exhibit 1. Gutierrez has not identified any material difference between Director Lumpkin's avowed accommodations and his proposed injunction.

Generally, a defendant's voluntary conduct does not moot a case unless "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Sossamon*,

---

[3] Gutierrez's proposed injunction does not apply to any inmate other than himself. As the Defendants argue: "Even if Gutierrez's claims were not moot, an injunction here could not extend beyond enjoining conduct specific to Gutierrez's own execution; conduct that TDCJ has already demonstrated will not occur." (Docket No. 211 at 2.)

6

560 F.3d at 325. The Fifth Circuit, however, has held that governmental entities bear a "'lighter burden' . . . in proving that the challenged conduct will not recur once the suit is dismissed as moot." *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014) (quoting *Sossamon*, 560 F.3d at 325). Courts presume that state actors, as public servants, will act in good faith. *See Freedom From Religion Foundation, Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023); *Fort Bend Cnty. v. United States Army Corps of Engineers*, 59 F.4th 180, 195 (5th Cir. 2023); *Miraglia v. Bd. Of Supervisors of La. State Museum*, 901 F.3d 565, 572 (5th Cir. 2018); *Sossamon*, 560 F.3d at 325 (government actors "are accorded a presumption of good faith because they are public servants, not self-interested private parties"). Thus, courts in the Fifth Circuit "treat[] a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity." *Sossamon*, 560 F.3d at 325. Courts will assume changes made by government actors "are not mere litigation posturing" unless a plaintiff adduces "evidence to the contrary." *Turner v. Texas Department of Criminal Justice*, 836 F. App'x 227, 229 (5th Cir. 2020). "Such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Id.* at 229.

Under the penalty of perjury, Director Lumpkin has assured that the Defendants will give Gutierrez the religious accommodations he seeks. Gutierrez argues that "Mr. Lumpkin's affidavit is no more than a self-serving statement that he intends to approve Mr. Gutierrez's requests for religious accommodation, and thus it does not suffice to render this case moot." (Docket No. 210 at 7). But Gutierrez has presented no evidence that Director Lumpkin's affidavit is "a sham or mere litigation positioning." *Johnson v. Livingston*, 779 F. App'x 254, 255 (5th Cir. 2019). Nothing in the record before this Court suggests that Director Lumpkin has acted in bad faith or that the Defendants will not honor Director Lumpkin's assurances. *See Freedom From Religion*

7

*Foundation, Inc.*, 58 F.4th at 833 (honoring the presumption of good faith when there exists "no indication that the [governmental entity] intends to reconsider that decision"). Gutierrez provides no reason to suppose that Director Lumpkin will not accommodate his religious requests in the execution chamber.

Gutierrez has not identified anything in his proposed injunction that is not covered by Director Lumpkin's promise. Gutierrez does not point to any accommodation which Director Lumpkin has not promised to fulfill. TDCJ's change in policy to allow clergy in the execution chamber and Director Lumpkin's assurance that the State will provide Gutierrez the accommodations has resolved the controversy raised by the instant lawsuit.

In the end, Gutierrez simply wants an injunction that compels TDCJ to do what Director Lumpkin has already promised it would do. This lawsuit is effectively moot. *See Turner*, 836 F. App'x at 229 (finding that promises by prison officials form "a secure foundation for a dismissal based on mootness"). "If a claim is moot, it presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." *National Rifle Ass'n of America v. McCraw*, 719 F.3d 338, 344 (5th Cir. 2013) (internal quotation marks and citation omitted). Gutierrez's lawsuit should be dismissed under Rule 12(b)(1).

## IV. Conclusion

The Court grants the Defendants' Motion to Dismiss (Docket No. 209). The Court will dismiss this case **without prejudice**.

Signed on this 10th day of March, 2023.

Rolando Olvera
United States District Judge